UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

_____ DIVISION

CASE NUMBER:


SANDRA CORBIN and JOHN CORBIN,

        Plaintiffs,


v.


BILL PRUMMELL, JR., in his official capacity as SHERIFF of the Charlotte County, Florida's Sheriff's Office, DAVID GENSIMORE, individually and in his official Capacity as a Deputy for the Charlotte County Sheriff's Office, AARON WILLIAMS, individually and in his official Capacity as a Deputy for the Charlotte County Sheriff's Office, KENRICK ROGUSKA, individually and in his capacity as a Deputy for the Charlotte County Sheriff's office, and MICHAEL DAVIDSON, individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office.

        Defendants.

_____/


## **COMPLAINT**


Plaintiffs, SANDRA CORBIN and JOHN CORBIN, ('PLAINTIFFS" or 'THE CORBINS" collectively, or "MRS. CORBIN" or "MR. CORBIN" individually), sue Defendants, Charlotte County Sheriff BILL PRUMMELL, JR. ("DEFENDANT SHERIFF"), in his official capacity as Sheriff of Charlotte County, Florida, Charlotte County Deputy DAVID GENSIMORE ("DEFENDANT GENSIMORE"), individually and in his official capacity as a Deputy for the

Charlotte County Sheriff's Office, Charlotte County Deputy AARON WILLIAMS ("DEFENDANT WILLAMS"), individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office, , and Charlotte County Lieutenant KENRICK ROGUSKA ("DEFENDANT ROGUSKA"), individually and in his official capacity as a Deputy for the Charlotte County Sheriff's office, MICHAEL DAVIDSON {"DEFENDANT DAVIDSON"), individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office(collectively "DEFENDANTS") for damages, jointly and severally, demands trial by jury, and herein alleges:

## NATURE OF THIS ACTION

1. This is an action for Damages under 42 U.S.C. §1983 and the laws of the State of Florida, stemming from the unlawful arrest, false imprisonment, malicious prosecution, negligence, assault, battery, excessive force, and emotional distress, *inter alia*, resulting in great bodily harm to Plaintiff MRS. CORBIN, the emotional distress and loss of consortium to Plaintiff MR. CORBIN, who was physically present nearby in the zone of danger and perceived DEFENDANT'S actions against MRS. CORBIN.  In this case, with one intentional act DEFENDANT WILLIAMS with his booted leg forcibly kicked this unarmed and non-resisting 60-year-old woman and Navy veteran who was not even the subject of an arrest at the time so hard he broke her leg, swept her to the ground on her stomach, caused her to urinate on herself; and then double-locked the handcuffs on her while she lay on the ground in her own urine screaming in pain that he had broken her leg.  Then, he refused to render aid or even call for paramedics.  This incident occurred on or about November 29, 2019, during a traffic stop wherein MRS.CORBIN and her husband of over thirty years, MR. CORBIN, had just returned from their night out dancing. At the end of this incident, MRS. CORBIN was finally transported from the scene via ambulance to the hospital after DEFENDANTS delayed her access to medical care.  She was admitted with a fractured tibia and underwent surgery for that fracture.  In

addition to that initial surgery MRS. CORBIN has subsequently endured reconstructive surgery on that leg, including the insertion of multiple permanent steel pins to secure her leg. She suffered and continues to suffer immense damages. Several deputies up the chain of command actively participated in these actions against her.

2. MR. CORBIN's action stems from the damages and loss he suffered when physically present at the scene in an adjacent parking lot with DEFENDANT DAVIDSON and able to hear his wife screaming in pain that DEFENDANT WILLIAMS had broken her leg. Although expressing concern and able to see the ambulance taking his wife away on a stretcher after DEFENDANTS finally called for medical aid after their initial refusals, MR. CORBIN was left in a state of extreme distress because DEFENDANT DAVIDSON not only refused to tell MR. CORBIN exactly what happened to his wife but refused to tell him where the ambulance was taking his wife from the scene, all while DEFENDANT DAVIDSON continued to detain MR. CORBIN so that MR. CORBIN was unable to go to his wife or speak with the paramedics.  PLAINTIFF'S marital relationship and the benefits of their over 30-year marital relationship have been substantially and adversely affected by DEFENDANT'S actions.

3.  DEFENDANTS then charged MRS. CORBIN with Resisting Arrest Without Violence/Obstruction and Disorderly Intoxication Liquor Law Violation.  The Prosecution *No-Filed* the Disorderly Intoxication charge and dismissed the Resisting Arrest/Obstruction charge. Charlotte County Case No. 19001774M.

4. MRS. CORBIN seeks damages in excess of $75,000 exclusive of costs and interest.

## JURISDICTION AND VENUE

5. The instant action is brought pursuant to 42 U.S.C.§§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 1983 and under the tort laws of Florida. Supplemental jurisdiction for additional state law claims is proper pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

MRS. CORBIN assert multiple state tort law claims in this action.

6.   Venue lies in the U.S. District Court, Middle District of Florida, pursuant to 28 U.C.S. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and division.

7.   MRS. CORBIN has complied with all conditions precedent pursuant to Florida Statute §768.28 in that Notice was properly served ot propounded on all Defendants and MRS. CORBIN waited the statutory period of time before filing suit.

## **PARTIES**

8.   Plaintiffs, SANDRA CORBIN and JOHN CORBIN, ("PLAINTIFFS" or 'THE CORBINS" collectively, or "MRS. CORBIN" or "MR. CORBIN" individually) have at all times material hereto been over the age of 18 years old, residents of Charlotte County, Florida, and otherwise *sui juris*.

9.   Defendant, BILL PRUMMELL, JR, ("DEFENDANT SHERIFF") was the Sheriff of Charlotte County at all times material hereto, also having ultimate authority and/or final decision-making authority over the Charlotte County Sheriff's Office and its Deputies. The Charlotte County Sheriff's Office is an agency and/or department/division of Charlotte County and the Sheriff is hired by the County. All the Deputy Defendants were employees of the County's Sheriff Office at the time of the incident at issue and all times material hereto.

10.  Defendant, AARON WILLIAMS ("DEFENDANT WILLIAMS"), was at all times material hereto a duly appointed law enforcement officer of the County's Charlotte County Sheriff's Office, acting under color of law, and an on-duty officer involved in the wrongful arrest of MRS. CORBIN and infliction of emotional distress and loss on consortium on MR. CORBIN on or about November 19, 2019. AARON WILLIAMS is being sued in his individual capacity.

11.  Defendant, DAVID GENSIMORE ("DEFENDANT GENSIMORE"), was at all times material hereto a duly appointed law enforcement officer of the County's Charlotte County Sheriff's Office, acting under color of law, and an on-duty officer involved in the

wrongful arrest of MRS. CORBIN on or about November 19, 2019.  DAVID GENSIMORE is being sued in his individual capacity.

12. Defendant, KENRICK ROGUSKA ("DEFENDANT ROGUSKA"), was at all times material hereto a duly appointed law enforcement officer of the County's Charlotte County Sheriff's Office, acting under color of law, and an on-duty officer involved in the wrongful arrest of MRS. CORBIN on or about November 19, 2019.  KENRICK ROGUSKA is being sued in his individual capacity.

13. Defendant, MICHAEL DAVIDSON ("DEFENDANT DAVIDSON"), was at all times material hereto a duly appointed law enforcement officer of the County's Charlotte County Sheriff's Office, acting under color of law, and an on-duty officer involved in infliction of emotional distress and loss on consortium on MR. CORBIN, on or about November 19, 2019. MICHAEL DAVIDSON is being sued in his individual capacity.


## **GENERAL FACTS**


14. On or about November 29, 2019, THE CORBINS were in their vehicle when pulled over by DEFENDANTS WILLIAMS and DAVIDSON. MR. CORBIN was driving.

15. THE CORBINS loved dancing together and were returning from a night out dancing. They had even paid for dancing lessons.

16. MRS. CORBIN was sixty years old, a Navy veteran, and the keeper of their home.

17. MR. CORBIN was 56 years old and worked for the local electric company.

18. MR. CORBIN had never been arrested in his life.

19. DEFENDANTS WILLIAMS and DAVIDSON were on-duty sworn law enforcement deputies employed by the Charlotte County Sheriff's office on November 29, 2019.

20. DEFENDANTS WILLIAMS and DAVIDSON drove up behind THE CORBINS and pulled them over, initiating a traffic stop.

21. Neither uniformed Deputy was wearing bodycam or had any vehicle dashcam.

22. DEFENDANT DAVIDSON alleged that MR. CORBIN had swerved while driving.

23. MR. CORBIN was driving on a two-lane road wherein no other cars were present.

24. MR. CORBIN explained that he'd dropped his cigarette.

25. DEFENDANT DAVIDSON in turn alleged that MR. CORBIN was intoxicated and instructed MR. CORBIN to exit the vehicle for a field sobriety test.

26. MR. CORBIN exited the car as instructed, while MRS. CORBIN remained in the car.

27. The couple had pulled over into a McDonald's parking lot when stopped. DEFENDANT DAVIDSON then instructed MR. CORBIN to walk to the adjacent parking lot to complete a field sobriety test. MR. CORBIN complied.

28. In doing so, DEFENDANT DAVIDSON caused MR. CORBIN to no longer remain in the same McDonald's parking lot where MRS. CORBIN remained in the car.

29. MRS. CORBIN was therefore unable to see what the Deputy was doing to her husband.

30. Although MR. CORBIN passed the field sobriety test, DEFENDANT DAVIDSON later falsely stated that MR. CORBIN could not perform multiple of the instructed tasks.

31. In fact, DEFENDANT DAVIDSON himself fell during the field sobriety test he was conducting on MR. CORBIN.

32. During this time, MRS.CORBIN heard noise as if something adverse happened to her husband of over thirty years MR. CORBIN. Combined with national police brutality reports and the prolonged period the Deputies were maintaining custody of her husband while obstructing her view, MRS. CORBIN became concerned.

33. MRS. CORBIN then stepped out of THE CORBINS' vehicle while remaining in the same McDonald's parking lot as their car, to see what Deputies were doing to her husband in the adjacent parking lot.

34. MRS. CORBIN was not under arrest, or the subject of the traffic stop or field sobriety test.

35. That adjacent parking lot where DEFENDANT DAVIDSON was conducting the field sobriety test on MR. CORBIN was over 25 feet away from MRS. CORBIN.

36. MRS. CORBIN remained in the McDonald's parking lot where their car was located, while voicing her fear of what was happening to her husband.

37. She was not armed, within physical reach of either Deputy, or physically on the property

of the adjacent parking lot where the field sobriety test was being conducted.

38. In fact, DEFENDANT WILLIAMS, who was not the officer conducting the sobriety test, walked to MRS. CORBIN to engage with her.

39. DEFENDANT WILLIAMS told MRS. CORBIN to get back into THE CORBINS car.

40. MRS. CORBIN complied.

41. DEFENDANT WILLIAMS did not answer her concerns about MR. CORBIN. MRS. CORBIN was then again positioned where her view of MR. CORBIN was obscured.

42. After another period of time, MRS. CORBIN again became alarmed, stepping out of their car in attempt to see what was being done in the adjacent parking lot to her husband who had never been arrested in his life.

43. During this entire time, MRS. CORBIN remained in the McDonald's parking lot where THE CORBINS' car was parked.

44. MRS. CORBIN was not armed or within reach of either Deputy.

45. MRS. CORBIN was not physically present on the adjacent property where the field sobriety test was being conducted on MR.

