UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION

2:22-cv-00394-JES-KCD

SANDRA CORBIN and JOHN CORBIN,

        Plaintiffs,


v.

BILL PRUMMELL, JR., in his official capacity as SHERIFF of the Charlotte County, Florida's Sheriff's Office, DAVID GENSIMORE, individually and in his official Capacity as a Deputy for the Charlotte County Sheriff's Office, AARON WILLIAMS, individually and in his official Capacity as a Deputy for the Charlotte County Sheriff's Office, KENRICK ROGUSKA, individually and in his capacity as a Deputy for the Charlotte County Sheriff's office, and MICHAEL DAVIDSON, individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office.

        Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT DAVID GENSIMORE'S MOTION TO DISMISS

COMES NOW Plaintiffs, SANDRA CORBIN and JOHN CORBIN ('PLAINTIFFS" or 'THE CORBINS"), and hereby file this *Plaintiffs' Response In Opposition to Defendant David Gensimore's Motion to Dismiss* pursuant to Rule 12(b)(6), and so state:

## I.  INTRODUCTION

With respect to this Court, Defendant David Gensimore ("GENSIMORE") in his *Motion To Dismiss* ("MTD") overwhelmingly omitted and mispresented relevant and substantial facts plead within the four corners of PLAINTIFFS' Complaint, with all

1

reasonable inferences, as he attempted to hide his liability behind his subordinate WILLIAMS, <u>while admitting facts and citing case law concerning his own actions favorable to PLAINTIFFS'</u> claims and in opposition to his MTD.  Well-settled case law holds GENSIMORE must be held accountable to answer the well-plead Complaint against him where he violated MRS. CORBIN'S clearly established constitutional rights under color of law, of which Sergeant GENSIMORE was on fair notice and qualified immunity does not apply, he does not meet the threshold for his asserted sovereign immunity, and each count alleged against him sufficiently plead the facts of the elements of each count as to his non-discretionary actions. In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. <u>SEC v. ESM Group, Inc.,</u> 835 F.2d 270, 272 (11th Cir.1988).  Here, in the light most favorable to PLAINTIFFS where their Complaint is taken in its entirety, sufficient plausible claims exist against GENSIMORE upon which relief can be granted. GENSIMORE'S 12(b)(6) MTD should be denied.

## II. <u>GENSIMORE OMITTED RELEVANT FACTS AND MIS-REPRESENTED SUBSTANTIAL FACTS IN HIS MTD</u>

1.    For this Court's convenience, citations to PLAINTIFFS' Complaint will cite as <u>PC:PAGENUMBER:PARAGRAPHNUMBER</u>,  and  to    GENSIMORE'S  MTD  as <u>MTD:PAGE NUMBER:PARAGRAPHNUMBER</u>.        Docket Entry is <u>DE</u>.

2.   In his MTD, GENSIMORE asserted the six following grounds as basis (<u>MTD:3:4</u>):

1) Count II is properly dismissed as there are no plausible allegations that

2

Gensimore was personally involved in the seizure or arrest of Mrs. Corbin;

2) Count VII is properly dismissed as there are no plausible allegations that Gensimore was deliberately indifferent to Mrs. Corbin's serious medical need;

3) Gensimore is entitled to qualified immunity as to Counts II and VII;

4) The Complaint fails to state a claim for the IIED;

5) Gensimore is entitled to sovereign immunity as to Count XII; and

6) The Complaint fails to state a claim for relief against Gensimore in his official capacity under federal law.

3.   PLAINTIFFS alleged three Counts against GENSIMORE in their Complaint:  1) Federal Count II:  False Arrest/False Imprisonment (PC:17:144-156) 2) Deliberate Indifference/Failure to Render Aide (PC:25:203-215); and 3) State Claim Intentional Infliction of Emotional Distress (PC:27:277-293).

4.    PLAINTIFFS alleged that GENSIMORE was being sued in his Individual Capacity under color of law (PC:4:10), and that pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleges that DEFENDANT DEPUTIES did not commit the counts named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property. (PC:28:221-227).

