```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                    FORT MYERS DIVISION
```

SANDRA    CORBIN   and   JOHN
CORBIN,

        Plaintiffs,

v.                                 Case No:  2:22-cv-394-JES-KCD

BILL PRUMMELL, JR., in his
official capacity as Sheriff
of the Charlotte County,
Florida's Sheriff's Office,
DAVID            GENSIMORE,
individually  and  in  his
official  capacity  as  a
Deputy  for  the  Charlotte
County  Sheriff's  Office,
AARON WILLIAMS, individually
and in his official capacity
as  a  Deputy  for  the
Charlotte  County  Sheriff's
Office, KENRICK  ROGUSKA,
individually  and  in  his
official  capacity  as  a
Deputy  for  the  Charlotte
County Sheriff's Office, and
MICHAEL          DAVIDSON,
individually  and  in  his
official  capacity  as  a
Deputy  for  the  Charlotte
County Sheriff's Office,

        Defendants.

_____

## OPINION AND ORDER

     This matter comes before the Court on review of the following

four motions to dismiss and responses: (1) Defendant Gensimore's

Motion  to  Dismiss  (Doc.  #30),  and  Plaintiffs'  Response  in

Opposition to Motion (Doc. #44); (2) Defendant Roguska's Motion to

Dismiss (Doc. #36) and Plaintiffs' Response in Opposition (Doc. #50); (3) Defendant Davidson's Motion to Dismiss (Doc. #54) and Plaintiffs' Response in Opposition (Doc. #60); and (4) Defendant Williams' Partial Motion to Dismiss (Doc. #58) and Plaintiffs' Response in Opposition (Doc. # 61).  The motions seek to dismiss most, but not all, of the counts in the Complaint (Doc. #1).  The motions are resolved as set forth below.

## I.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level."  Id. at 555.[1]  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me

---

[1] Plaintiffs' reliance on the "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" from Conley v. Gibson, 355 U.S. 41, 45 (1957) (Doc. #44, p. 7; Doc. #50, p. 6; Doc. #60, pp. 6, 10) is misplaced since Twombly held this was a phrase "best forgotten," Twombly, 550 U.S. at 563.

accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).

Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. Stated a different way, after ignoring conclusory allegations, the court assumes any remaining factual allegations are true and determines whether those factual allegations plausibly give rise to an entitlement to relief. Ingram v. Kubik, 30 F.4th 1241, 1255 (11th Cir. 2022).

**II.**

3

Plaintiffs Sandra Corbin (Mrs. Corbin) and John Corbin (Mr. Corbin) sued Bill Prummell, Jr., the Sheriff of Charlotte County, Florida in his official capacity, and four Charlotte County Deputy Sheriffs (Deputies Gensimore, Roguska, Williams, and Davidson) in their individual capacities[2], based on events which occurred during and after a November 29, 2019, traffic stop. The underlying facts are summarized from the Complaint (Doc. #1) viewed in the light most favorable to plaintiffs.

On or about November 29, 2019, Mr. Corbin was driving a motor vehicle in which Mrs. Corbin was a passenger. Mr. Corbin drove the vehicle into a McDonald's parking lot pursuant to a traffic stop conducted by Deputies Williams and Davidson. Deputy Davidson informed Mr. Corbin that he had swerved while driving on a two-lane road where no other cars were present. Mr. Corbin explained that he had dropped his cigarette. Deputy Davidson asserted that Mr. Corbin was intoxicated, and instructed Mr. Corbin to exit the vehicle for a field sobriety test. Deputy Davidson further

---

[2] A "suit against [Sheriff] Prummell is, in essence, a suit against Charlotte County." Ireland v. Prummell, 53 F.4th 1274 (11th Cir. 2022) (citations omitted). The case caption and the introductory paragraph of the Complaint (Doc. #1) refer to the deputies being sued in both their individual and official capacities, but all counts relating to the deputies state the deputies are only being sued in their individual capacities. (Doc. #1, ¶¶ 10-13, 134, 145, 158, 171, 189, 204, 230, 245, 254, 261, 278, 320, 333, 363.) Therefore, the only official capacity claims in the Complaint are those against the Sheriff. See Counts VIII and XIII.

instructed Mr. Corbin to walk to the adjacent parking lot to perform the test.  Mrs. Corbin remained in the vehicle, unable to see the deputy and her husband after they went to the adjacent parking lot.

Mrs. Corbin became concerned about her husband and stepped out of the vehicle.  Mrs. Corbin remained in the McDonald's parking lot, about 25 feet away from the field sobriety test site.  Deputy Williams came over and told Mrs. Corbin to get back into the vehicle, which she did.  After more time passed, Mrs. Corbin again stepped out of the vehicle and went to a position in the McDonald's parking lot where she could see her husband.  Deputy Williams walked over "aggressively" and was yelling at Mrs. Corbin.  Deputy Williams raised his booted leg, and intentionally and without provocation kicked Mrs. Corbin in her leg, sweeping her to the ground on her stomach, breaking her leg and causing her to urinate on herself. Mrs. Corbin began to scream from pain.  While Mr. Corbin could hear her screams, Deputy Davidson did not allow him to move from the adjacent parking lot.

Deputy Williams did not summon medical aid, but called a supervisor, Deputy Gensimore.  After Deputy Gensimore's arrival both deputies tried to get Mrs. Corbin to her feet in order to walk her to a police cruiser, even though she had told them her leg was broken.  Deputies Williams and Gensimore eventually called for medical assistance.  During this time, Deputy Davidson kept

Mr. Corbin at bay and refused to inform him of Mrs. Corbin's condition. Mrs. Corbin was eventually placed in an ambulance, and accompanied by Deputy Williams, was taken to a hospital. Mrs. Corbin was diagnosed with a broken leg and admitted to the hospital.

Deputy Williams contacted Watch Commander Lieutenant Roguska and advised him of the situation, including Mrs. Corbin's broken leg. Lieutenant Roguska instructed Deputy Williams to issue a Notice to Appear charging Mrs. Corbin with Disorderly Intoxication and Resisting Arrest/Obstruction/Without Violence, which Deputy Williams did. Plaintiffs assert that Mrs. Corbin's arrest and issuance of the Notice to Appear was to conceal the unlawful actions and excessive force by Deputy Williams.