46. MRS. CORBIN was not recording with a cellphone.

47. Sixty-year-old MRS. CORBIN was over 25 feet away from where the field sobriety test was being conducted on her husband. She was not the subject of an arrest or traffic stop.

48. DEFENDANT WILLIAMS then walked to the McDonald's parking lot where MRS. CORBIN was standing and engaged her for getting out of THE CORBINS car.

49. DEFENDANT WILLIAMS was walking aggressively toward MRS. CORBIN.

50. DEFENDANT WILLIAMS was yelling at MRS. CORBIN.

51. DEFENDANT WILLIAMS then raised his booted leg, and intentionally and without provocation, kicked MRS. CORBIN in the leg.

52. DEFENDANT WILLIAMS swept MRS. CORBIN to the ground on her stomach, causing her to urinate a large volume of urine on herself, and broke her leg with that one immensely hard kick.

53. At the time of his actions, DEFENDANT WILLIAMS was also aware that MRS. CORBIN was wearing heeled shoes and positioned on a sloped decline.

54. MRS. CORBIN began instantly crying out in intense pain that DEFENDANT WILLIAMS broke her leg.

55. DEFENDANT WILLIAMS wrote in his police report that he kicked MRS. CORBIN; that he swept MRS. CORBIN to the ground on her stomach; that she released "a large volume of urine;" that he handcuffed MRS. CORBIN on the ground on her stomach; that he double-locked handcuffed MRS. CORBIN; and that she cried out in pain that DEFENDANT WILLIAMS had broken her leg.

56. However, instead of immediately rendering or summoning medical aid after MRS. CORBIN cried out that DEFENDANT WILLIAMS had broken her leg, DEFENDANT WILLIAMS instead called additional law enforcement to the scene.

57. DEFENDANT DAVIDSON continued his field sobriety test of MR. CORBIN

58. MR. CORBIN could hear MRS. CORBIN screaming in pain that her leg was broken.

59. MR. CORBIN inquired of DEFENDANT DAVIDSON as to what was happening to MR. CORBIN'S wife because MR. CORBIN could hear her screaming in pain that her leg was broken, but the deputies had separated MRS. CORBIN from his view.

60. DEFENDANT DAVIDSON refused to answer the question or communicate with DEFENDANT WILLIAMS for further information.  Instead, DEFENDANT DAVIDSON told MR. CORBIN that MR. CORBIN "*better not move*."

61. Husband MR. CORBIN was forced by DEFENDANT DAV IDSON to stand in that adjacent parking lot too afraid to move or inquire more about what was being done to his wife of over thirty years MRS. CORBIN by DEFENDANT WILLIAMS, and just hear her repeat screams in pain that deputy DEFENDANT WILLIAMS had broken her leg.

62. In response to DEFENDANT WILLIAMS' call for additional law enforcement, Charlotte County deputy **Sergeant** DEFENDANT GENSIMORE –a supervisor – arrived.

63. MRS. CORBIN was still lying on the ground in her own urine on her stomach double-locked handcuffed with a broken leg screaming in pain that her leg was broken.

64. Instead of either Deputy immediately calling for emergency medical care or rendering aid, DEFENDANTS WILLIAMS and GENSIMORE tried to make the double-locked-handcuffed MRS. CORBIN walk to the police cruiser while they held her up as she

yelled out in pain that her leg was broken.

65. DEFENDANT WILLIAMS also wrote in his police report that he and DEFENDANT GENSIMORE attempted to stand up MRS. CORBIN after she'd already stated DEFENDANT WILLIAMS had broken her leg.

66. After MRS. CORBIN again informed these deputies that her leg was broken and that she could not stand, DEFENDANTS WILLIAMS and GENSIMORE *finally* called for medical assistance to the scene.

67. At that time MR. CORBIN could see multiple police cars on the scene where his wife was located, still hear his wife screaming in pain that her leg was broken, and see an ambulance appear on the scene. Yet, DEFENDANT DAVIDSON still refused to inform MR. CORBIN of what happened or was happening to MRS. CORBIN.

68. Paramedics transferred MRS. CORBIN to a stretcher and took her straight to Fawcett Hospital from the scene.

69. Although MR. CORBIN could see paramedics place MRS. CORBIN on the stretcher after DEFENDANT WILLIAMS had broken her leg and DEFENDANT GENSIMORE in concert with DEFENDANT WILLIAMS had attempted to force MRS. CORBIN to walk on her leg, DEFENDANT DAVIDSON refused to tell MR. CORBIN where paramedics were transporting his wife.

70. All MR. CORBIN knew is that he'd heard his wife of over 30 years screaming that DEFENDANT WILLIAMS broke her leg.

71. Then, DEFENDANT WILLIAMS rode in the back of the ambulance with MRS. CORBIN against her will and without her consent, despite being the deputy who broke her leg and having access to a police car on the scene.

72. DEFENDANT WILLIAMS actions of riding in the back of the ambulance with MRS. CORBIN and gaining access to her medical information were against her will and without her consent.

73. DFENDANT WILLIAMS' actions only served to further cause anguish, pain, harass, and provoke MRS. CORBIN, who had to see him there in the back of the ambulance with her after just having broken her leg, swept her to her stomach in her urine, and double-locked

handcuffed her in that position lying in her own large pool of urine.

74. Upon arrival to the Emergency Room, DEFENDANT WILLIAMS continued to physically place himself in the room/area where MRS. CORBIN was being treated.

75. DEFNDANT WILLIAMS' actions of placing himself in the hospital area where MRS. CORBIN was being treated and gaining access to MRS. CORBIN's medical information were without her consent and against her will.

76. Here again, DFENDANT WILLIAMS' actions only served to further cause anguish, pain, harass, and provoke MRS. CORBIN.

77. In the Emergency Room, the physician diagnosed MRS. CORBIN with a fractured tibia and admitted her to the hospital.

78. After learning the hospital's diagnosis, DEFENDANT WILLIAMS contacted Charlotte County Watch Commander **Lieutenant** DEFENDANT ROGUSKA and notified him of MRS. CORBIN's broken leg.

79. DEFENDANT ROGUSKA then instructed DEFENDANT WILLIAMS to issue MRS. CORBIN a *Notice to Appear.*

80. DEFENDANT WILLIAMS issued MRS. CORBIN a *Notice to Appear* on charges of Disorderly Intoxication and Resisting Arrest/Obstruction/ with*out* Violence.

81. MRS. CORBIN was arrested by DEFENDANT WILLIAMS and issued that *Noticed to Appear* at the instruction of Lieutenant DEFENDANT ROGUSKA after learning DEFENDANT WILLIAMS broke MRS. CORBIN'S leg, to conceal DEFENDANT WILLIAMS' unlawful actions and excessive force against MRS. CORBIN.

82. Although DEFENDANT WILLIAMS charged MRS. CORBIN with Disorderly Conduct/Intoxication, neither DEFENDANT WILLIAMS, DEFENDANT GENSIMORE, nor any law enforcement officer conducted a field sobriety test or breathalyzer on MRS. CORBIN on November 29, 2019, prior to making that charge.

83. DEFENDANTS charge was *No Actioned* by the Charlotte County State Attorney's Office/Prosecutor.

84. DEFENDANTS also charged MRS. CORBIN with resisting arrest without violence.

85. The Charlotte County State Attorney's Office/Prosecutor dismissed that charge.

86. Back at the scene, DEFENDANT DAVIDSON then arrested MR. CORBIN for Driving Under the Influence and issued a Warning for *Failure to Drive in a Single Lane*. No breathalyzer was given to Mr. Corbin on the scene.

87. DEFENDANT DAVIDSON arrested MR. CORBIN although MR. CORBIN had passed the field sobriety test.

88. DEFENDANT DAVIDSON then transported MR. CORBIN to jail handcuffed in the back of the police car.

89. DEFENDANT DAVIDSON still refused to tell MR. CORBIN where paramedics and DEFENDANT WILLIAMS had taken his wife, after MR. CORBIN had had to witness his wife of over 30 years screaming that DEFENDANT WILLIAMS broke her leg.

90. At the jail, another officer administered a breathalyzer. Law enforcement forced MR. CORBIN to blow into the machine more than twice.

91. This was the first time MR. CORBIN had ever been arrested in his entire life.

92. Back at the hospital, MRS. CORBIN was admitted for surgery on her broken leg.

93. Surgery was performed on MRS. CORBIN on December 1, 2019, two days after DEFENDANT WILLIAMS kicked MRS CORBIN on November 29, 2019.

94. The hospital had to keep MRS. CORBIN in the hospital from the date of presentation on November 29, 2019, awaiting the swelling of MRS. CORBIN'S leg to subside from the impact of DEFENDANT WILLIAMS' kick before surgery could be performed on December 1, 2019.

95. MRS. CORBIN'S hospitalization for her leg then continued post-operatively.

96. Almost a year later on August 2020, MRS. CORBIN had to have a Total Knee Replacement on that same leg.

97. MRS. CORBIN also had to undergo months of Physical Therapy, was confined to a wheelchair, and now utilizes assistance when walking for periods of time or distance that she previously could walk without assistance or having to take rest breaks.

98. Over a year prior to filing this Complaint, MRS. CORBIN noticed DEFENDANT SHERIFF in writing of the actions stated herein of the DEFENDANTS along with copies of x-rays of her fracture, the dismissed charges, and deputy's police report.

99. DEFENDANT SHERIFF did not respond.

100.     Defendant SHERIFF is the ultimate decision- and policy-maker for the Charlotte County Sheriff's office.

101.     DEFENDANT SHERIFF continued and continues to employ these deputy DEFENDANTS at issue.

102.     DEFENDANT SHERIFF did not discipline these deputies for their actions against THE CORBINS.

103.     DEFENDANT SHERIFF did not attempt to prohibit or diminish violations of the civil rights of the citizenry or THE CORBINS by sworn law enforcement officers employed by DEFENDANT SHERIFF.

104.     For example, DEFENDANT SHERIFF did not publicly renounce the actions of its deputies to the citizenry or THE CORBINS as inconsistent with the approved/condoned/ratified actions of DEFENDANT SHERIFF, apologize to the citizenry or THE CORBINS, respond to THE CORBINS, require body-worn cameras, install dashboard cameras, discipline or terminate DEFENDANT officers for such conduct as complained of to him by THE CORBINS.

105.     Further, DEFENDANT SHERIFF proactively and intentionally assisted and/or allowed its deputy DEFENDANTS to attempt to evade service multiple times of the pre-suit notice, refusing to cooperate with the process server.

106.     Moreover, after receiving written notice of the actions of its deputies against THE CORBINS, DEFENDANT SHERIFF allowed its deputies to pre-textually stop and arrest another elderly man one month later who never been arrested, falsely charge him with DUI, and demand that he blow into the breathalyzer more than twice.  That man was acquitted.

107.     DEFENDANT SHERIFF knowingly and intentionally continues to employ Deputies who violate the civil rights of its citizens, escalate police interactions with citizens, make pre-textual stops and false arrests, and employ excessive force to the point of breaking this elderly woman's leg during police interactions.

108.     Yet, DEFENDANT SHERIFF has not acted to stop its officers from violating the

civil rights of its citizenry.

109.    Prior to DEFENDANT WILLIAMS breaking MRS. CORBIN'S leg, MRS. CORBIN was independently ambulatory with no assistance.  She did not use a cane or walker.