5.   In support of his MTD, GENSIMORE inaccurately cited, substantially misrepresented, and outright omitted multiple relevant facts alleged in the Complaint:

First, contrary to GENSIMORE'S MTD where he alleged MRS. CORBIN was

3

complaining of "leg pain," the facts plead in PLAINTIFFS' complaint specifically states she informed both WILLIAMS and GENSIMORE that WILLIAMS broke her leg, which was visibly distorted and swelling because he fractured her tibia.

Second, GENSIMORE omitted that at the time of this traffic stop at issue, MRS. CORBIN was an innocent passenger and bystander.  She was not the reason for the traffic stop, a suspect, or under arrest prior to WILLIAMS' kick.

Third, GENSIMORE omitted that all times material hereto, MRS. CORBIN was over 25 feet away from the separate parking lot where DAVIDSON was conducting the field sobriety test on MR. CORBIN.  *WILLIAMS* approached *her* to tell her at her car to get into her car and to kick her. In his Answer, DEFENDANT SHERIFF admitted the sobriety test was in a different parking lot.  (DE21:4:27).

Fourth, GENSIMORE omitted it was MR. CORBIN'S perceived screams which drew the innocent bystander MRS. CORBIN outside THE CORBIN'S car to observe what was happening to her husband of over 30 years who had never been arrested, and that WILLIAMS had placed himself in such a way that obstructed her view.

Sixth, GENSIMORE omitted that when WILLIAMS kicked MRS. CORBIN so hard he broke her leg, she was still standing over 25 feet away at her car observing the deputies.  WILLIAMS aggressively approached *MRS. CORBIN* yelling at her and kicked her to the ground.

Seventh, GENSIMORE misrepresented the chronology and timing of the facts

4

involving WILLIAMS and GENSIMORE in such a way that minimizes GENSIMORE'S actions, and his intentional and distinct operative functions (as opposed to Discretionary functions).   GENSIMORE acted way beyond the portrayed passive horizontal-line back-up co-worker merely assisting another Officer, with no duty to inquire into the lawfulness of the other officer's actions, no authority to cease the actions of the other officer, and no authority or duty to not  violate her rights himself.

Eighth, GENSIMORE misrepresented the facts as if all he did was respond to the scene, see MRS. CORBIN on the ground complaining of only "leg pain," attempt to "assist" WILLIAMS life her, at some unknown point to him summon EMS.

Ninth, the provable facts as plead by PLAINTIFFS are that  GENSIMORE -- who was a Sergeant, direct supervisor of  WILLIAMS, and the only Sergeant on the scene -- responded to the call; arrived at the scene where he observed MRS. CORBIN lying on the ground double-locked handcuffed on her stomach by her car in a large pool of urine, not in the separate parking lot where the field sobriety test was being conducting. She was screaming in pain to him that WILLIAMS broke her leg, with a visibly distorted and swelling leg.   GENSIMORE did not offer, render, or call for medical assistance despite his personal knowledge of her serious medical condition; did not inquire with her into what happened; order WILLIAMS to cease his violations of MRS. CORBIN'S rights, or even release the handcuffs she'd been required to wear in that position with a broken leg the entire time GENSIMORE was in route. Instead, Sergeant

GENSIMORE took physical custody and control in this arrest and detention. Then, he ordered MRS. CORBIN to get up from the ground without assistance and walk to the police car without assistance on her broken leg. Then, GENSIMORE ordered with WILLIAMS that they would forcibly stand her up on her broken leg to bear weight on that broken leg to walk to the police car with their assistance because she couldn't walk as ordered. Then, when she couldn't walk with them, EMS was finally called.

Tenth, GENSIMORE omitted that he as Sergeant then allowed and/or ordered WILLIAMS to ride physically in the back of the ambulance to Fawcett Hospital with MRS. CORBIN despite her non-consent for WILLIAMS to be in the back of the ambulance with her after breaking her leg, and unlawfully acquiring her HIPAA-protected information.  Other police transportation was available to WILLIAMS.