Mr. Corbin was arrested by Deputy Davidson for driving under the influence and was issued a warning for failure to drive in a single lane. No breathalyzer test was administered at the scene of the arrest, and Mr. Corbin was transported to jail while handcuffed in the back of a police car. At the jail, another officer administered a breathalyzer to Mr. Corbin.

Mrs. Corbin underwent surgery on December 1, 2019, after the swelling in her leg subsided, and her hospitalization continued after the operation. The criminal charges were eventually nolle prossed and dismissed as to Mrs. Corbin, and Mr. Corbin pled no contest to a reduced charge.

### III.

The Complaint sets forth fifteen counts which allege various federal or state law claims against specified defendants.  Not all counts have been challenged in the motions to dismiss.  The Court addresses the challenged counts in the order presented in the Complaint. (Doc. #1.)

**A. Federal False Arrest/False Imprisonment Counts**

In Counts I, II, and III, Mrs. Corbin asserts false arrest/imprisonment claims against Deputies Williams, Gensimore, and Roguska in their individual capacities pursuant to 42 U.S.C. § 1983.  Specifically, Count I alleges that Deputy Williams detained, seized, and arrested Mrs. Corbin without probable cause.  Count II alleges that Sergeant Gensimore failed to intervene when required to do so and detained, seized, and arrested Mrs. Corbin without probable cause.  Count III alleges that Lieutenant Roguska failed to intervene when required to do so and detained, seized, and arrested Mrs. Corbin without probable.  While a traffic stop constitutes a seizure within the meaning of the Fourth Amendment, Delaware v. Prouse, 440 U.S. 648, 653 (1979), Mrs. Corbin's false arrest/imprisonment claims do not challenge the validity of the traffic stop.  Rather, her claims begin with the officers' conduct towards her after the traffic stop had been effectuated.

**(1)  General Legal Principles**

Section 1983 provides a private cause of action against any person who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (citation omitted). "A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019)). Here, Mrs. Corbin identifies the Fourth Amendment as the constitutional right at issue.

False arrest and false imprisonment are overlapping torts which both concern detention without legal process. Wallace v. Kato, 549 U.S. 384, 388-89 (2007); Williams v. Aguirre, 965 F.3d 1147, 1157 (11th Cir. 2020). Both the arrest and the detention of a person (even beyond the start of legal process) constitute a "seizure" under the Fourth Amendment. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (arrest); Manuel v. City of Joliet, 580 U.S. 357 (2017) (detention beyond start of legal process). Under the

Fourth Amendment, the reasonableness of such a seizure is determined by the presence or absence of probable cause. Baxter v. Roberts, 54 F.4th 1241, 1265 (11th Cir. 2022) (citing Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007)). "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude ... that there was a substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (quoting Dist. of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018)). See also Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022); Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022).

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." Richmond, 47 F.4th at 1180. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Baxter, 54 F.4th at 1265 (citation omitted). On the other hand, the existence of probable cause constitutes an absolute bar to a section 1983 action for false arrest, even if a minor offense is involved. Baxter, 54 F.4th at 1265.

"A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." Helm v. Rainbow City, Ala., 989 F.3d 1265, 1278 (11th Cir. 2021) (citing Campbell v. Johnson, 586 F.3d 835, 840 (11th

Cir. 2009)).  "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." Campbell, 586 F.3d at 840. "[I]n order to establish a due process violation, a plaintiff must show that the officer acted with deliberate indifference, i.e., demonstrating that the officer 'had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence.'" Helm, 989 F.3d at 1278-79 (citing Campbell). "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996) (citation omitted).  A claim of false imprisonment under § 1983, however, is defeated if the officer has probable cause to arrest.  Case v. Eslinger, 555 F.3d 1317, 1330 (11th Cir. 2009).

**(2)  Qualified Immunity**

Qualified immunity principles also come into play in these counts.  Officers who act within their discretionary authority are "entitled to qualified immunity under [section] 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." Wesby, 138 S. Ct. at 589 (internal quotation marks and citation omitted).  As the Eleventh Circuit has recently summarized:

> Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action. [] To receive qualified immunity, the defendant must first show he was performing a discretionary function. [] The plaintiff then bears the burden of proving both that the defendant violated his constitutional right and that the right was clearly established at the time of the violation. []

<u>Washington</u>, 25 F.4th at 897-98 (internal quotations marks and citations omitted).

The defense of qualified immunity may be raised and considered on a motion to dismiss. <u>St. George v. Pinellas Cnty.</u>, 285 F.3d 1334, 1337 (11th Cir. 2002).

> The motion to dismiss will be granted if the complaint fails to allege the violation of a clearly established constitutional right. [] Whether the complaint alleges such a violation is a question of law that we review de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. The scope of the review must be limited to the four corners of the complaint. [] While there may be a dispute as to whether the alleged facts are the actual facts, in reviewing the grant of a motion to dismiss, we are required to accept the allegations in the complaint as true. [] Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff. []

<u>Id.</u> (internal quotation marks and citations omitted).  To satisfy this burden, plaintiffs "must allege facts establishing both (1) that [the deputy] violated a constitutional right and (2) that the relevant right was 'clearly established' at the time of the alleged

misconduct."   <u>Crocker v. Beatty</u>, 995 F.3d 1232, 1240 (11th Cir.
2021) (citation omitted).

> A right is clearly established only if its
> contours are sufficiently clear that a
> reasonable official would understand that what
> he is doing violates that right. [] In other
> words, existing precedent must have placed the
> statutory or constitutional question beyond
> debate. [] This doctrine gives government
> officials breathing room to make reasonable
> but mistaken judgments, and protects all but
> the plainly incompetent or those who knowingly
> violate the law. []

<u>Carroll v. Carman</u>, 574 U.S. 13, 16 (2014) (per curiam) (internal
citations and quotation marks omitted).   Facts which will show
that a particular constitutional right is clearly established
include: (1) showing that a materially similar case has already
been decided by an appropriate court; (2) showing that a broader,
clearly established principle should control the novel facts of a
particular case; or (3) establishing that the conduct so obviously
violates the Constitution that prior case law is unnecessary.
<u>Davis v. Waller</u>, 44 F.4th 1305, 1312–13 (11th Cir. 2022). "[E]ach
defendant is entitled to an independent qualified-immunity
analysis as it relates to his or her actions and omissions."
<u>Alcocer v. Mills</u>, 906 F.3d 944, 951 (11th Cir. 2018).