110.    Prior to DEFENDANTS WILLIAMS and GENSIMORE attempting to stand her up on her known broken leg and refusing to render medical care or summon immediate medical care, MRS. CORBIN was independently ambulatory without assistance.  She did not use a can or walker.

111.    Now, MRS. CORBIN has to utilize assistance and/or rest frequently when ambulating. She also had to undergo a period of being wheelchair bound.

112.    Prior to DEFENDANT WILLIAMS breaking her leg, MRS. CORBIN had never undergone surgery on her leg.

113.    Prior to DEFENDANTS WILLIAMS and GENSIMORE attempting to stand her up on that known broken leg and refusing to render medical care or summon immediate medical care, MRS. CORBIN had never undergone surgery on her leg.

114.    Now, MRS. CORBIN has suffered multiple surgeries on that leg.

115.    Prior to DEFENDANT WILLIAMS breaking her leg, or DEFENDANTS WILLIAMS and GENSIMORE attempting to stand her up on that known broken leg and refusing to render medical care or summon immediate medical care, MRS. CORBIN never had metal pins or rods implanted in her leg.

116.    Now, MRS. CORBIN has permanent metal and/or steel pins and/or rods placed in her leg.

117.    Prior to DEFENDANT WILLIAMS breaking her leg, MRS. CORBIN was able to go out dancing with her husband MR. JOHN CORBIN as many times as they desired.

118.    Prior to DEFENDANTS WILLIAMS and GENSIMORE attempting to stand her up on that known broken leg and refusing to render medical care or summon immediate medical care, MRS. CORBIN was able to go out dancing with her husband as desired.

119.    Now, THE CORBINS are unable to go dancing anymore.

120.    PRIOR to DEFENDANT WILLIAMS breaking her leg, and DEFENDANTS

WILLIAMS and GENSIMORE attempting to stand MRS. CORBIN up on her known broken leg, the marital intimacy of THE CORBINS over thirty-year marriage was very satisfactory to THE CORBINS.

121.     THE CORBINS also enjoyed going out dancing, shared outdoor activities and events, as well as mutual love, quiet time together, and companionship.  MRS. CORBIN maintained the cleanliness of the home, cooked meals, and provided other companionship to MR. CORBIN.

122.     Now, the marital intimacy of THE CORBINS has been adversely affected by the actions of DEFENDANTS; they cannot go dancing; suffer reduced activity individually and collectively; and are in marital counseling.  Their love and companionship have been adversely affected. Further, MRS. CORBIN is unable to perform her household duties and activities to the same level as prior to the actions of DEFENDANTS against THE CORBINS.

123.     Both MR. CORBIN and MRS. CORBIN suffer emotionally and mentally from DEFENDANTS actions against them.

124.     MR. CORBIN still suffers loss of reputation and anguish from DEFENDANT DAVIDSON'S actions in the pretextual arrest and refusing to inform MR. CORBIN of the exact happenings or whereabouts of MRS. CORBIN, who was physically present on the scene at the time of DEFENDANTS actions against MRS. CORBIN.

125.     THE CORBINS suffer damages, loss, pain, mental anguish, and emotional distress from the actions of DEFENDANTS WILLIAMS, GENSIMORE, ROGUSKA, DAVIDSON, and SHERIFF in causing, participating in, upholding, ratifying, and failure to prevent nor correct the actions of Charlotte County's law enforcement against the Corbin's.

126.     THE CORBINS suffer anxiety, nightmares, headaches, and mental anguish from the complicit actions of DEFENDANTS.

127.     Further, MRS. CORBIN, as a homemaker, is physically unable to keep their home in the same manner as prior to the actions of DEFENDANTS.

128.     Moreover, MRS. CORBIN is also undergoing mental health psychological

therapy due to DEFENDANTS' actions named herein.

129.     Due to MR. CORBIN being the only breadwinner at home, to keep his job of over ten years, and having to transport MRS. CORBIN to appointments, MR. CORBIN eventually ended up pleading no contest so that the charge could be reduced.  He had never been arrested in his life, and now suffers loss of reputation, and mental anguish due to the actions of DEFENDANT DAVIDSON.

130.     MR. CORBIN is now afraid and fears harm when seeing a police car or officer in his vicinity or presence due to the actions of DEFENDANTS.

131.     MRS. CORBIN is now afraid and fears harm when seeing a police car or officer in her vicinity or presence due to the actions of DEFENDANTS.

132.     THE CORBINS will never again be able to live their lives in the same level of enjoyment, peace, marital intimacy, level of actively, and freedom from pain, anguish, distress, and police in general, as they were able to live prior to the day DEFENDANTS took it all away beginning with one kick.

## FEDERAL CLAIMS:  MRS CORBIN

### COUNT I:  FALSE ARREST/IMPRISONMENT (42 U.S.C.§ 1983)
### AARON WILLIAMS

133.      MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

134.     DEFENDANT WILLIAMS is being sued in his individual capacity.

135.     At no time did probable cause exist to detain, seize, or arrest MRS. CORBIN.

136.     DEFENDANT WILLIAMS did however detain, seize, and arrest MRS. CORBIN without legal cause.

137.     MRS. CORBIN did not commit any act justifying that detention, seizure, or arrest by DEFENDANT WILLIAMS. She was an unarmed sixty-year-old bystander over 25 feet away from where a field sobriety test was being conducted on her husband.

138.     MRS. CORBIN did not consent to the unlawful detention, seizure, or arrest by DEFENDANT WILLIAMS.

139.     DEFENDANT WILLIAMS arrested and charged MRS. CORBIN with Resist/Obstruct/Oppose Officer without Violence and Disorderly Intoxication after he'd broken MRS. CORBINS' leg.

140.     Neither DEFENDANT WILLIAMS nor any other law enforcement on the scene conducted a field sobriety test nor breathalyzer of MRS. CORBIN on the scene prior to charging her with Disorderly Intoxication.

141.     Neither did unarmed MRS CORBIN leave the area of her car, which was in an adjacent parking lot to where DEFENDANT DAVIDSON was conducting a field sobriety test on her husband, and not within arm's reach of DEFENDANTS WILLIAMS or DAVIDSON.

142.     DEFENDANT WILLIAMS' charges were *no filed* and dismissed by the Charlotte County State Attorney's Office/Prosecutor.

143.     As a direct and proximate result of DEFENDANT WILLIAMS' illegal detention, false imprisonment, and unlawful arrest of sixty-year-old bystander MRS. CORBIN, MRS. CORBIN suffered and continues to suffer unlawful and prolonged unlawful detention, false charges and costs to fight the false criminal charges, delayed access to needed immediate medical care grave physical harm, multiple surgeries, permanent placement of metal pins/rods in her leg, reduced physical activity, a period of being wheelchair bound, ongoing psychological/mental health therapy/counseling, pain, medical expenses, loss of financial resources, emotional anguish and distress, loss of consortium in her marital relationship, anxiety, nightmares, loss of independence, and loss of enjoyment of life.  MRS. CORBIN and her husband can never go dancing again. They'd invested financial resources in dance lessons to enjoy dancing with each other in these golden years of their over 30-year marriage.

WHEREFORE, MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT II:  FALSE ARREST/IMPRISONMENT (42 U.S.C.§ 1983)
## DAVID GENSIMORE

144.     MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

145.     DEFENDANT GENSIMORE is being sued in his individual capacity

146.     At no time did probable cause exist to detain, seize, or arrest MRS. CORBIN. MRS. CORBIN was an unarmed sixty-year-old bystander over 25 feet away from where a field sobriety test was being conducted on her husband.

147.     DEFENDANT GENSIMORE did however detain, seize, and arrest MRS. CORBIN without legal cause.

148.     DEFENDANT GENSIMORE is a Sergeant and supervisor in the Charlotte County Sheriff's office who responded to the scene after receiving DEFENDANT WILLIAMS' call.

149.     As a Sergeant and supervisor, DEFENDANT GENSIMORE had the authority and duty to inquire into the actual and lawfulness of DEFENDANT WILLIAMS' actions, instruct DEFENDANT WILLIAMS to cease his actions, outright end DEFENDANT WILLIAMS' engagement interaction of/with MRS. CORBIN, and release MRS. CORBIN, when arriving on the scene and observing unarmed sixty-year-old MRS. CORBIN lying on her stomach in her own large pool of urine double-locked handcuffed over 25 feet away from the field sobriety test and screaming in pain that DEFENDANT WILLIAMS had broken her leg.

150.     Instead, DEFENDANT GENSIMORE declined to utilize his supervisory authority  or uphold his duty to  intervene or stop DEFENDANT WILLIAMS' unlawful actions as a supervisor should, but instead  affirmatively and intentionally effectuated the unlawful arrest, seizure, and detention of bystander sixty-year-old MRS. CORBIN, even himself lifting  the  double-handcuffed-lying-on-her-stomach-in-urine-screaming-in-pain-that-DEFENDANT WILLIAMS-broke-her-leg MRS. CORBIN, and ordering her to walk to the police car on her broken leg.

151.     DEFENDANT GENSIMORE'S actions were more than a mere nominal participation of assisting an officer to effectuate a lawful arrest, or mere participation as a non-supervisory officer arriving on the scene; he affirmatively effectuated the unlawful detention, arrest, and seizure without legal cause. Due to his supervisory status DEFENDANT GENSIMORE had the duty to ensure the arrest was lawful when arriving upon the scene to the circumstances presented herein, and prior to not only effectuating the unlawful arrest with DEFENDANT WILLIAMS and declining to end the unlawful arrest, but also substantially furthering the arrest by ordering MRS. CORBIN to walk to the police car on her broken leg as part of the arrest and refusing to call for or render immediate medical attention.

152.     MRS. CORBIN did not commit any act justifying that detention, seizure, or arrest by DEFENDANT GENSIMORE.

153.     MRS. CORBIN did not consent to the unlawful detention, seizure, or arrest BY DEFENDANT GENSIMORE.

154.     Neither DEFENDANT GENSIMORE conducted nor ordered any law enforcement officer to conduct a field sobriety test or breathalyzer of MRS. CORBIN on the scene and unarmed sixty-year-old bystander MRS. CORBIN remained at her car during the entire engagement with DEFENDANTS WILLIAMS and GENSIMORE, not having gone to the adjacent parking lot where a field sobriety test was being conducted on Mr. Corbin nor within physical reach of the officers.

155.     DEFENDANT GENSIMORE'S charges were *no filed* and dismissed by the Charlotte County State Attorney's Office/Prosecutor.

156.     As a direct and proximate result of DEFENDANT GENSIMORE'S illegal detention, false imprisonment, and unlawful arrest of MRS. CORBIN, MRS. CORBIN suffered and continues to suffer unlawful and prolonged unlawful detention, false charges and costs to fight the false criminal charges, delayed access to needed immediate medical care grave physical harm, multiple surgeries, permanent placement of metal pins/rods in her leg, reduced physical activity, a period of being wheelchair bound, ongoing psychological/mental health therapy/counseling, pain, medical expenses, loss of financial resources, emotional anguish and distress, loss of consortium in her marital relationship,

18

anxiety, nightmares, loss of independence, and loss of enjoyment of life.  MRS. CORBIN and her husband can never go dancing again.  They invested financial resources in dance lessons to enjoy dancing together in the golden years of their over 30-year marriage.