Eleventh, GENSIMORE mispresented and omitted the serious injury to MRS. CORBIN by stating only of her injury that "while at the hospital (Defendants) learned (MRS. CORBIN'S) leg was broken." The facts plead in PLAINTIFFS' Complaint are that MRS. CORBIN repeatedly told WILLIAMS and GENSIMORE on the scene that her leg was broken, and her leg was visibly distorted and swelling. MRS. CORBIN was diagnosed and admitted for immediate surgery on her leg but had to stay in the hospital approximately two days before the surgery could be performed to allow the visible swelling from WILLIAMS' and GENSIMORE'S delay of treatment to subside. Permanent pins and rods were placed in her leg.  She had to undergo multiple

6

surgeries.  She lost her ability to ambulate independently, and go dancing with her husband, which is what THE CORBINS had just left doing when the traffic stop ensued.

Twelfth, GENSIMORE omitted that the charges against MRS. CORBIN of obstruction and resisting arrest, and disorderly conduct were dropped.

Thirteenth, GENSIMORE omitted further relevant plead facts and inferences giving rise to PLAINTIFFS' plausible claims against him showing PLAINTIFFS are entitled to relief against GENSIMORE where the Complaint is taken in a light most favorable to PLAINTIFFS and the facts alleged are believed to be true.

## III.     ARGUMENT AND MEMORANDUM OF LAW

### A.    LEGAL STANDARD OF REVIEW.

At the outset, PLAINTIFFS have met the legal standard to survive GENSIMORE'S MTD.  GENSIMORE failed to meet his burden in his MTD.

Under well-settled case law and Fed. R. Civ. Proc 8(a)(2), a district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  Fed. R. Civ. Proc.  8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, Conley v. Gibson, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). When deciding Rule 12(b)(6) motions, the Court must

consider the complaint in its entirety. <u>Tellabs, Inc. v. Makar Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. <u>SEC v. ESM Group, Inc</u>., 835 F.2d 270, 272 (11th Cir.1988).  The moving party bears the initial responsibility of stating the basis for its motions and identifying **those** portions of the record which demonstrate the absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Here, GENSIMORE not only failed to meet his burden of proof in his generalized MTD, but also made <u>several admissions and cited multiple case law in favor of</u> <u>*PLAINTIFFS' claims* against him</u>. PLAINTIFFS filed claims against GENSIMORE upon which relief is entitled, can be granted, and which a jury could decide that GENSIMORE is liable to MRS. CORBIN, who was in his physical custody and control in this matter containing multiple provable issues of genuine material fact. The facts plead against GENSIMORE were detailed specific provable facts of GENSIMORE'S actions giving rise to the claims against him. He was not a passive or assisting backup officer. He was the only Sergeant on the scene and WILLIAMS' direct supervisor.

GENSIMORE cannot now hide behind his subordinate WILLIAMS to shield GENSIMORE'S violations of MRS. CORBIN'S clearly established constitutional rights under color of law.  A relationship establishing a duty of care owed to an individual has been recognized in situations where an officer arrests an individual and thereafter

8

places that person in a harmful situation, and governmental entities can be liable.  This duty of care includes where an officer deprives an individual of the opportunity to make decisions for himself and, therefore, the individual cannot protect himself from the harmful result. <u>Seguine v. City of Miami</u>, 627 So. 2d at 18.   (citing <u>Kaisner,</u> 543 So. 2d at 734, 737-38 (requiring a detained motorist to remain at a location which places the individual in great danger, and results in injury to the individual).

Further, GENISMORE made multiple admissions to PLAINTIFFS' claims. For example, GENSIMORE cites the two-prong test of proving deprivation of medical care is (1) the existence of an objectively serious medical need, and (2) that the officer was deliberately indifferent to that need. GENSIMORE <u>then admits</u> *"<u>Here, there is no dispute that a broken leg is a serious medical need."</u>* <u>(MTD:10:IV(a).</u>  He then <u>admits he doesn't know himself how long he waited before summoning EMS</u>: *"Was it two minutes? Was it five minutes? Was it twenty minutes? We do not know because the Complaint does not contain that information. What is clear is that EMS was called while on the scene."* <u>(MTD:13:1)</u>.

Moreover, MRS. CORBIN is not required to plead in her <u>Complaint </u> the exact time it took GENSIMORE to summon care.  The facts plead evidence unreasonable continuing passage of time without needed medical attention. The question at this stage for the Court to decide is not whether PLAINTIFFS will prevail, but simply if the Complaint is sufficient to cross the federal court's threshold. <u>Skinner v. Switzer,</u> 562 U.S. 521, 530 (2011) (internal quotation and citation omitted.)