Where the issue is probable cause, an officer is entitled to
qualified immunity where the officer had "arguable probable
cause," that is, where "'reasonable officers in the same
circumstances and possessing the same knowledge as the Defendants

could have believed that probable cause existed to arrest' the plaintiffs." Wilkerson v. Seymour, 736 F.3d 974, 977–78 (11th Cir. 2013) (citation omitted).

**(3) Sergeant Gensimore**

In Count II[3], Mrs. Corbin alleges that Deputy Gensimore is a Sergeant and the supervisor who responded to the scene after a call from Deputy Williams.  It is alleged that upon arrival Sergeant Gensimore observed the unarmed sixty-year-old Mrs. Corbin lying on her stomach in a large pool of urine while in double-locked handcuffs screaming in pain that Deputy Williams had broken her leg.  This location was over twenty-five feet from her husband's field sobriety test site.  Based on these observations, Sergeant Gensimore is alleged to have had the authority and duty to: (1) inquire into the nature and lawfulness of Deputy Williams' actions, (2) instruct Deputy Williams to cease his actions and end his interaction with Mrs. Corbin; and (3) release Mrs. Corbin. Count II further alleges that Sergeant Gensimore not only failed to intervene, but affirmatively and intentionally effectuated an unlawful arrest, seizure and detention of Mrs. Corbin by lifting

---

[3] The sufficiency of Count I is not challenged.

her up, ordering her to walk to a police car, and refusing to call for or render immediate medical attention.

Sergeant Gensimore argues that "[t]here are no plausible allegations that Sergeant Gensimore personally played any role in Mrs. Corbin's traffic stop, seizure or in Deputy Williams' decision to issue a notice to appear." (Doc. #30, p. 17.) Additionally, Sergeant Gensimore asserts he is entitled to qualified immunity as to Count II. (Id. at 17-18.)

Contrary to his argument, the claim against Sergeant Gensimore does not involve the lawfulness of the traffic stop, which is not challenged by either plaintiff. Rather, Count II alleges that Sergeant Gensimore had a duty to intervene based on his observations after arrival at the scene during the detention resulting from the traffic stop. Additionally, Count II alleges that Sergeant Gensimore is liable for his personal affirmative participation in the continued unlawful detention and arrest of Mrs. Corbin. The Court discusses these two separate components of Count II separately.

**(a)    Duty to Intervene**

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation ... takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (citations omitted). "This liability, however, only arises when

the officer is in a position to intervene and fails to do so." Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000). The typical situation involves a claim of excessive force by one officer committed in the presence of another officer, who fails to intervene. The principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in the Eleventh Circuit for decades. Helm v. Rainbow City, Ala., 989 F.3d 1265, 1272 (11th Cir. 2021) (citations omitted).

In contexts other than excessive force, the duty to intervene is less well-developed. Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999), involved the duty to intervene in a false arrest context. The Eleventh Circuit has described its decision as follows:

> In Jones v. Cannon, we held that where an officer was present during an arrest and knew that the arresting officer had no reasonable basis for arguable probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved in the arrest. 174 F.3d 1271, 1283-84 (11th Cir. 1999). We then found that the non-arresting officer could have been sufficiently involved as a participant where he participated in an interview resulting in an allegedly fabricated confession, took notes from which the police report was prepared, and transported the detainee to the jail. Id. at 1284. We then held with respect to a different aspect of the claim of a constitutional violation that the same non-arresting officer could not be liable under § 1983 for the arresting officer's allegedly fabricated affidavit used at a later probable cause proceeding. Id. at 1284-86.

Jones acknowledged a long line of precedent in excessive force cases in which we have recognized a duty to intervene. See, e.g., Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir.1998) ("[I]t is clear that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." (internal quotation marks omitted)). Thus, we observed in Jones as to the second charge that "[w]hile officers have been subject to liability for failing to intervene when another officer uses excessive force, there is no previous decision from the Supreme Court or this Circuit holding that an officer has a duty to intervene and is therefore liable under the circumstances presented here." 174 F.3d at 1286 (citation omitted).

Jones did not preclude all failure to intervene claims against a present, but non-arresting, officer in false arrest cases. Although not made explicit in Jones, we based our different holdings as to the non-arresting officer on both the degree of participation in the arrest and the amount of information available to the non-arresting officer, because a non-arresting officer does not have a duty to investigate the basis of another officer's arrest. See id., 174 F.3d at 1284–86. Additionally, with respect to the second aspect of the claim, we rejected the argument that one officer "is somehow charged with presuming that [the arresting officer] must have put the alleged false confession in the arrest affidavit" or that he "was required to undertake an investigation of the arrest affidavit to determine what [the arresting officer] was doing and what [he] put in the arrest affidavit to continue Jones's detention." Id. at 1286. What is made explicit in Jones is that a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way.

Wilkerson v. Seymour, 736 F.3d 974, 979-80 (11th Cir. 2013).

Applying Jones, the Wilkerson court stated:

> We need not fully delineate the scope of such
> a duty here, however, because assuming that
> Sergeant Parker sufficiently participated in
> Wilkerson's arrest, Sergeant Parker still
> lacked the requisite information to put him on
> notice that an unlawful arrest was occurring
> or had occurred. Here, Sergeant Parker arrived
> at the scene after Wilkerson was already under
> arrest and placed in a transport car. He spoke
> to Officer Seymour for only a few minutes,
> during which time he was told that Wilkerson
> had been loud in a public place and was using
> profanity. Sergeant Parker then spoke with
> Wilkerson for less than one minute. Wilkerson
> does not claim that she told Sergeant Parker
> her account of the arrest or that she
> challenged the basis of her false arrest.
> Rather, she told him of her clean record and
> implored him to run a criminal history check,
> which he declined to do. Putting to the side
> the question of whether anything Wilkerson
> might have said after the fact could have
> placed Sergeant Parker on sufficient notice of
> the unconstitutionality of her arrest, she
> alleges no such statement here. Sergeant
> Parker was entitled to rely on the account of
> the arrest provided by Officer Seymour and
> fill in any gaps in the account with
> reasonable inferences premised on Officer
> Seymour acting in a constitutional manner and
> in good faith.