WHEREFORE, MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT GENSIMORE for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

### COUNT III:  FALSE ARREST/IMPRISONMENT (42 U.S.C.§ 1983)
### KENRICK ROGUSKA

157.      MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

158.      DEFENDANT ROGUSKA is being sued in his individual capacity.

159.      At no time did probable cause exist to detain, seize, or arrest MRS. CORBIN.

160.      DEFENDANT.ROGUSKA did however order the detention, seizure, and arrest of MRS. CORBIN without legal cause.

161.      MRS. CORBIN did not commit any act justifying that detention, seizure, or arrest by DEFENDANT ROGUSKA. She was an unarmed bystander who was not the subject of the traffic stop, and over 25 feet away from where the field sobriety test was being conducted on her husband MR. CORBIN.

162.      MRS. CORBIN did not consent to the unlawful detention, seizure, or arrest by DEFENDANT ROGUSKA.

163.      DEFENDANT ROGUSKA is a ***Lieutenant*** in the Charlotte County Sheriff's Office, of higher rank than both DEFENDANTS WILLIAMS and Sergeant GENSIMORE.

164.      As such, DEFENDANT ROGUSKA had the authority and duty to inquire into and intervene in the actions and lawfulness of the actions of DEFENDANT WILLIAMS and GENSIMORE and stop those unlawful actions after being contacted from the hospital by DEFENDANT WILLIAMS informing him of what occurred, including that

DEFENDANT WILLIAMS had broken unarmed bystander MRS. CORBIN'S leg.

165.     DEFENDANT ROGUSKA could have reversed and/or stopped the unlawful arrest and continuing detention of MRS. CORBIN right then based on his authority over both DEFENDANTS WILLIAMS and GENSIMORE.

166.     Instead, DEFENDANT ROGUSKA ordered DEFENDANT WILLIAMS to proceed with charges against MRS. CORBIN and to issue her a Notice to Appear on Disorderly Intoxication and Resist/Obstruct/Oppose Officer without violence charges right there at the hospital, himself effectuating this unlawful arrest.

167.     DEFENDANT ROGUSKA'S actions were more than a mere nominal participation of assisting an officer to effectuate a lawful arrest, or mere participation as a non-supervisory officer arriving on the scene. He intentionally and affirmatively effected the arrest of MRS. CORBIN, and substantially participated in, effectuated, agreed, ordered, and ratified, the unlawful arrest, seizure, and detention of MRS. CORBIN.

168.     DEFENDANT ROGUSKA'S charges against MRS. CORBIN were *no filed* and dismissed.

169.     As a direct and proximate result of DEFENDANT ROGUSKA'S illegal detention, false imprisonment, and unlawful arrest of MRS. CORBIN, MRS. CORBIN suffered and continues to suffer unlawful and prolonged unlawful detention, false charges and costs to fight the false criminal charges, delayed access to needed immediate medical care grave physical harm, multiple surgeries, permanent placement of metal pins/rods in her leg, reduced physical activity, a period of being wheelchair bound, ongoing psychological/mental health therapy/counseling, pain, medical expenses, loss of financial resources, emotional anguish and distress, loss of consortium in her marital relationship, anxiety, nightmares, loss of independence, and loss of enjoyment of life.  They invested financial resources into dance lessons to enjoy dancing together in the golden years of their over thirty-year marriage but now can never go dancing again.

WHEREFORE, MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT ROGUSKA for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT IV: FOURTH AMENDMENT EXCESSIVE USE OF FORCE (42 U.S.C.§ 1983)
## AARON WILLIAMS

170.    MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

171.    DEFENDANT WILLIAMS is being sued in his individual capacity

172.    DEFENDANT WILLIAMS physically and intentionally kicked unarmed MRS. CORBIN to the ground with his booted leg, swept her on her stomach, caused her to urinate on herself a large pool of urine, and broke her leg with that one kick, without legal cause, warning of impending force, or reason to use physical force against her.

173.    DEFENDANT WILLIAMS did not give MRS. CORBIN any warning prior to kicking her, nor instruct her to turn around and/or to place her hands behind her back.

174.    DEFENDANT WILLIAMS then handcuffed and double-locked MRS. CORBIN into that position despite her repeated screams that he'd broken her leg,

175.    MRS. CORBIN was unarmed at the time of DEFENDANT WILLIAMS' actions, not the subject of the traffic stop or sobriety test, and over 25 feet away from where the field sobriety test was being conducted in an adjacent but separate parking lot.

176.    MRS. CORBIN was not brandishing nor utilizing any weapon, recording with a cellphone, or making any physical contact with or against DEFENDANT WILLIAMS.

177.    MRS. CORBIN was not striking DEFENDANT WILLIAMS.

178.    MRS. CORBIN was not physically impeding nor in arm's reach of DEFENDANT WILLIAMS prior to his actions.  In fact, DEFENDANT WILLIAMS had to physically come to the area where bystander MRS. CORBIN was standing, to kick her.

179.    *To wit*, DEFENDANT WILLIAMS charged MRS. CORBIN with resisting with*out* violence.  That charge was dropped.

180.    DEFENDANT WILLIAMS did not use any lesser physical force prior to kicking MRS. CORBIN to the ground and breaking her leg.

181.    DEFENDANT WILLIAMS intended to perform these actions against MRS. CORBIN and performed these acts against MRS. CORBIN while taking her into custody.

182.    Despite MRS. CORBIN repeatedly screaming in pain that DEFENDANT WILLIAMS had broken her leg, DEFENDANT WILLIAMS refused to render or call for any immediate medical aid to/for MRS. CORBIN.

183.    MRS. CORBIN was an unarmed bystander who was not the subject of the stop or field sobriety test, and at no time during these events or DEFENDANT WILLIAMS' actions did MRS. CORBIN commit any act or gesture to cause DEFENDANT WILLIAMS' use of force or excessive force against MRS. CORBIN.  MRS. CORBIN did not consent to touching or striking by DEFENDANT WILLIAMS.

184.    DEFENDANT WILLIAMS' actions and the force he used against MRS. CORBIN were unreasonable, unjustified, and way beyond any amount of force required to take MRS. CORBIN into custody and caused permanent injury with great bodily harm.

185.    DEFENDANT WILLIAMS' arrest, seizure, and detention of MRS. CORBIN were unlawful.

186.    All of DEFENDANT WILLIAMS' criminal charges against MRS. CORBIN stemming from this arrest were *no filed* and dismissed.

187.    As a direct and proximate result of DEFENDANT WILLIAMS' excessive force against MRS. CORBIN, MRS. CORBIN suffered and continues to suffer grave physical harm, a fractured tibia, multiple surgeries, permanent placement of metal pins/rods in her leg, reduced physical activity, a period of being wheelchair bound, ongoing psychological/mental health therapy/counseling, pain, medical expenses, loss of financial resources, emotional anguish and distress, loss of consortium in her marital relationship, anxiety, nightmares, loss of independence, and loss of enjoyment of life.  MRS. CORBIN and her husband can never go dancing again.  They'd invested financial resources in dance lessons to enjoy dancing with each other in these golden years of their over 30-year marriage.

**WHEREFORE**, MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT VI:  DELIBERATE INDIFFERENCE/FAILURE TO RENDER AID (42 U.S.C.§ 1983)
## AARON WILLIAMS

188.    MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

189.    DEFENDANT WILLIAMS is being sued in his individual capacity

190.    DEFENDANT WILLIAMS caused MRS. CORBIN to suffer serious medical injury and need, immediate need for adequate medical care, and delayed access to that immediately needed medical care for MRS. CORBIN,  when he intentionally kicked MRS. CORBIN so hard with his booted leg without provocation or warning and swept her to the ground to land on her stomach, wherein she immediately urinated on herself and began crying out in pain repeatedly to DEFENDANT WILLIAMS that he had broken her leg.

191.    DEFENDANT WILLIAMS did indeed kick MRS. CORBIN and break her leg.

192.    At no time did DEFENDANT WILLIAMS offer or render medical aid himself to MRS. CORBIN.

193.    As opposed to rendering aid himself or calling for emergency medical care and despite MRS. CORBIN'S ongoing cries of pain to him that he'd broken her leg, DEFENDANT WILLIAMS instead forced MRS. CORBIN to continue to stay positioned on her stomach in double-lock handcuffs in her own large pool of urine screaming that her leg was broken while he called and waited for additional law enforcement to help arrest and force her to walk to the police car on her broken leg.

194.    Further, despite MRS. CORBIN'S repetitive screams of pain and assertions that DEFENDANT WILLIAMS had broken her leg to DEFENDANTS WILLIAMS and GENSIMORE, both DEFENDANTS WILLIAMS and GENSIMORE -- who arrived on the scene in response to DEFENDANT WILLIAMS' call -- tried to force MRS. CORBIN to stand and walk on that broken leg to the police car while double-locked handcuffed.

195.    Only after MRS. CORBIN couldn't walk to the police car --- which includes the

passage of time since the kick itself and while waiting for back-up DEFENDANT GENSIMORE to arrive on the scene in response to DEFENDANT WILLIAMS' call -- did DEFENDANT WILLIAMS finally call for emergency medical care for MRS. CORBIN.

196.    Paramedics transported MRS. CORBIN straight from the scene via stretcher to Fawcett Hospital, where she was indeed diagnosed with a fractured tibia, admitted for several days, and underwent surgery on that leg, which could not be performed for multiple days until the swelling subsided from DEFENDANT WILLIAMS' kick.

197.    Moreover, MRS. CORBIN had to undergo a second surgery to that leg almost a year later due to the damage caused by DEFENDANT WILLIAMS' kick.

198.    Permanent metal pins and/or rods were inserted into MRS. CORBIN'S leg as a result of DEFENDANT WILLIAMS' kick.

199.    Throughout this event DEFENDANT WILLIAMS was immediately informed that he had broken MRS. CORBIN'S leg and had multiple opportunities to render medical aid and call for emergency medical care after she repeatedly made it known to him that he'd broken her leg was in severe pain.

200.    MRS. CORBIN'S leg was also physically swelling during this time, and DEFENDANT WILLIAMS knew without a doubt that he was the person who had just kicked her in that same leg with violent force using his booted leg.  Yet, he chose not to call for medical help.

201.    DEFENDANT WILLIAMS acted with deliberate indifference, callous and reckless disregard to MRS. CORBIN'S serious medical condition and need for immediate medical treatment, in that he failed or refused to render or summon necessary and required medical aid when he knew MRS. CORBIN was in distress and needed emergency medical treatment, and then further delayed access to that needed medical care by calling for additional law enforcement as opposed to medical aid.

202.    As a result of the ongoing intentional and/or reckless disregard by DEFENDANT WILLIAMS to the known serious medical condition and immediate need for medical care he created in MRS. CORBIN when deploying unlawful and excessive force against

24

MRS. CORBIN, MRS. CORBIN suffered delayed access to care, delayed access to emergency treatment and intervention on the scene, delayed actual medical treatment on the scene, delayed transport to a higher level of care such as Fawcett Hospital, extreme swelling to her leg which impeded the surgery for the broken leg, a fractured tibia, multiple surgeries on that leg, pain, permanent injury, loss of physical activity, loss of consortium, loss of enjoyment of life, ongoing psychological therapy, decreased ambulatory abilities, reduced activity, a period of being wheelchair bound, extreme mental anguish, anxiety, nightmares, medical expenses, loss of financial resources, and severe emotional distress, permanent placement of metal pins and/or rods into her leg.