Therefore, PLAINTIFFS' Complaint met the legal standard for review.  Its' short and plain statement of the claim show PLAINTIFFS are entitled to relief from GENSIMORE when taken in its entirety in the light most favorable to PLAINTIFFS, and GENSIMORE is on fair notice of those claims and basis. The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." Ancata v. Prison Health Serv., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

**B.      GENSIMORE'S FIRST GROUND: "Count II is properly dismissed as there are no plausible allegations that Gensimore was personally involved in the seizure or arrest of Mrs. Corbin"**

Per GENSIMORE'S own MTD, an arrest qualifies as a "seizure "of a person under the Fourth Amendment. Ashcroft v. al–Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). So does the detention of a person. Manuel v. City of Joliet, ––– U.S. ––––, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017).  "Probable cause to arrest exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1251 (11th Cir. 2013) (citation omitted). (MTD:16:V(1).

However, GENSIMORE'S ensuing argument omits many relevant and substantial facts plead in PLAINTIFFS' General facts and facts specific to this count. Regarding this count GENSIMORE described his actions only as follows:

> "The allegations in the Complaint reflect that Deputy Gensimore responded as backup after Mrs. Corbin was detained and lying on the

10

ground and that he assisted Deputy Williams in trying to move her to the police cruiser. Mrs. Corbin was then transported to the hospital and a notice to appear was issued by Deputy Williams. There are no plausible allegations that Deputy Gensimore personally played any role in Mrs. Corbin's traffic stop, seizure or in Deputy Williams' decision to issue a notice to appear. Thus, Count II should be dismissed.

Further, even if the Complaint states a claim for relief against Deputy Gensimore for false arrest/false imprisonment, he is entitled to qualified immunity as he did not have fair warning that responding to a traffic stop as back-up and assisting an arresting deputy in moving an arrestee to a police cruiser, even if injured, constitutes a unlawful seizure."

That is the end of his description, and the ground itself, for dismissal of Count II.

GENSIMORE'S recitation is rife with omissions and misrepresentations as already recounted herein. MRS. CORBIN wasn't just "*detained and lying on the ground and that he assisted Deputy Williams in trying to move her to the police cruiser. Mrs. Corbin was then transported to the hospital and a notice to appear was issued by Deputy Williams.*"

The facts are that GENSIMORE was subjectively aware of what his subordinate WILLIAMS did on the scene prior to his arrival because when he arrived MRS. CORBIN was screaming to him in pain that WILLIAMS unlawfully broke her leg.

Further, the scene before him was an *un*armed elderly woman bystander who was not the subject of the traffic stop or suspect prior to Williams' kick, and upon whom no testing or field sobriety test had been requested or conducted, on the ground over 25 feet away from the field sobriety test of her husband double-locked handcuffed on her stomach. And she was screaming to him in pain that WILLIAMS unlawfully broke her leg, with a visibly distorted and swelling leg. No EMS was present, even

11

though time had elapsed awaiting his arrival. His Deputy *had to approach her* to kick her. This was not the scene of probable/arguable probable cause. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. Feliciano v. City of Miami Beach, 707 F.3d 1244, 1251 (11th Cir. 2013) (citation omitted).

GENSIMORE also knew that WILLIAMS had no right to force bystander MRS. CORBIN to sit in her car, especially when she so far away, not obstructing. She told WILLIAMS the first time he came over that she could hear her husband screaming but couldn't see from her car because WILLIAMS obstructed her view.  Although the charges were dropped. she even had a right to resist his unlawful order. Wright v. State, 705 So. 2d 102, 2014 (Fla. 4th DCA 1998). A person may resist the use of excessive force in making the arrest. State v. Holley, 480 So.2d 94, 96 (Fla.1985).   Even verbally protesting is not probable cause for an arrest but protected speech. § 843.02, Fla. Stat. (1993). City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

Despite all the evidence before him that MRS. CORBIN had not committed a crime and no probable/arguable probable cause existed, Sergeant GENSIMORE still detained and arrested MRS. Corbin without probable cause. Probable cause is more than a hunch. A right is clearly established if existing precedent places it "beyond debate." Rivas-Villegas v. Cortesluna, 142 S.Ct. 8, (2021). The right to be free from unreasonable seizures is guaranteed under the 4th Amendment. Graham, 490 US. at

12

395.  Arrests made without probable cause violate the Fourth Amendment. Elliott v. Wilcox, 641 F. App'x 893, 896 (11th Cir. 2016).