Wilkerson, 736 F.3d at 980 (footnote omitted).  In a subsequent

unreported decision, the Eleventh Circuit later stated:

> In Jones v. Cannon, we held that where an
> officer was present during an arrest and knew
> the arresting officer lacked reasonable basis
> for arguing probable cause, the non-arresting
> officer could be liable under § 1983 if he was
> sufficiently involved in the arrest. 174 F.3d
> 1271, 1283-84 (11th Cir. 1999). We later
> clarified that "a participant in an arrest,

> even if not the arresting officer, may be
> liable if he knew the arrest lacked any
> constitutional basis and yet participated in
> some way." <u>Wilkerson v. Seymour</u>, 736 F.3d 974,
> 980 (11th Cir. 2013). Thus, if an officer
> knows that an arrest is unconstitutional, but
> yet participates in the arrest, that officer
> may be liable. See <u>id.</u>

<u>Buress v. City of Miami</u>, 21-12131, 2022 WL 2161438, at *3 (11th Cir. June 15, 2022).

In sum, an officer who is present and knows no arguable probable cause exists can be liable if sufficiently involved in the arrest. Liability depends on the degree of participation in the arrest and the amount of information available to the non-arresting officer. A non-arresting officer does not have the duty to investigate the basis for another officer's arrest. The non-arresting officer is entitled to rely on the arresting officer's account of the arrest and make reasonable inferences from it. The non-arresting officer may be liable, however, if he knew the arrest lacked any constitutional basis and participated in some way.

The Court finds that the factual allegations in Count II do not state a plausible claim for liability based on a duty to intervene by Sgt. Gensimore. Sergeant Gensimore was not present for either the traffic stop, or Deputy Williams' interactions with Mrs. Corbin. By the time Sergeant Gensimore arrived, the allegedly excessive force had concluded, and Mrs. Corbin had been placed under arrest. Nothing he is alleged to have observed gave Sergeant Genismore a reasonable basis to believe there was not at least

arguable probable cause to arrest Mrs. Corbin.  An injury to an arrestee does not create a reasonable inference that there might have been police misconduct, and Sergeant Genismore was not obligated to investigate the propriety of Deputy Williams' conduct.  Wilkerson, 736 F.3d at 980 (citing Jones, at 1284-86).[4] All of Sergeant Gensimore's personal conduct took place after the initial seizure by Deputy Williams.  Count II fails to plausibly state a claim for liability based on a failure to intervene in a false arrest/false imprisonment.

Sergeant Gensimore also asserts he is entitled to dismissal of this portion of Count II based upon qualified immunity.  The Court agrees.

Mrs. Corbin first argues that Sergeant Gensimore has not met his burden of showing that he was performing a discretionary function.  (Doc. #44, p. 16.)  In the qualified immunity context, the Court assesses whether the acts in question are of a type that fell within the employee's job responsibilities. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).  The Court's inquiry is two-fold:  Whether the officer was (a)

---

[4] Mrs. Corbin argues that she screamed at Sergeant Gensimore when he arrived at the scene that Deputy Williams had "unlawfully" broken her leg.  (Doc. #44, p. 11, 14.)  The Complaint repeatedly alleges that Mrs. Corbin screamed that Deputy Williams had broken her leg, but never alleges that she characterized it as "unlawful." (Doc. #1, ¶¶ 54, 55, 68, 59, 61, 63, 64, 65, 66, 67, 70, 89.)

performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. Id. The facts set forth in the Complaint satisfy both of these requirements, so the burden shifts to Mrs. Corbin on the issue of qualified immunity.

Sergeant Gensimore arrived after-the-fact, and he did not know or have reason to know if a constitutional right had been violated. Plaintiffs have not presented authority establishing the existence of a clearly established right under the circumstances here. As the caselaw discussed above establishes, no clearly established duty to intervene existed, and thus Sergeant Gensimore is entitled to qualified immunity on the failure to intervene claim.

**(b)   Personal Involvement In Unlawful Seizure**

The second basis for liability in Count II is that Sergeant Gensimore's personal conduct upon arrival constituted a seizure under the Fourth Amendment, for which there was no probable cause. The Court finds that Mrs. Corbin has alleged sufficient facts to state a plausible claim that Sergeant Gensimore personally participated in her continued arrest and detention after his arrival at the scene. Sergeant Gensimore assisted in Mrs. Corbin's continued detention and attempted to have her walk to a police vehicle, where she would be confined. This conduct clearly constitutes a "seizure" under the Fourth Amendment. Roberts v.

Spielman, 643 F.3d 899, 905 (11th Cir. 2011) ("For Fourth Amendment purposes, a seizure occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen....'" quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)).

Alternatively, Sergeant Gensimore argues that even if Count II states a claim, he is entitled to qualified immunity because he did not have fair notice that responding as backup and assisting in moving an arrestee to a police vehicle, even if injured, would constitute an unlawful seizure. (Doc. #30, pp. 17–18.) "Seizure" principles are well-established:

> The test for whether the officer restrained a citizen's liberty is whether a reasonable person would feel free to terminate the encounter. [] We must imagine how an objective, reasonable, and innocent person would feel, not how the particular suspect felt. [] All the circumstances are relevant, [] including whether a citizen's path is blocked or impeded"; whether the officers retained the individual's identification; the suspect's age, education and intelligence; the length of the ... detention and questioning; the number of police officers present; whether the officers displayed their weapons; any physical touching of the suspect; and the language and tone of voice of the police.