**WHEREFORE,** MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

### COUNT VII:  DELIBERATE INDIFFERENCE/FAILURE TO RENDER AID
### (42 U.S.C.§ 1983)
### DAVID GENSIMORE

203.    MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

204.    DEFENDANT GENSIMORE is being sued in his individual capacity and in his supervisory capacity.

205.    DEFENDANT GENSIMORE did cause MRS. CORBIN to suffer serious medical need and immediate need for adequate medical care, and delayed access to that needed immediate medical care caused by the kick from DEFENDANT WILLIAMS when DEFENDANT GENSIMORE refused to offer medical aid, summon emergency medical care despite MRS. CORBIN lying on the ground screaming to him that DEFENDANT WILLIAMS had kicked her and broker her leg, or as a supervisor instruct DEFENDANT WILLIAMS to call for or render aid.

206.    FURTHER, DEFENDANT GENSIMORE did cause MRS. CORBIN to suffer serious medical need and immediate need for adequate medical care caused by the kick from DEFENDANT WILLIAMS when DEFENDANT GENSIMORE intentionally attempted to lift MRS. CORBIN from the ground to bare weight on her broken leg and ordered MRS. CORBIN to walk to the police car on her broken leg.

207.    DEFENDANT GENISMORE arrived on the scene in response to DEFENDANT WILLIAM'S call to where DEFENDANT WILLIAMS was present, and sixty-year-old MRS. CORBIN was lying on the ground on her stomach in double-locked handcuffs in a large pool of her own urine screaming that DEFENDANT WILLIAMS had kicked her and broken her leg.

208.    DEFENDANT WILLIAMS had indeed kicked MRS. CORBIN and broken her leg.

209.    DEFENDANT GENSIMORE was aware that MRS. CORBIN was screaming out in pain that her leg was broken, observed her screaming out in pain, and knew that immediate medical care was needed.

210.    As a Sergeant, DEFENDANT GENSIMORE had the authority and duty to not only order DEFENDANT WILLIAMS to immediately render medical aid and call for emergency medical personnel to the scene, but to render medical aid and make such call for emergency medical care himself.

211.    Instead, DEFENDANT GENSIMORE affirmatively and physically tried to life MRS. CORBIN onto that broken leg to make her walk to the patrol car in this unlawful arrest.

212.    Further, at no time did DEFENDANT GENSIMORE offer or render medical aid to MRS CORBIN himself.

213.    DEFENDANT GENISMORE had multiple opportunities to intervene in this serious medical condition and offer or render medical aid -- including while he and DEFENDANT WILLIAMS were awaiting the medical care they finally called after MRS. CORBIN couldn't walk to the police car on her broken leg as ordered. Yet, he chose not to intervene.

26

214.     DEFENDANT GENSIMORE acted with deliberate indifference, callous and reckless disregard to MRS. CORBIN'S serious medical condition and need for immediate medical treatment, in that he failed or refused to render necessary and required medical aid, or immediately summon such aid, when he knew MRS. CORBIN was in distress and needed emergency medical treatment, and delayed MRS. CORBIN'S access to needed immediate medical care.

215.     As a result of the ongoing intentional and/or reckless disregard by DEFENDANT GENISMORE to the known serious medical condition and immediate need for medical care he helped create in MRS. CORBIN by intentionally lifting her body and placing weight on her known broken leg and refusing to render aid or call emergency medical personnel, MRS. CORBIN suffered delayed access to care, delayed access to emergency treatment and intervention on the scene, delayed actual medical treatment on the scene, delayed transport to a higher level of care such as Fawcett Hospital, extreme swelling to her leg which impeded the surgery for the broken leg, a fractured tibia, multiple surgeries on that leg, pain, permanent injury, loss of physical activity, loss of consortium, loss of enjoyment of life, ongoing psychological therapy, decreased ambulatory abilities, reduced activity, a period of being wheelchair bound, extreme mental anguish, anxiety, nightmares, medical expenses, loss of financial resources, and severe emotional distress, permanent placement of metal pins and/or rods into her leg.

**WHEREFORE,** MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT GENSIMORE for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## STATE CLAIMS: THE CORBINS

## COUNT VIII: RESPONDEAT SUPERIOR
## BILL PRUMMEL, JR.,/DEFENDANT
## SHERIFF

27

216.      THE CORBINS hereby re-allege and incorporates paragraphs 1 – 132 as if pled herein.

217.      DEFENDANT SHERIFF is being sued in its official capacity.

218.      DEFENDANT SHERIFF is liable for the wrongful and/or negligent acts of its employees working withing the scope of their employment.

219.      At all times material hereto, DEFENDANTS WILLIAMS, GENSIMORE, ROGUSKA, and DAVIDSON ("DEFENDANT DEPUTIES") were on-duty uniformed sworn law enforcement officers employed by DEFENDANT SHERIFF. working within the course and scope of their employment

220.      At all times material hereto, DEFENDANT DEPUTIES were on-duty sworn law enforcement officers when committing the acts of false arrest, false imprisonment, assault, battery, excessive force, infliction of emotional distress, loss of consortium, and other claims asserted herein against MRS. CORBIN, MR. CORBIN, and THE CORBINS within the scope of their employment as law enforcement officers for DEFENDANT SHERIFF.

221.      Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleges that DEFENDANT DEPUTIES did not commit the False Arrest/False Imprisonment named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

222.      . Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleges that DEFENDANT DEPUTIES did not commit the Battery named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

223.      Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleges that DEFENDANT DEPUTIES did not commit the excessive force named herein in bad faith or with malicious purpose, or in a

manner exhibiting willful and wanton disregard of human rights, safety, or property.

224.    Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleges that DEFENDANT DEPUTIES did not commit the Deliberate Indifference/failure to render aid named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

225.    Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleged that DEFENDANT DEPUTIES did not commit the Intentional Infliction of Emotional Distress named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

226.    Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MR. CORBIN alleges that DEFENDANT DEPUTIES did not commit the Negligent Infliction of Emotional Distress named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

227.    Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MR. CORBIN alleges that DEFENDANT DEPUTIES did not commit the Loss of consortium named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

228.    DEFENDANT SHERIFF is therefore liable despite any statutory limitation it may attempt to assert excluding its liability based on arguments that its DEFENDANT DEPUTIES acted outside their scope of employment.

**WHEREFORE**, MRS. CORBIN, MR. CORBIN, and THE CORBINS seek entry of an Order for final judgment against    Defendant SHERIFF for    compensatory    and punitive    damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## STATE CLAIMS:  MRS. CORBIN

## COUNT VIII:  FALSE ARREST/IMPRISONMENT:  STATE TORT
## AARON WILLIAMS

229.    MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

230.    DEFENDANT WILLIAMS is being sued in his individual capacity.

231.    At all times material hereto, DEFENDANT WILLIAMS acted in the scope and course of his employment as a sworn law enforcement officer employed by DEFENDANT SHERIFF.

232.    The initial detention, seizure, and arrest of MRS. CORBIN by DEFENDANT WILLIAMS was without probable cause and unlawful. MRS. CORBIN was not the subject of a traffic stop or arrest and was an unarmed bystander over 25 feet away from the separate parking lot where the field sobriety test was being conducted on her husband MR. CORBIN at the time of DEFENDANT WILLIAMS actions herein against her.

233.    At no time did probable cause exist to detain, seize, or arrest MRS. CORBIN.

234.    MRS. CORBIN did not commit any act justifying that detention, seizure, or arrest by DEFENDANT WILLIAMS

235.    MRS. CORBIN did not consent to the detention, seizure, or arrest and all were done against her will.

236.    MRS. CORBIN was arrested and charged with Resist/Obstruct/Oppose Without Violence/Obstruction and Disorderly Intoxication.

237.    At no time did DEFENDANT WILLIAMS or any law enforcement officer on the scene conduct any field sobriety nor breathalyzer test on MRS. CORBIN.

238.    At no time did bystander MRS. CORBIN leave the area of her car and physically

30

enter the adjacent parking lot where DEFENDANT DAVIDSON was conducting the field sobriety test on MR. Corbin, nor enter within arm's reach of DEFENDANT WILLIAMS.

239.    In fact, DEFENDANT WILLIAMS had to walk to MRS. CORBIN to engage her.

240.    MRS. CORBIN was unarmed during this encounter.

241.    Both of DEFENDANT WILLIAMS' charges against MRS. CORBIN were *no filed* and dismissed, respectively.

242.    In the alternative, MRS. CORBIN alleges that DEFENDANT WILLIAMS was not acting in the course and scope of his employment, did commit the battery in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

243.    As a direct and proximate result of DEFENDANT WILLIAMS' illegal detention, false imprisonment, and unlawful arrest of MRS. CORBIN, MRS. CORBIN suffered a unlawful and prolonged unlawful detention, false charges and costs to fight the false criminal charges, delayed access to needed immediate medical care,  fractured tibia, multiple surgeries on that leg, pain, permanent injury, loss of physical activity, loss of consortium, loss of enjoyment of life, ongoing psychological therapy, decreased ambulatory abilities, reduced activity, a period of being wheelchair bound, extreme mental anguish, anxiety, nightmares, medical expenses, loss of financial resources, and severe emotional distress, permanent placement of metal pins and/or rods into her leg.

**WHEREFORE,** MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT GENSIMORE for  compensatory  and  punitive  damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT IX:  BATTERY:  STATE TORT
## AARON WILLIAMS

244.    MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

245.     DEFENDANT WILLIAMS is being sued in his individual capacity.

246.     At all times material hereto, DEFENDANT WILLIAMS acted in the scope and course of his employment as a sworn law enforcement officer employed by DEFENDANT SHERIFF.

247.     DEFENDANT WILLIAMS did unlawfully and intentionally touch or strike MRS. CORBIN without her consent and against her will in an offensive manner and causing great bodily harm by violently kicking her to the ground with his booted leg, causing her to land on her stomach and urinate on herself, and breaking her leg with that one kick, and then double-locking her handcuffed in that position despite her screaming that he'd broken her leg.

248.     At the time of DEFENDANT WILLIAMS actions against MRS. CORBIN, MRS. CORBIN was not the subject of a traffic stop or arrest and was an unarmed bystander over 25 feet away from the separate parking lot where the field sobriety test was being conducted on her husband MR. CORBIN.

249.     Then with the assistance of DEFENDANT GENSIMORE, DEFENDANT WILLAIMS continued his unlawful and intentional touching furthering the great bodily harm he caused by forcibly attempting to stand up MRS. CORBIN, placing weight on her leg which he'd broken, all without legal cause or her consent, and against her will.

250.     Further, DEFENDANT WILLIAMS did not give MRS. CORBIN any warning of force. including no instructions to place her hands behind her back, prior to using any force or this excessive force against MRS. CORBIN.

251.     In doing so, DEFENDANT WILLIAMS caused great bodily harm and permanent physical injury to MRS. CORBIN'S leg, requiring multiple surgeries on that leg, permanent placement of metal pins and/or rods into her leg, and now permanent requirement for assistance ambulating distances in which MRS. CORBIN could previously ambulate without assistance or rest breaks. As well, MRS. CORBIN can never dance with her husband of over 30 years again.