Even if GENSIMORE'S actions were discretionary as he contends – which PLAINTIFFS deny -- he still violated under color of law MRS. CORBIN'S clearly established constitutional right to be free from unlawful seizure. Thus, he has no qualified immunity.

Further, GENSIMORE'S argument that even if no probable cause existed, he "did not have fair warning" that showing up as "back-up" "to assist" a deputy "move" MRS. CORBIN "constitutes an unlawful seizure" is a red herring misrepresentation.  He clearly went beyond just "assisting," and this Sergeant no doubt had fair warning that probable/arguable probable cause is required to arrest or detain.

Therefore, PLAINTIFFS sufficiently plead facts of a False Arrest/False Imprisonment claim against GENSIMORE, upon which PLAINTIFFS are entitled to relief from GENSIMORE in which he is not entitled to qualified immunity and had fair warning of the unlawfulness of his actions.

### C.     GENSIMORE'S SECOND ASSERTED BASIS FOR HIS MTD: "Count VII is properly dismissed as there are no plausible allegations that Gensimore was deliberately indifferent to Mrs. Corbin's serious medical need."

Under well-settled case law to succeed on a claim for deprivation of medical care, a plaintiff must prove (1) the existence of an objectively serious medical need, and (2) that the officer was deliberately indifferent to that need. Valderrama v. Rousseau,

13

780 F.3d 1108, 1116 (11th Cir. 2015). A jury can infer deliberate indifference when an officer fails to justify or explain a delay in medical treatment.  Bozeman, 422 F.3d at 1273; Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (per curiam). Government officials are required to provide medical aid to individuals who have been injured during an arrest under the Due Process Clause of the Fourteenth Amendment City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

Here, as admitted by GENSIMORE "*there is no dispute that a broken leg is a serious medical need.*" (MTD:10:IV(a).  GENSIMORE had personal and subjective knowledge of MRS. CORBIN'S serious medical condition, serious risk of harm if not treated, and serious need for immediate and adequate medical care because MRS. CORBIN told GENSIMORE when he arrived on the scene WILLIAMS had unlawfully broken her leg, and the obvious signs of her credibility were visible as she screamed in pain to him with a visibly distorted and swelling leg.   He also knew *he* didn't offer or render any aide or call EMS, that EMS was not present, that no aide had been rendered to MRS. CORBIN, and that at the least MRS. CORBIN had been in this condition prior to WILLIAMS contacting him to the come to the scene, and while they awaited his arrival.

He knew all of the above when he took physical custody and control and ordered MRS. CORBIN to stand and walk unassisted on that broken leg, and when he forcibly tried to make her walk with himself. There was no medical reason for them to move her: there was no oncoming traffic or danger to MRS. COBRIN in that parking lot

14

except the Deputies themselves. MRS. CORBIN couldn't care for herself.   She was under his custody and control.   MR CORBIN couldn't care for her. He was under DAVIDSON'S physical custody and control in the separate parking lot over 25 feet away hearing his wife of 30 years repeatedly scream in pain that WILLIAMS broke her leg and being told by DAVIDSON that MR. CORBIN "*better not move.*"

Further, GENSIMORE failed to justify or explain his delay in medical treatment. He admitted in his MTD that he doesn't know how long he waited or why, before summoning EMS: "*Was it two minutes? Was it five minutes? Was it twenty minutes? We do not know because the Complaint does not contain that information. What is clear is that EMS was called while on the scene.*" (MTD:13:1).   "*Deputy Gensimore only assisted Deputy Williams in trying to move her to the police cruiser, **presumably** to get her out of the pool of urine.*" (MTD:12:3). ***emphasis added***.   A jury can infer deliberate indifference when an officer fails to justify or explain a delay in medical treatment. See Bozeman, 422 F.3d at 1273; Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (per curiam).