United States v. Knights, 989 F.3d 1281, 1286 (11th Cir. 2021) (internal citations and quotation marks omitted).

It would hardly surprise a law enforcement officer that lifting a person off the ground while handcuffed and ordering her to walk to a police car while waiting for an ambulance would

constitute a seizure within the meaning of these Fourth Amendment principles.  An officer's status as back-up does not change these principles.  Under the facts as pled, this portion of Count II is not barred by qualified immunity.

### (4)  Lieutenant Roguska

In Count III Mrs. Corbin alleges that Deputy Roguska is the Lieutenant with the Sheriff's Office who was contacted by Deputy Williams from the hospital and told what had occurred.  Count III alleges that Lieutenant Roguska had the authority and duty to inquire and intervene in the actions of Deputy Williams and Sergeant Gensimore and to stop those actions.  Count III further alleges that Lieutenant Roguska could have stopped the unlawful arrest and continuing detention of Mrs. Corbin, but instead ordered Deputy Williams to charge Mrs. Corbin and to issue her a Notice to Appear at the hospital, thereby effectuating and ratifying the unlawful arrest, seizure, and detention.

Lieutenant Roguska argues that Count III fails to state a claim because "there are no plausible allegations that Defendant Roguska was aware or would have known that probable cause or arguable probable cause did not exist when he recommended that the arresting officer issue a notice to appear based on his phone call with the arresting officer."  (Doc. #36, p. 11.)  Dismissal is required, he argues, because "there are simply not enough allegations pled to maintain a claim for false arrest pursuant to

§ 1983." (Id.) Additionally, Lieutenant Roguska argues he is entitled to qualified immunity because he did not have fair warning that his conduct would constitute an unlawful arrest. (Id. at 11.)

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). A plaintiff can sue, however, under a theory of supervisory liability. To establish supervisory liability, a plaintiff must show either (1) that the supervisor "personally participate[d] in the alleged constitutional violation" or (2) that there is a "causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007). A causal connection is shown when:

> 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

Id. See also Christmas v. Harris Cnty., Ga., 51 F.4th 1348, 1355 (11th Cir. 2022); Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir.

2022).  Ultimately, though, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." <u>Braddy v. Fla. Dep't of Labor & Emp't. Sec.</u>, 133 F.3d 797, 802 (11th Cir. 1998).

It is not alleged that Lieutenant Roguska participated in the initial arrest and detention of Mrs. Corbin.  By the time Lieutenant Roguska was contacted, Mrs. Corbin had already been arrested, taken to the hospital, and admitted.  Mrs. Corbin can prevail only if she has identified some other causal connection between Lieutenant Roguska's actions and Deputy Williams's conduct.  <u>Christmas</u>, 51 F.4th at 1355.  In this case, Mrs. Corbin has alleged no such connection.  Additionally, Lieutenant Roguska did not have a duty to investigate the basis of Deputy Williams' arrest.  <u>Wilkerson</u>, 736 F.3d at 980.

The allegations do not support finding supervisory liability for the issuance of a Notice To Appear based on information provided by Deputy Williams.  Issuing the Notice to Appear formally terminated the arrest.  A notice to appear is "a written order issued by a law enforcement officer in lieu of physical arrest requiring a person accused of violating the law to appear in a designated court or governmental office at a specified date and time."  Fla. R. Crim. P. 3.125(a).  By instructing[5] issuance of

---

[5]  The parties argue over whether Lieutenant Roguska "instructed/recommended" issuance of the Notice to Appear or

the Notice to Appear, Lieutenant Roguska brought to an end the arrest, which is what Mrs. Corbin argues he should have done.

The motion to dismiss Count III will be granted as to Lieutenant Roguska. Directing the issuance of a Notice to Appear was not personal participation in the arrest or the alleged constitutional violation and did not create the causal connection with the constitutional violation. The alternative argument that Lieutenant Roguska is entitled to qualified immunity is also accepted. If Count III does state a claim, Lieutenant Roguska is entitled to qualified immunity because Count III fails to allege the violation of a clearly established constitutional right as to Lieutenant Roguska's conduct.

### B. Federal Deliberate Indifference to Medical Need Counts

Counts VI[6] and VII allege deliberate indifference/failure to render aid in violation of 42 U.S.C. § 1983 against Deputies Williams and Gensimore in their individual capacities. Count VI alleges that Deputy Williams caused Mrs. Corbin to suffer a serious medical injury by breaking her leg, which needed immediate medical care. Count VI further alleges that Deputy Williams did not offer

---

"ordered" the issuance of the Notice to Appear. (Compare Doc. #36, p. 4 with Doc. #50, p. 8.) The Complaint alleges that Lieutenant Roguska "instructed" the deputy to issue the Notice to Appear (Doc. #1, ¶ 79), so the Court sticks with that verb.

[6] Count IV is not challenged by defendant Deputy Williams, and there is no Count V.

or render medical aid himself, and delayed Mrs. Corbin's access to needed medical care.  It also alleges that Deputy Williams forced Mrs. Corbin to stay as positioned on the ground while he called and waited for additional law enforcement officers to arrive.  When Sergeant Gensimore arrived, both deputies tried to force Mrs. Corbin to stand and walk to a police car while handcuffed.  When Mrs. Corbin was unable to do so, Deputy Williams finally called for emergency medical care.  Paramedics arrived and transported Mrs. Corbin to a hospital, where she was admitted and subsequently underwent surgery on her leg.

Count VII alleges that Sergeant Gensimore caused Mrs. Corbin to suffer a serious and immediate need for medical care by refusing to offer medical aid, summon needed emergency medical care for her broken leg, or instruct Deputy Williams to provide such aid.  Count VII further alleges that Sergeant Gensimore forced Mrs. Corbin to attempt to stand and walk to a police car on a broken leg while handcuffed.

As recently summarized by the Eleventh Circuit:

> The Due Process Clause of the Fourteenth Amendment requires government officials to provide medical aid to individuals who have been injured during an arrest. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983). To succeed on a claim for deprivation of medical care, a plaintiff must prove (1) the existence of an objectively serious medical need, and (2) that the officer was deliberately indifferent to that need. Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015).