252.     As a direct and proximate result of DEFENDANT WILLIAMS' intentional offensive touching violently kicking MRS. CORBIN so hard he broke her leg, and

performed this unlawful physical contact against her without legal cause, her consent and against her will, MRS. CORBIN suffered and continues to suffer grave bodily harm, a fractured tibia, multiple surgeries, permanent placement of metal pins/rods in her leg, reduced physical activity, a period of being wheelchair bound, ongoing psychological/mental health therapy/counseling, pain, medical expenses, loss of financial resources, emotional anguish and distress, loss of consortium in her marital relationship, anxiety, nightmares, loss of independence, and loss of enjoyment of life. MRS. CORBIN and her husband can never go dancing again. They'd invested financial resources in dance lessons to enjoy dancing with each other in these golden years of their over 30-year marriage.

**WHEREFORE**, MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT X: ASSAULT: STATE TORT
## AARON WILLIAMS

253.    MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

254.    DEFENDANT WILLIAMS is being sued in his individual capacity.

255.    At all times material hereto, DEFENDANT WILLIAMS acted in the scope and course of his employment as a sworn law enforcement officer employed by DEFENDANT SHERIFF.

256.    DEFENDANT WILLIAMS did unlawfully and intentionally place MRS. CORBIN in immediate fear of harm from him when he aggressively approached her from over 25 feet away under color of law and without legal cause, yelling at her during the time he quickly and aggressively approached her as she, an innocent bystander at her car, attempted to observe what DEFENDANT DAVIDSON was doing to her husband in the

adjacent parking lot.

257.    DEFENDANT WILLIAMS in fact did physically harm MRS. CORBIN at that time by kicking her and breaking her leg.

258.    In doing so, DEFENDANT WILLIAMS caused reasonable apprehension of imminent harm in MRS. CORBIN, and in that time with swift seamless movement did actually violently harm MRS. CORBIN, causing permanent physical injury to MRS. CORBIN'S leg, requiring multiple surgeries on that leg, permanent placement of metal pins and/or rods into her leg, and now permanent requirement for assistance ambulating distances in which MRS. CORBIN could previously ambulate without assistance or rest breaks.

259.    As a direct and proximate result of DEFENDANT WILLIAMS' intentional and unlawful creation of apprehension of imminent harm to MRS. CORBIN and actually committing that violent imminent harm against MRS. CORBIN, MRS. CORBIN suffered and continues to suffer grave physical harm, a fractured tibia, multiple surgeries, permanent placement of metal pins/rods in her leg, reduced physical activity, a period of being wheelchair bound, ongoing psychological/mental health therapy/counseling, pain, medical expenses, loss of financial resources, emotional anguish and distress, loss of consortium in her marital relationship, anxiety, nightmares, loss of independence, and loss of enjoyment of life.  MRS. CORBIN and her husband can never go dancing again. They'd invested financial resources in dance lessons to enjoy dancing with each other in these golden years of their over 30-year marriage.

**WHEREFORE**, MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT XI:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:  STATE TORT
### AARON WILLIAMS

34

260.     MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

261.     DEFENDANT WILLIAMS is being sued in his individual capacity.

262.     At all times material hereto, DEFENDANT WILLIAMS acted in the scope and course of his employment as a sworn law enforcement officer employed by DEFENDANT SHERIFF.

263.     DEFENDANT WILLIAMS' actions stated herein against MRS. CORBIN were intentional, deliberate, as well as reckless. under color of law, and without legal cause.

264.     Using his police authority and power over MRS. CORBIN under color of law, DEFENDANT WILLIAMS intentionally raised his booted leg and kicked unarmed bystander sixty-year-old MRS. CORBIN with such immense force to take ground onto her stomach with his one kick.

265.     DEFENDANT WILLIAMS then intentionally double-locked handcuffed MRS. CORBIN into that position of on her stomach lying in her large pool of urine while she was screaming out in pain that he'd broken her leg, as he also refused to offer or render aid or call for emergency medical aid.

266.     DEFENDANT WILLIAMS then intentionally made MRS. CORBIN remain in that position for even longer with her broken leg while he called for law enforcement back-up to assist him with this unarmed bystander lying on the ground in her urine double-locked handcuffed with a broken leg, instead of calling for emergency care.

267.     DEFENDANT WILLIAMS further intentionally made MRS. CORBIN remain in that position while he awaited the law enforcement backup to arrive without any medical care at all having been provided to MRS. CORBIN, instead of calling for emergency medical care.

268.     And with that knowledge that he had broken MRS. CORBIN'S leg by kicking her so hard with one kick of his booted foot that he took her to the ground so that she urinated a large pool of urine on herself, and that he had refused to offer or render any medical aid himself or call for any medical aid, and that he had instead called for law enforcement backup, and that he'd made MRS. CORBIN still remain on the ground while

awaiting the backup to arrive, and that the backup deputy also did not offer or render any medical aid nor call for any medical aid, and that MRS. CORBIN was screaming in pain the entire time that her leg was broken while still lying in her urine double-locked handcuffed, DEFENDANT WILLIAMS then intentionally attempted to stand double-locked handcuffed MRS. CORBIN up on that broken leg to make her walk to his police car.

269.    DEFENDANT WILLIAMS knew that he'd caused MRS. CORBIN intense physical and emotional pain and disability, and that in his position he unjustly asserted power over MRS. CORBIN.  DEFENDANT WILLIAMS' actions were an unlawful and corrupt abuse his oath to uphold the laws of the State of Florida and the United States.

270.    DEFENDANT WILLIAMS' actions physically disabled MRS. CORBIN, and although trained to render aid and with the absolute authority and means to call for immediate medical assistance at the scene, DEFENDANT WILLIAMS repeatedly and intentionally refused to offer aid, render aid, or call for aid after his action of being the person solely responsible for breaking sixty-year-old MRS. CORBIN'S leg.

271.    Further, DEFENDANT WILLIAMS' actions caused MRS. CORBIN to have to undergo a second surgery for that same leg, and to endure the insertion of permanent metal pins and/or rods to that leg, and has affected her marital intimacy physical activity, ability to function at pre-op levels in all areas of her life. Prior to DEFENDANT WILLIAMS' actions, MRS CORBIN had never had surgery or pins/rods in that leg.  And now, she and her husband of over thirty years can no longer go dancing, having invested thousands into dancing lessons to enjoy dancing together in their golden years.

272.    At the time of the injury, DEFENDANT WILLIAMS was aware of the injury he'd caused MRS. CORBIN and purposefully chose to allow MRS. CORBIN to continue to suffer.

273.    DEFENDANT WILLIAMS' conduct caused long-term physical injury and severe emotional distress to MRS. CORBIN.  His actions were a deliberate or reckless infliction of mental suffering against MRS. CORBIN.

274.    DEFENDANT WILLIAMS' conduct was outrageous and shocking to the

conscience, causing MRS. CORBIN severe emotional distress to the point where she is still being seen by a mental health therapist and experiencing depression, nightmares, and anxiety, as she has to adjust to the new reduced quality of life and marriage resulting from DEFENDANT WILLIAMS' actions. Indeed, she and MR. CORBIN are now in therapy as well. No reasonable person would see DEFENDANT WILLIAMS' actions as a mere annoyance or acceptable in civilized society.

275.    To wit, both of his charges against MRS. CORBIN were no filed and dismissed, respectively.

276.    As a direct and proximate result of DEFENDANT WILLIAMS' intentional or reckless and outrageous conduct against MRS. CORBIN causing her both long-term severe mental and physical injury unacceptable in a civilized society, MRS. CORBIN suffered unlawful and prolonged unlawful detention, false charges and costs to fight the false criminal charges, delayed access to needed immediate medical care, fractured tibia, multiple surgeries on that leg, pain, permanent injury, loss of physical activity, loss of consortium, loss of enjoyment of life, ongoing psychological therapy, decreased ambulatory abilities, reduced activity, a period of being wheelchair bound, extreme mental anguish, anxiety, nightmares, medical expenses, loss of financial resources, and severe emotional distress, permanent placement of metal pins and/or rods into her leg.

**WHEREFORE,** MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: STATE TORT
### DAVID GENSIMORE

277.    MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

278.    DEFENDANT GENSIMORE is being sued in his individual capacity.

279.     At all times material hereto, DEFENDANT GENSIMORE acted in the scope and course of his employment as a sworn law enforcement officer employed by DEFENDANT SHERIFF.

280.     DEFENDANT GENSIMORE'S actions stated herein against MRS. CORBIN were intentional, deliberate, as well as reckless. under color of law, and without legal cause.

281.     DEFENDANT GENSIMORE was a Sergeant and supervisor at all times material hereto, who had the authority and duty to inquire into the lawfulness of DEFENDANT WILLIAMS' actions, stop DEFENDANT WILLIAMS' actions, and choose not to participate in any unlawful or lawful actions himself.

282.     In other words, despite what DEFENDANT WILLIAMS did or was doing to MRS. CORBIN, DEFENDANT GENSIMORE did not have to participate in, allow, or continue that same conduct in any way.

283.     However, using his police authority and power over MRS. CORBIN under color of law, DEFENDANT GENSIMORE personally observed unarmed MRS. CORBIN double-locked handcuffed on the ground on her stomach in her own urine screaming that DEFENDANT WILLIAMS had broken her leg, and allowed MRS. CORBIN to continue lying there screaming in pain without offering aid or summoning medical attention or instructing DEFENDANT WILLIAMS to do so, and then intentionally attempted to lift MRS. CORBIN from the ground on her broken leg while she was double locked handcuffed lying in her own urine, screaming out in pain that DEFENDANT WILLIAMS had broken her leg.

284.     DEFENDANT GENSIMORE used his police authority under color of law to order MRS. CORBIN to walk to the police car on that broken leg.

285.     DEFENDANT GENSIMORE knew that he was further delaying MRS. CORBIN'S access to medical care and exacerbating her injury, although he had the absolute power to put a stop to the unconscionable actions of both himself and DEFENDANT WILLIAMS right then.

286.     DEFENDANT GENSIMORE caused MRS. CORBIN intense physical and

emotional pain and disability, and that in his position he unjustly asserted power over MRS. CORBIN. DEFENDANT GENSIMORE'S actions were an unlawful and corrupt abuse his oath to uphold the laws of the State of Florida and the United States.

287.    DEFENDANT GENSIMORE'S actions further physically disabled MRS. CORBIN, causing her leg to swell more, to the point that she could not receive the needed surgery immediately once the deputies did choose to call for medical care after MRS. CORBIN could not stand and walk on her broken leg as ordered.

288.    Further, DEFENDANT GENSIMORE'S conduct caused MRS. CORBIN to have to undergo a second surgery for that same leg, and to endure the insertion of permanent metal pins and/or rods to that leg, and has affected her marital intimacy physical activity, ability to function at pre-op levels in all areas of her life. Prior to DEFENDANT GENSIMORE'S actions, MRS CORBIN had never had surgery or pins/rods in that leg. And now, she and her husband of over thirty years can no longer go dancing, having invested thousands into dancing lessons to enjoy dancing together in their golden years.

289.    At the time of the injury, DEFENDANT GENSIMORE was aware of the injury he'd caused MRS. CORBIN and purposefully chose to allow MRS. CORBIN to continue to suffer.

290.    DEFENDANT GENSIMORE'S conduct caused long-term physical injury and severe emotional distress to MRS. CORBIN. His actions were a deliberate or reckless infliction of mental suffering against MRS. CORBIN.