GENSIMORE'S actions were at *best* a reckless disregard to the substantial risk of serious harm to MRS. CORBIN regarding this admitted serious injury that goes beyond negligence or annoyance.   Deliberate indifference is the reckless disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 835-36 (1994). The government is liable for the commission of a tort wherein he breached a specific duty owed directly to an individual.  Seguine v. City of Miami, 627 So. 2d at 17. Even a general lay person knows better.

15

GENSIMORE had a duty of care to MRS. CORBIN as an individual which he violated in his non-discretionary duty of care function. PLAINTIFFS are not required to list every detail of GENSIMORE'S actions in their Complaint.  A Complaint need not contain detailed factual allegations…..only facts sufficient to place the Defendant on notice of what the claims are." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009).

Therefore, GENSIMORE had a subjective and personal knowledge of the existence of MRS. CORBIN'S objectively serious medical need and was deliberately indifferent to that need. PLAINTIFFS have sufficiently plead this claim and can recover damages from GENISMORE.

### D.  GENSIMORE'S THIRD ASSERTED GROUND: GENSIMORE IS ENTITLED TO QUALIFIED IMMUNITY IN COUNTS II (FEDERAL CLAIM FALSE ARREST/FALSE IMPRISONMENT) AND VII (DELIBERATE INDIFFERENCE)

PLAINTIFFS first argue categorially that GENSIMORE cannot be granted Qualified Immunity because he failed to meet his burden.  As stated in GENSIMORE'S own MTD, a "public official '***must first prove*** that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred" to receive the benefit of qualified immunity. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting <u>Courson v. McMillian</u>, 939 F.2d 1479, 1487 (11th Cir. 1991). (<u>MTD:142</u>). ***emphasis added.***  GENSIMORE did not argue any facts or analysis to meet this burden. He just restated his general conclusion that he was a back-up assisting officer acting in his discretionary function.

16

Further, a four-part test has been adopted by the Florida Supreme Court to determine whether a governmental action is discretionary. A governmental action is discretionary if: (1) the action involves a basic governmental policy, program, or objective; (2) the action is "essential to the realization or accomplishment of that policy, program, or objective"; (3) the action "require[s] the exercise of basic policy evaluation[s], judgment[s], and expertise on the part of the governmental agency involved"; and (4) the "governmental agency involved possess[es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision." Trianon Park Condominium Ass'n, 468 So. 2d at 918. Again here, GENSIMORE did not argue any facts or analysis.  He just restated the general conclusion that he was a back-up assisting officer acting in his discretionary function.

In the alternative, PLAINTIFFS hereby argue that under well-settled case law it is well-established that a law enforcement officer cannot be dismissed from a Complaint under Qualified Immunity where he violated clearly established constitutional right under color of law as in this case. Qualified immunity protects government officials from liability for civil damages if their conduct does not violate a clearly established constitutional or statutory right that a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009). Arrests made without probable cause violate the Fourth Amendment. Elliott v. Wilcox, 641 F. App'x 893, 896 (11th Cir. 2016).

GENSIMORE argued he has the benefit of qualified immunity here simply

because "Deputy Gensimore responded as backup to a traffic stop, his actions were taken pursuant to the performance of his duties and within the scope of his authority as a law enforcement officer. <u>See Johnson v. Fee</u>, 838 F. App'x 394, 398 (11th Cir. 2020) (approving and arranging transfers of inmates and responding to inmate grievances are clearly within the scope of a detention center officer's duties and authority).

However, MRS. CORBIN was not an inmate, subject of the traffic stop, or even a lawfully arrested individual. To receive the protection of qualified immunity, Deputy Redinger must establish that he acted within the scope of his discretionary authority. <u>Trotter v. Shull</u>, No. 17-13295, 2017 WL 6492636, at *2 (11th Cir. Dec. 19, 2017)

PLAINTIFFS assert that GENSIMORE was operating under his nondiscretionary duties in the scope of his employment in his individual capacity, and in alternate theory of liability as plead in their Complaint pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleges that DEFENDANT DEPUTIES did not commit the False Arrest/False Imprisonment and Deliberate Indifference named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

Therefore, GENSIMORE is not entitled to Qualified Immunity.  He did not prove he operated in a discretionary function, and even if the Court does find that he acted under his discretionary function, he still  violated MRS. CORBIN'S clearly established constitutional right under color of law.