<u>Wade v. Daniels</u>, 36 F.4th 1318, 1326 (11th Cir. 2022).   An "objectively serious medical need" is a medical need "that has been diagnosed by a physician as mandating treatment or ... that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." <u>Hoffer v. Sec'y, Fla. Dep't of Corr.,</u> 973 F.3d 1263, 1270 (11th Cir. 2020) (quotation marks omitted).  Subjective deliberate indifference requires Mrs. Corbin to plausibly show "that (1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the officer actually drew that inference, (3) the officer disregarded the risk of serious harm, and (4) the officer's conduct amounted to more than gross negligence." <u>Wade</u>, 36 F.4th at 1326.

Additionally, "[a]n officer may act with deliberate indifference by delaying the treatment of a serious medical need.  The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." <u>Wade</u>, 36 F.4th at 1326 (citation and footnote omitted).  In <u>Wade</u>, a four-minute delay was found sufficient to defeat an officer's summary judgment motion.  <u>See also</u> <u>Harris v. Coweta Cnty.</u>, 21 F.3d 388, 393-94 (11th Cir. 1994) ("A few hours' delay in receiving medical care for emergency needs such as broken bones ... may constitute deliberate indifference."); <u>Brown v. Hughes</u>, 894 F.2d 1533, 1538 (11th Cir. 1990) (a delay of six hours "in

providing care for a serious and painful broken foot is sufficient to state a constitutional claim").

### (1)  Deputy Williams

Deputy Williams does not dispute that a broken leg is a serious medical need.  (Doc. #58, p. 4.)  Deputy Williams asserts, however, that Count VI does not plausibly allege his deliberate indifference.  Even if such a claim is plausibly stated, Deputy Williams asserts he is entitled to qualified immunity.

According to the Complaint, Deputy Williams was the direct cause of Mrs. Corbin's broken leg.  Mrs. Corbin is alleged to have suffered increased physical injury (swelling) due to the delay, which may have worsened her medical condition.  Deputy Williams was subjectively aware of the injury, since Mrs. Corbin screamed that her leg was broken.  Deputy Williams showed a reckless disregard by trying to make her walk on the broken leg.  The Court finds that plaintiff has stated a plausible claim, and the motion to dismiss Count VI will be denied.

As to qualified immunity, Deputy Williams asserts that as of the date of the incident the law was not clearly established as to the specific amount of time in which medical care must be summoned, citing Wade.  But the lack of a bright-line time rule does not necessarily entitle officers to qualified immunity.  Wade itself made this clear, denying qualified immunity in a case involving a

four-minute delay.  Dismissal based on qualified immunity is not justified under the alleged facts in this case.

**(2)  Sergeant Gensimore**

Sergeant Gensimore also does not dispute that a broken leg is a serious medical need.  (Doc. #30, pp. 10-11.)  Sergeant Gensimore asserts that the allegations in the Complaint do not rise to the level of deliberate indifference since he was not on the scene when the injury occurred.  Sergeant Gensimore also argues that he only assisted in trying to move Mrs. Corbin.  (Doc.#30, pp. 12-13.)

It is alleged that Sergeant Gensimore was informed by Deputy Williams that the leg was broken.  It is also alleged that Sergeant Gensimore was deliberately indifferent by forcing Mrs. Corbin to try and stand on the leg and by refusing medical attention in a timely fashion after being informed of the broken leg.  The Court finds that Mrs. Corbin has stated a plausible claim as to Sergeant Gensimore in Count VII.

Sergeant Gensimore also asserts he is entitled to qualified immunity.  (Doc. #30, pp. 13-15.)  Qualified immunity based on the pleading will be denied for the same reasons stated above as to Deputy Williams.

**C. Florida State Law Claims**

The remaining claims in the Complaint assert Florida state law causes of action. Counts VIII and XIII were dismissed without

prejudice. (Doc. #24.) Before addressing the individual counts, the Court discusses the Florida statutory immunity which the officers assert as to several of these claims.

Florida's official immunity statute provides in pertinent part:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
>
> . . .
>
> The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). This official immunity statute is a species of sovereign immunity that shields officers from tort liability unless one of the three exceptions is established. Perex v. Mulvey, 915 F.3d 1276, 1291 (11th Cir. 2019).

Under this statute, a deputy sheriff is personally liable only if he: (1) acted outside the scope of his employment or function; or (2) was within the scope of his employment or function and acted (a) "in bad faith," or (b) "with malicious purpose," or (c) "in a manner exhibiting wanton and willful disregard of human

rights, safety, or property." Fla. Stat. § 768.28(9)(a).  While these terms are not defined in the statute, "bad faith" has been equated with the actual malice standard; "malicious purpose" has been interpreted to mean the conduct was committed with ill will, hatred, spite, or an evil intent, or the subjective intent to do wrong; and "wanton and willful disregard of human rights or safety," has been held to mean conduct that is worse than gross negligence, and requires proof that an officer knew, or reasonably should have known, that the conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences. Butler v. Gualtieri, 41 F.4th 1329, 1336-37 (11th Cir. 2022).

### (1) Florida Intentional Infliction of Emotional Distress Counts

Two counts by Mrs. Corbin allege the intentional infliction of emotional distress (IIED) in violation of Florida law.  The Florida Supreme Court first recognized the tort of intentional infliction of emotional distress (IIED) in 1985. Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277 (Fla. 1985); Lopez v. Target Corp., 676 F.3d 1230, 1235 (11th Cir. 2012). "[T]he elements of intentional infliction are (1) intentional or reckless conduct (2) that is "outrageous" in that it is "beyond all bounds of decency" and "utterly intolerable in a civilized community" (3) and that causes the victim emotional distress (4) that is "severe." Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018)

(citations omitted).  See also Moore v. Pederson, 806 F.3d 1036, 1053 (11th Cir. 2015).