291.    DEFENDANT GENSIMORE'S conduct was outrageous and shocking to the conscience, causing MRS. CORBIN severe emotional distress to the point where she is still being seen by a mental health therapist and experiencing depression, nightmares, and anxiety, as she has to adjust to the new reduced quality of life and marriage resulting from DEFENDANT GENSIMORE'S actions. Indeed, she and Mr. Corbin are now in therapy as well. No reasonable person would see DEFENDANT GENSIMORE'S actions as a mere annoyance or acceptable in civilized society.

292.    To wit, both of his charges against MRS. CORBIN were no filed and dismissed, respectively.

293.     As a direct and proximate result of DEFENDANT GENSIMORE'S intentional or reckless and outrageous conduct against MRS. CORBIN causing her both long-term severe mental and physical injury unacceptable in a civilized society, MRS. CORBIN suffered unlawful and prolonged unlawful detention, false charges and costs to fight the false criminal charges, delayed access to needed immediate medical care, fractured tibia, multiple surgeries on that leg, pain, permanent injury, loss of physical activity, loss of consortium, loss of enjoyment of life, ongoing psychological therapy, decreased ambulatory abilities, reduced activity, a period of being wheelchair bound, extreme mental anguish, anxiety, nightmares, medical expenses, loss of financial resources, and severe emotional distress, permanent placement of metal pins and/or rods into her leg.

**WHEREFORE,** MRS. CORBIN seeks entry of an Order for final judgment against DEFENDANT GENSIMORE for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT XIII:  NEGLIGENT RETENTION
## BILL PRUMMEL, JR./DEFENDANT SHERIFF

294.     MRS. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

295.     DEFENDANT SHERIFF is being sued in his official capacity.

296.     DEFENDANTS WILLIAMS, GENSIMORE, ROGUSKA, and DAVIDSON ("DEFENDANT DEPUTIES") named in this complaint are current employees of DEFENDANT SHERIFF working within the course and scope of their employment as sworn law enforcement deputies/officers

297.     At the time of conduct alleged herein against MR. CORBIN on November 19, 2019, and all times material hereto, DEFENDANT DEPUTIES were on-duty sworn law enforcement employees of DEFENDANT SHERIFF, and were acting as agents, employees, or representatives of DEFENDANT SHERIFF

298.     At all times material hereto DEFENDANT SHERIFF had a duty to protect the citizenry from its police officers who failed to proceed with reasonable care in

performing their operational tasks or functions, and discretionary functions, who violated the civil rights of its citizenry.

299.    DEFENDANT SHERIFF knew or should have known that police were constantly being charged or arrested for substantial civil rights violations including false arrest, excessive force, battery, and the allegations herein because these stories were constantly on national news in the public domain, wherein almost all instances are captured on body worn camera or dashcam. DEFENDANT SHERIFF does not require the use of bodycam or dashcam by its employees.

300.    Here, DEFENDANT SHERIFF did know that DEFENDANT DEPUTIES had failed to use reasonable care and violated the rights of MRS. CORBIN because over a year ago on or about January 8, 2021, MRS.CORBIN served a written pre-suit notice on DEFENDANT SHERIFF detailing her claims and officers/deputies involved, along with a copy of her x-rays and photographs of her injuries and the new permanent metal pins and/or rods in her leg, operative report from the hospital, and the criminal docket showing DEPENDANT DEPUTIES' charges against her were no filed and dismissed.

301.    Further, DEFENDANT SHERIFF had access to the police report written by DEFENDANT DEPUTIES, and access to DEFENDANT DEPUTIES themselves to investigate, discipline, and make final decisions regarding the continued employment of DEFENDANT DEPUTIES.

302.    Moreover, when MRS. CORBIN initially tried to serve the DEFENDANT SHERIFF and DEFENDANT DEPUTIES her pre-suit notice, DEFENDANT SHERIFF assisted its DEFENDANT DEPUTIES' attempt to avoid service by ensuring the deputies would not be present nor respond to calls to come to the department for service of their on-the-job conduct multiple times when the process service returned at the time directed by DEFENDANT SHERIFF.

303.    Yet, DEFENDANT SHERIFF continued to employ and employs those same DEFENDANT DEPUTIES who severely breached their duty of care to MRS. CORBIN in their performance of their operational functions and in their discretionary functions.

304.    DEFENDANT SHERIFF did not discipline these DEFENDANT DEPUTIES

severely breached their duty of care to MRS. CORBIN in their performance of their operational functions and in their discretionary functions.

305.    DEFENDANT SHERIFF was aware over a year ago and even now that its employees acting in the scope and purpose of their employment breached their duty of care and to uphold the law caused this severe emotional and physical harm to MRS. CORBIN in an unlawful arrest.

306.    DEFENDANT SHERIFF was aware over a year ago and even now that its employees breach of their duty of reasonable care and to uphold the law were the sole and proximate cause of MRS. CORBIN'S physical and mental injuries and unlawful arrest.

307.    DEFENDANT SHERIFF was aware over a year ago and even now that the injures to MRS. CORBIN resulting from its employees' breach are great bodily harm and long-term.

308.    DEFENDANT SHERIFF continues to employ DEFENDANT WILLIAMS.

309.    DEFENDANT SHERIFF continues to employ DEFENDANT DAVIDSON.

310.    DEFENDANT SHERIFF continues to employ DEFENDANT ROGUSKA.

311.    DEFENDANT SHERIFF continues to employ DEFENDANT GENSIMORE.

312.    MRS. CORBIN'S complaint was not the first complaint DEFENDANT SHERIFF has received from the public against sworn law enforcement employees of DEFENDANT SHERIFF.

313.    Further, DEFENDANT DEPUTIES' actions against MRS. CORBIN named in this complaint and breach of duty of reasonable care and to uphold the law, were also caused committed, and ratified by two separate supervisors at two different levels at two different times. Yet, DEFENDANT SHERIFF continues to employ these DEFENDANT DEPUTIES.

314.    DEFENDANT SHERIFF has not diminished nor prevented the breach of duty in operational tasks by DEFENDANT SHERIFF'S sworn law enforcement despite DEFENDANT SHERIFF'S knowledge of the risk of harm to its citizens, and none have substantially been taken by DEFENDANT SHERIFF since MRS. CORBIN'S notice.

315.    In fact, **after** DEFENDANT DEPUTIES actions against MRS. CORBIN, at least one of the same DEFENDANT DEPUTIES committed another pre-textual traffic stop under guise of DUI arrest, again instructing that Defendant to blow more than twice in a breathalyzer in attempt to obtain a false result to justify violations of the civil rights of the citizenry.  That Defendant was acquitted.

316.    Accordingly, DEFENDANT SHERIFF knew or should have known that breach of the duty of reasonable care and to uphold the existed in the ranks of its sworn law enforcement employee ranks with the potential for great bodily harm to the public, and should have taken strong necessary action to prevent or diminish such breach and harm to the citizenry from its deputies/officers. DEFENDANT SHERIFF failed to take such actions, and even knowingly and intentionally retained the DEFENDANT DEPUTIES show committed such breach of duty of reasonable care and to uphold the law.

317.    Those DEFENDANT DEPUTIES retained by DEFENDANT SHERIFF are the sole actual and proximate cause of the severe long-term physical and mental harm to MRS. CORBIN.

318.    As the direct and proximate cause of DEFENDANT SHERIFF'S decisions to not implement actions to diminish or prevent the foreseeable violations of the rights of its rights by its DEFENDANT DEPUTIES employees, MRS. CORBIN has suffered great physical and emotional harm as aforestated in this complaint.

**WHEREFORE,** MRS. CORBIN seeks entry of an Order for final judgment against DEFEDANT SHERIFF for  compensatory  and  punitive  damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## STATE TORTS:  MR. CORBIN

## COUNT XIII:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:  STATE TORT
## AARON WILLIAMS

319.     MR. CORBIN hereby re-alleges and incorporates paragraphs 1- 132 as if pled herein.

320.     DEFENDANT WILLIAMS is being sued in his individual capacity.

321.     At all times material hereto, DEFENDANT WILLIAMS acted in the scope and course of his employment as a sworn law enforcement officer employed by DEFENDANT SHERIFF.

322.     Exception to the Impact Rule allows a Plaintiff to recover damages who is closely related to the injured person, was in the zone of danger/at the location where the physical injury occurred, was able to perceive the incident, and suffers emotional distress as a result.

323.     MR. CORBIN has been married to MRS. CORBIN for over thirty years and was physically present at the scene when DEFENDANT WILLIAMS kicked MRS. CORBIN and broke her leg without legal cause and under color law.

324.     MR. CORBIN was able to hear his wife's ongoing screams of immediate and severe pain from DEFENDANT WILLIAMS breaking her leg, and was forced to suffer that trauma without being able to tend or go to his wife throughout the time of DEFENDANT WILLIAMS actually breaking MRS. CORBIN'S leg, making them wait while he called for additional law enforcement as opposed to medical care, while DEFENDANTS WILLIAMS and GENSIMORE attempted to stand MRS. CORBIN up on her broken leg, while DEFENDANT WILLAMS then finally called for medical care, while paramedics triaged MRS. CORBIN and loaded her onto the stretcher for transport to the hospital, and until paramedics did actually leave the scene transporting MRS. CORBIN to the hospital, all as a result of DEFENDANT WILLIAMS breaking MRS. CORBIN'S leg.

325.     MR. CORBIN was prevented from being able to calm his wife, or his own fears and anguish over what was happening to his wife as he perceived this injury.

326.     MR. CORBIN was unable to protect his wife as the long-term provide and protector in their marriage and could only stand helplessly by as DEFENDANT WILLIAMS broke her leg, refused her medical care, and as she was transported from the scene, not knowing where she was going.

327.    MR. CORBIN'S mental anguish continued even after his wife had been transported from the scene because he didn't know where she was going, and he was instead taken to the police station.

328.    Had DEFENDANT WILLAMS not unlawfully broken MRS. CORBIN'S leg, MR. CORBIN would not have suffered the extreme emotional and mental anguish he suffered and continues to suffer due to DEFENDANT WILLIAMS' actions.

329.    DEFENDANT WILLIAMS' conduct caused immediate and long-term physical injury and mental anguish to MRS. CORBIN, and severe emotional distress to MR. CORBIN.

330.    MR. CORBIN is now in therapy.

331.    As a direct and proximate result of DEFENDANT WILLIAMS' unlawful force causing severe physical injury to MR. CORBINS' wife while MR. CORBIN was physically present, able to perceive that injury, and suffered severe emotional distress as a result, MR. CORBIN suffered severe mental anguish, fear, pain and suffering, humiliation, fear of police, anxiety, nightmares, medical expenses, time off from work, loss of financial resources, and severe emotional distress.

**WHEREFORE,** MR. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.


## COUNT XV:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:  STATE TORT
## MICHAEL DAVIDSON


332.    MR. CORBIN hereby re-alleges and incorporates paragraphs 1- 132 as if pled herein.

333.    DEFENDANT DAVIDSON is being sued in his individual capacity.

334.    At all times material hereto, DEFENDANT DAVIDSON acted in the scope and course of his employment as a sworn law enforcement officer employed by

DEFENDANT SHERIFF.

335.    Exception to the Impact Rule allows a Plaintiff to recover damages who is closely related to the injured person, was in the zone of danger/at the location where the physical injury occurred, was able to perceive the incident, and suffers emotional distress as a result.