18

### E) GENSIMORE'S FOURTH GROUND: The Complaint fails to state a claim for IIED

PLAINTIFFS have clearly stated a cause of action for intentional infliction of emotional distress as to GENSIMORE. Throughout the complaint, PLAINTIFFS alleged GENSIMORE acted intentionally, recklessly, maliciously and with total disregard for PLAINTIFFS' safety, and these actions caused Plaintiff severe and extreme emotional distress. Under 768.28 (9), GENSIMORE may be liable for these actions, while the Sheriff's Office cannot, if a jury concludes he acted in violation of the 768.28 (9), Florida Sovereign Immunity Statute, under an alternative theory of liability. However, this is a jury question.

### F) GENSIMORE'S FIFTH GROUND: Gensimore is entitled to sovereign immunity as to Count XII

Under 768.28 (9), GENSIMORE may be liable for these actions, while the Sheriff's Office cannot, if a jury concludes he acted in violation of the 768.28 (9), Florida Sovereign Immunity Statute, under an alternative theory of liability. Additionally, Plaintiffs are not challenging or making any claim regarding GENSIMORE or the Sheriff's Office discretionary functions, policymaking, or planning, or decision-making to the public in general. This claim is specific to MRS. CORBIN and not the public in general. See. Lewis v. City of St. Petersburg, 98 F. Supp. 2d 1344 (M.D. Fla. 2000).

### F) GENSIMORE'S SIXTH/FINAL GROUND: The Complaint fails to state a claim against GENSIMORE in his official capacity under federal law

19

Plaintiffs have not alleged any Federal Claim against GENSIMORE in his official capacity. Plaintiffs' Federal Claim against GENSIMORE is specifically in his individual capacity.  Plaintiff's state law claim against GENSIMORE are against him in his individual capacity, or alternatively in his official capacity as permitted under both State and Federal Law. While a plaintiff may not ultimately recover from both a state agency and an employee for the same egregious conduct, **alternative pleading is permissible**, particularly when the trier of fact must determine whether an officer was acting in bad faith or with malicious purpose. Hazelton v. City of Orlando et al., Case No.: 6:10-cv-342-Orl-35-DAB, Order Denying Motion to Dismiss [Doc # 42] pp. 6-7.  *See id.*; *see also* Brisk v. City of Miami Beach, *709 F. Supp.* 1146, 1148 (S.D. Fla. 1989) (recognizing that a City and its Chief of Police may be held vicariously liable for intentional torts committed by individual officers; denying the defendants' motion for judgment on the pleadings because the issue of whether the officers were acting outside the scope of their employment created questions of fact).

## CONCLUSION

GENSIMORE did not meet his burden as the moving party. PLAINTIFFS plead a short and plain statement of the claim showing they are entitled to relief.

GENSIMORE'S MTD should be denied.

**WHEREFORE**, THE CORBINS seeks entry of an Order denying DEFENDANT GENSIMORE'S Motion to Dismiss, requiring him to Answer PLAINTIFFS' Complaint, and such other relief that this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the forgoing has been sent via this Court's e-portal filing system on this 30th day of September, 2022, and served on all parties on the service list below via the Court's e-filing system.


_____

Rawsi Williams, Esq., R.N.

Rawsi Williams Law Group

701 Brickell Ave. STE 1550

Miami, FL  33131

TEL: 888-RawsiLaw/888-729-7452

www.CallRawsiWilliams.com

Email:  rawsi@rawsi.com

Counsel for Plaintiffs

**/s/ Frank T. Allen**

``         Frank T. Allen, Esq.

The Allen Firm, P.A.

2582 Maguire Rd., STE 130

Ocoee, FL 34761

(407) 407-481-8103(Tel)/-0009 (Fax)

www.TheAllenFirmPA.com

Email: Fallen@TheAllenFirmPA.com

Counsel for Plaintiffs


Service List:

Ms. Christy Imparato, Esq.

Counsel for DEFENDANT GENSIMORE