As to the second element, "[t]o successfully pursue a cause of action for intentional infliction of emotional distress, the plaintiff must show conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Byrd v. BT Foods, Inc., 948 So. 2d 921, 928 (Fla. 4th DCA 2007) (internal quotation marks and citations omitted).  See also Mundy v. S. Bell Tel. & Tel. Co., 676 F.2d 503, 505 (11th Cir. 1982).  "It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995) (citation omitted).  In situations involving police officers, "the extreme and outrageous character of the conduct may arise from an abuse by the actor of a position," and consequently courts "give greater weight to the fact that the defendants had actual or apparent authority over [the plaintiff] as police officers." Moore, 806 F.3d at 1053-54 (citation omitted).

"Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law,

not a question of fact." Liberty Mut. Ins. Co. v. Steadman, 968
So. 2d 592, 595 (Fla. 2d DCA 2007) (citations omitted). See also
Nassar v. Nassar, 853 F. App'x 620, 622 (11th Cir. 2021). This
must be evaluated on an objective basis, and plaintiff's subjective
response to the conduct does not control. Blair v. NCL (Bahamas)
Ltd., 212 F. Supp. 3d 1264, 1270 (S.D. Fla. 2016) (citing Liberty
Mutual Insurance Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA
2007)). "The standard is extremely high" under Florida law.
Hendricks v. Rambosk, No. 2:10-cv-526-FtM-29DNF, 2011 WL 1429646,
2011 U.S. Dist. LEXIS 40608, at *4 (M.D. Fla. Apr. 14, 2011).

As to the fourth element, "severe emotional distress means
emotional distress of such a substantial quality or enduring
quality[ ] that no reasonable person in a civilized society should
be expected to endure it." Kim v. Jung Hyun Chang, 249 So. 3d
1300, 1305 (Fla. 2d DCA 2018) (citation omitted). See also Brown
v. Bellinger, 843 F. App'x 183, 188 (11th Cir. 2021).

### (a)   Deputy Williams

In Count XI, Mrs. Corbin alleges that Deputy Williams, acting
within the scope and course of his employment as a deputy sheriff,
intentionally and without cause raised his booted leg and kicked
her, an unarmed bystander, with such force that it took her to the
ground and broke her leg. Deputy Williams then intentionally
double-lock handcuffed Mrs. Corbin in that position in a pool of
her own urine while she screamed in pain due to her broken leg.

Deputy Williams intentionally kept Mrs. Corbin in that position while he called for law enforcement back up, but not for emergency medical assistance.  Knowing Mrs. Corbin's leg was broken, Deputy Williams intentionally attempted to stand her up to make her walk to a police car.  Deputy Williams knew he caused intense physical and emotional pain but refused to render or obtain medical aid.  Due to this conduct, Mrs. Corbin underwent two surgeries and is still seeing a mental health therapist and experiencing depression, nightmares, and anxiety as she adjusts to a new reduced quality of life.

Deputy Williams asserts that these allegations are insufficient to plausibly assert an IIED claim, even if his kick caused a broken leg.  He asserts that the allegations fail to establish sufficiently outrageous conduct or that the conduct caused sufficiently severe emotional distress.  The Court agrees.

Viewed in the light most favorable to Mrs. Corbin, Deputy Williams used a single kick to bring her to the ground and break her leg.  Deputy Williams then handcuffed Mrs. Williams, left her on the ground, attempted to walk her to a police vehicle, and eventually called for medical assistance.  This conduct does not go "beyond all possible bounds of decency" and is not "atrocious, and utterly intolerable in a civilized community," as required to state a cause of action for IIED.  Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594-95 (Fla. 2d DCA 2007).  Additionally,

the allegations do not establish that the emotional distress was severe enough to satisfy the high bar in an IIED claim.  Deputy Wiliams' motion to dismiss Count XI is granted.

**(b)  Sergeant Gensimore**

In Count XII, Mrs. Corbin alleges that Sergeant Gensimore's actions were intentional, and he chose to participate in what Deputy William did or was doing to Mrs. Corbin.  Mrs. Corbin alleges that Sergeant Gensimore allowed her to continue to lie on the ground screaming in pain without offering aid, or summoning medical attention, or instructing Deputy Williams to do so. Sergeant Gensimore then intentionally attempted to lift Mrs. Corbin from the ground on her broken leg while she was double locked handcuffed. Sergeant Gensimore is alleged to have used his authority under color of law to order Mrs. Corbin to walk to the police car on her broken leg and failed to summon medical assistance.  This conduct caused Mrs. Corbin to have to undergo a second surgery to insert permanent metal pins and/or rods to the leg, and now she cannot go dancing with her husband.

Sergeant Gensimore argues that the allegations against him do not rise to the level of conduct necessary to support an IIED claim.  (Doc. #30, pp. 5, 7-8.)  The Court agrees.  Sergeant Gensimore was not at the scene when the stop was made, or the injury occurred but arrived afterwards as backup.  While he did not immediately request medical assistance upon arrival, he was

not in a position to intervene or prevent Deputy Williams from breaking Mrs. Corbin's leg. The Court finds that Sergeant Gensimore's actions do not plausibly rise to the level of outrageous required under Florida law to state a claim of IIED. The motion to dismiss Count XII is granted.

Sergeant Gensimore also claims entitlement to sovereign immunity under Fla. Stat. § 768.28(9)(a) as to the claim in Count XII. (Doc. #30, pp. 9-10.) In light of the Court's determination that Count XII does not state a claim, there is no need to address this claim.

### (2)   Florida Negligent Infliction of Emotional Distress

Two counts by Mr. Corbin assert claims of negligent infliction of emotional distress (NIED) under Florida law. "[T]he elements required to allege a cause of action for negligent infliction of emotional distress [are]: (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." Zell v. Meek, 665 So. 2d 1048, 1054 (Fla. 1995). "Generally, in order to recover damages for emotional distress caused by the negligence of another in Florida, the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact." Elliott v. Elliott, 58 So. 3d

878, 880 (Fla. 1st DCA 2011). "In essence, the impact rule requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 362 (Fla. 1995). See also Rowell v. Holt, 850 So. 2d 474, 477-78 (Fla. 2003) (citations omitted); Williams v. Boyd-Panciera Family Funeral Care, Inc., 293 So. 3d 499, 500 (Fla. 4th DCA 2020). "[T]he underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 362 (Fla. 1995) (citation omitted).