336.    DEFENDANTS WILLIAMS and DAVIDSON initiated a traffic stop of THE CORBINS on November 19, 2019.

337.    DEFENDANT WILLIAMS kicked MRS. CORBIN and broke her leg.

338.    At the time of DEFENDANT WILLIAMS' breaking MRS. CORBIN'S leg, MRS. CORBIN was married to MR. CORBIN.

339.    MR. CORBIN was physically present in an adjacent parking lot undergoing a field sobriety test by DEFENDANT DAVIDSON when DEFENDANT WILLIAMS broke MRS. CORBIN'S leg.

340.    MRS. CORBIN screamed that DEFENDANT WILLIAMS had broken her leg after DEFENDANT WILLIAMS kicked MRS. CORBIN.

341.    MRS. CORBIN continued to scream out in pain from her broken leg.

342.    MR. CORBIN could hear his wife's ongoing screams that her leg was broken.

343.    DEFENDANT DAVIDSON had MR. CORBIN under DEFENDANT DAVIDSON'S custody and control at the time that DEFENDANT WILLIAMS broke MRS. CORBIN'S leg.

344.    MR. CORBIN could not leave the adjacent parking lot to go to his wife's location or to speak with paramedics without DEFENDANT DAVIDSON'S permission.

345.    MR. CORBIN was able to hear his wife's ongoing screams of immediate and severe pain from DEFENDANT WILLIAMS breaking her leg and DEFENDANT GENSIMORE exacerbating her physical injury of a broken leg and refusing to call for medical care.

346.    MR. CORBIN repeatedly expressed his sincere and substantial fear and anxiety concerning his wife's injury and well-being to DEFENDANT DAVIDSON.

347.    DEFENDANT DAVIDSON did not give MR. CORBIN permission to go calm or

check on MR. CORBIN'S welfare, or to speak with paramedics.

348.     DEFENDANT DAVIDSON did not physically take MR. CORBIN to the adjacent parking lot so that MR. CORBIN could talk with the paramedics tending to, or, MRS. CORBIN.

349.     DEFENDANT DAVIDSON did not answer MR. CORBIN'S concerns regarding MRS. CORBIN.

350.     Instead, DEFENDANT DAVIDSON told MR. CORBIN that MR. CORBIN "better not move."

351.     DEFENDANT DAVIDSON then forced MR. CORBIN, husband of over thirty years to MRS. CORBIN, to stand there and listen to his wife's repeated screams of pain that DEFENDANT WILLIAMS had broken her leg.

352.     DEFENDANT DAVIDSON rendered MR. CORBIN utterly helpless in MR. CORBIN'S role and duties as a husband to MRS. CORBIN.

353.     Further, even when paramedics arrived and MR. CORBIN could see his wife on a stretcher at that time, DEFENDANT DAVIDSON refused to communicate to MR. CORBIN where paramedics were taking MRS. CORBIN from the scene.

354.     Instead, DEFENDANT DAVIDSON then charged MR. CORBIN with a DUI, handcuffed MR. CORBIN, placed MR. CORBIN in the back of DEFENDANT DAVIDSON'S police car, and took MR. CORBIN to the local police station.

355.     MR. CORBIN was unable to protect his wife as the long-term provider and protector in their marriage and could only stand helplessly by as DEFENDANT WILLIAMS broke her leg, DEFENDANT GENSIMORE exacerbated the injury of the known broken leg, both deputies refused her medical care, she was transported from the scene, not knowing where she was going, because MR. CORBIN was in the custody and control of DEFENDANT DAVIDSON, who refused to give MR. CORBIN any information about MRS. CORBIN and threatened MR. CORBIN that he "better not move."

356.     DEFENDANT DAVIDSON'S actions caused and exacerbated the severe psychological trauma MR. CORBIN experienced from physically perceiving the physical

injury of his wife of over 30 years at the scene of the injury.

357.    MR. CORBIN'S mental anguish continued even after his wife had been transported from the scene because he didn't know where she was going, and he was instead taken to the police station.

358.    Had DEFENDANT DAVIDSON not refused to even provide nominal information of what happened to MR. CORBIN'S wife of over 30 years, during and after DEFENDANT GENSIMORE exacerbated the physical injury of DEFENDANT WILLIAMS unlawfully broken MRS. CORBIN'S leg, while MR. CORBIN was in DEFENDANT DAVIDSON'S custody and control as part of a traffic stop of THE CORBINS that DEFENDANTS WILLIAMS and DAVIDSON initiated together, MR. CORBIN would not have suffered the extreme emotional and mental anguish he suffered and continues to suffer due to DEFENDANT DAVIDSON'S actions.

359.    MR. CORBIN is now in therapy.

360.    As a direct and proximate result of DEFENDANT DAVIDSON retaining MR. CORBIN in DEFENDANT DAVIDSON'S physical custody and control without providing any explanations or answers regarding MRS. CORBIN'S broken leg or whereabouts from DEFENDANT WILLIAMS' actions, at the known scene of severe and substantial physical injury to MRS. CORBIN where it was known that MR. CORBIN was present and witnessed that injury, it was foreseeable that DEFENDANT DAVIDSON'S actions would cause and/or exacerbate the severe emotional distress to MR. CORBIN from the injury to MRS. CORBIN, and DEFENDANT DAVIDSON did in fact cause that severe emotional distress in MR. CORBIN.

361.    MR. CORBIN suffered severe mental anguish, fear, pain and suffering, humiliation, fear of police, anxiety, nightmares, medical expenses, time off from work, loss of financial resources, and severe emotional distress.

**WHEREFORE,** MR. CORBIN seeks entry of an Order for final judgment against DEFENDANT DAVIDSON for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT XVI:  LOSS OF CONSORTIUM:  STATE TORT

## AARON WILLIAMS

362.      MR. CORBIN hereby re-alleges and incorporates paragraphs 1 – 132 as if pled herein.

363.      DEFENDANT WILLIAMS is being sued in his individual capacity.

364.      At all times material hereto, DEFENDANT WILLIAMS acted in the scope and course of his employment as a sworn law enforcement officer employed by DEFENDANT SHERIFF.

365.      At all times material hereto, THE CORBINS were a married couple who resided at the same address.

366.      At all times material hereto, THE CORBINS had been married for over 30 years.

367.      At all times material hereto, MR. CORBIN was employed outside the home.

368.      At all times material hereto, MRS. CORBIN was a homemaker/housewife.

369.      At all times material hereto, THE CORBINS were happy in their marriage relationship and marital intimacy.

370.      MRS.CORBIN provided marital intimacy and companionship to MR. CORBIN.

371.      MRS. CORBIN physically took care of the home, including cooking, cleaning, laundry, and other household chores.

372.      MR. CORBIN provides for the marriage financially through employment.

373.      THE CORBINS loved going out dancing together and invested over a thousand dollars into dancing lessons.

374.      THE CORBINS enjoyed time together performing activities and attending events inside and outside their home together

375.      THE CORBINS loved and love each other.

376.      Neither of THE CORBINS used any assistive device for ambulation/walking or a wheelchair.

377.      Each of THE CORBINS were able to move about in and out of the home as desired independent of the other and perform activities inside the home independent of the other.

378.      On November 29, 2019, DEFENDANT WILLIAMS kicked MRS. CORBIN and broke her leg during a traffic stop in Charlotte County, Florida.

379.      MR. CORBIN was present in an adjacent parking lot when DEFENDANT WILLIAMS broke MRS. CORBIN'S leg.

380.      THE CORBINS were returning from a night out dancing when DEFENDANT WILLIAMS kicked her and broke her leg during this traffic stop.

381.      As a result of DEFENDANT WILLIAMS's kick, MRS. CORBIN had to be transported from the scene of the traffic stop to a hospital via ambulance.

382.      MRS. CORBIN was admitted to the hospital and underwent surgery for her broken leg.

383. Almost a year later MRS. CORBIN had to undergo a Total Knee Replacement on that same leg.

384. Permanent metal rods and/or pins had to be inserted into MRS.CORBIN'S legs.

385. MRS. CORBIN was wheelchair-bound due to her broken leg.

386. MRS. CORBIN had to undergo physical therapy for her broken leg.

387. MRS. CORBIN had to undergo and continues psychological counseling due to DEFENDANT WILLIAMS breaking her leg.

388. MRS. CORBIN was prescribed pain medications due to DEFENDANT WILLIAMS breaking her leg.

389. MRS. CORBIN suffers depression due to DEFENDANT WILLIAMS breaking her leg.

390. MRS. CORBIN suffers decreased libido due to DEFENDANT WILLIAMS breaking her leg.

391. MRS. CORBIN suffers physical pain due to DEFENDANT WILLIAMS breaking her leg.

392. MRS. CORBIN is unable to perform her household chores to the extent of time and result as prior to DEFENDANT WILLIAMS breaking her leg.

393. MRS. CORBIN is unable to provide the same level of companionship, laughter, and marital bliss to MR. CORBIN as prior to DEFENDANT WILLIAMS breaking her leg.

394. MRS. CORBIN is unable to provide the same level of marital intimacy to MR. CORBIN as prior to DEFENDANT WILLIAMS breaking her leg.

395. MRS. CORBIN now has to rely on MR. CORBIN for transportation.

396. MR. CORBIN had to take MRS. CORBIN to multiple doctor's appointments, surgeries, psychological counseling, and other activities wherein MRS. CORBIN previously would have been able to attend independent of MR. CORBIN.

397. Due to DEFENDANT WILLIAMS' actions, MRS. CORBIN is no longer and cannot exist as the same person and in function in this over 30-year marriage as she did prior to DEFENDANT WILLIAMS kicking her so hard that he broke her leg with one kick.

398. THE CORBINS marriage is forever adversely affected by DEFENDANT WILLIAMS' actions and the loss of martial intimacy, companionship, love, function within their respective roles, and all other benefits and expectations of marriage is ongoing and will never be the same as pre-kick by DEFENDANT WILLIAMS.

399. As a direct and proximate result of DEFENDANT WILLIAMS causing MRS. CORBIN'S spouse MR. CORBIN to suffer harm and loss from DEFENDANT WILLIAMS kicking MRS. CORBIN and breaking her leg requiring multiple surgeries and ongoing treatment, MR. CORBIN suffered severe loss of companionship, quality of life, quality of marriage, marital intimacy, normal function and role of MRS. CORBIN in the marriage, mental anguish, medical expenses, time off from work,  loss of financial resources, and severe emotional distress.  DEFENDANT WILLIAMS has caused the

golden years of this over thirty-year marriage to never be the same.

**WHEREFORE,** MR. CORBIN seeks entry of an Order for final judgment against DEFENDANT WILLIAMS for compensatory and punitive damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

As to each count and claim herein, which is so trial, Plaintiffs MR. CORBIN and MRS. CORBIN seek a trial by jury.

Rawsi Williams, Esq., R.N.    ``        /s/ Frank T. Allen
Rawsi Williams Law Group                Frank T. Allen, Esq.
701 Brickell Ave. STE 1550              The Allen Firm, P.A.
Miami, FL 33131                         2582 Maguire Rd., STE 130
TEL: 888-RawsiLaw/888-729-7452          Ocoee, FL 34761
www.CallRawsiWilliams.com               (407) 407-481-8103(Tel)/-0009 (Fax)
Email: rawsi@rawsi.com                  www.TheAllenFirmPA.com
Counsel for Plaintiffs                  Email: Fallen@TheAllenFirmPA.com
                                        Counsel for Plaintiffs