"In Champion v. Gray, 478 So. 2d 17 (Fla. 1985), we held that persons who suffer a physical injury as a result of emotional distress arising from their witnessing the death or injury of a loved one may maintain a cause of action for negligent infliction of emotional distress." Zell, at 1050.

> The essence of our holding in Champion was to recognize a claim where an actual physical injury could be demonstrated to be caused by psychic trauma. Temporal proximity will usually be an important factor for the judge or jury to consider in resolving the factual question of causation. Its importance will vary depending on the facts of each case. Obviously, for example, the shorter the interval of time between the psychic impact and the physical injury the more weight this factor may be given. That was the situation in Champion. However, there are other factors pertinent to the causation inquiry. For

> example, the nature and severity of the injury
> and the nature of the evidence also help to
> confirm or rebut the causal connection between
> the psychic injury and the physical injury.
> However, the important question is whether the
> psychic impact caused the physical injury,
> whether that injury be manifest immediately,
> or days, weeks, or months later. Just as a
> physical bruise or injury may ultimately
> result in a more serious condition not
> initially apparent, so may the effects of
> psychic trauma cause a serious physical
> impairment. Of course, in both instances a
> claimant has the burden of proving causation.

Id. at 1053.  The same day as Champion, the Florida Supreme Court held that "psychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist."  Brown v. Cadillac Motor Car Div., 468 So. 2d 903, 904 (Fla. 1985); Zell, 665 So. 2d at 1052 n.4.  Cf. Whiddon v. Serv. Corp. Int'l, No. 4:21-CV-437-AW-MAF, 2022 WL 4180983, at *2 (N.D. Fla. Sept. 7, 2022), appeal dismissed, No. 22-13622-J, 2022 WL 18417731 (11th Cir. Dec. 9, 2022) (vomiting as a physical injury is insufficient unless in context of ingesting a contaminated food or drink).

"Exceptions to the rule have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy

rationale undergirding application of the impact rule." <u>Rowell</u>, 850 So. 2d at 478.

**(a) Deputy Williams**

In Count XIII, Mr. Corbin alleges negligent infliction of emotional distress by Deputy Williams in his individual capacity. Mr. Corbin alleges that he was physically present in the adjacent parking lot undergoing a field sobriety test by Deputy Davidson. Mrs. Corbin screamed that Deputy Williams broke her leg and continued to scream from pain.  Mr. Corbin could hear his wife's screams while Deputy Davidson had Mr. Corbin under his custody and control.  Mr. Corbin could not leave the adjacent parking lot to go to his wife or to speak with paramedics without Deputy Davidson's permission.  Mr. Corbin alleges that an exception to the usual Florida impact rule allows him to recover since he was in the zone of danger and was able to perceive the incident involving his wife.

Mr. Corbin was 25 feet away from the events with Mrs. Corbin, there was no threat of physical impact to him and no manifestation of a physical injury or touching in response to the psychological trauma.  Count XIII does not state a plausible NIED claim, and the motion to dismiss it will be granted.

Deputy Williams also claims entitlement to sovereign immunity under Fla. Stat. § 768.28(9)(a) as to the claim in Count XIII. (Doc. #58, pp. 17-18.)  In light of the Court's determination that

Count XIII does not state a claim, there is no need to address this claim.

### (b) Deputy Davidson

In Count XV, the only count against Deputy Davidson, Mr. Corbin similarly alleges that he was physically present in the adjacent parking lot undergoing a field sobriety test by Deputy Davidson. Mrs. Corbin screamed that Deputy Williams broke her leg and continued to scream from pain. Mr. Corbin could hear his wife's screams while Deputy Davidson had Mr. Corbin under his custody and control. Mr. Corbin could not leave the adjacent parking lot to go to his wife or to speak with paramedics without Deputy Davidson's permission, which he did not give to Mr. Corbin to check on his wife. Deputy Davidson did not response to concerns and told Mr. Corbin that he 'better not move.' Deputy Davidson forced Mr. Corbin to stand there and listen to his wife of 30 years scream in pain and thus rendered him helpless in his role and duties as a husband. Mr. Corbin could see his wife on a stretcher, but Deputy Davidson refused to communicate to Mr. Corbin where they were taking his wife. Instead, Mr. Corbin was charged with a DUI, handcuffed, and taken to the police station. Mr. Corbin asserts mental anguish, and he is now in therapy.

Plaintiff argues that an exception to the impact rule allows recovery if a closely related person was in the zone of danger. (Doc.#60, p. 7.) As Mr. Corbin was 25 feet away, there was no

40

threat of physical impact upon him and no manifestation of a physical injury in response to the psychological trauma is alleged. The motion to dismiss will be granted.

Deputy Davidson also claims entitlement to sovereign immunity under Fla. Stat. § 768.28(9)(a) as to the claim in Count XV. (Doc. #54, pp. 12-13.) In light of the Court's determination that Count XV does not state a claim, there is no need to address this claim.

Accordingly, it is now

**ORDERED:**

1. Defendant Gensimore's Motion to Dismiss for Failure to State a Claim (Doc. #30) is **DENIED IN PART AND GRANTED IN PART** as follows:

   (a) The portion of Count II asserting a claim of failing to intervene is dismissed without prejudice. The motion is denied as to the remaining component of Count II.

   (b) The motion is denied as to Count VII.

   (c) The motion is granted as to Count XII, which is dismissed without prejudice.

2. Defendant Roguska's Motion to Dismiss (Doc. #36) is **GRANTED** and Count III is dismissed without prejudice.

3. Defendant Davidson's Motion to Dismiss (Doc. #54) is **GRANTED** and Count XV is dismissed without prejudice.

4. Defendant Aaron Williams' Partial Motion to Dismiss (Doc.

#58) is **DENIED IN PART AND GRANTED IN PART** as follows:

(a)  The motion is denied as to Count VI.

(b)  The motion is granted as to Count XI, which is
dismissed without prejudice.

(c)  The motion is granted as to Count XIII, which is
dismissed without prejudice.

**DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of

February 2023.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record