UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDRA   CORBIN   and   JOHN
CORBIN,

       Plaintiffs,

v.                                    Case No:  2:22-cv-394-JES-KCD

BILL PRUMMELL, JR., in his
official capacity as Sheriff
of   the   Charlotte   County,
Florida's Sheriff's Office,
DAVID            GENSIMORE,
individually   and   in   his
official   capacity   as   a
Deputy   for   the   Charlotte
County   Sheriff's   Office,
AARON WILLIAMS, individually
and in his official capacity
as   a   Deputy   for   the
Charlotte   County   Sheriff's
Office,   KENRICK   ROGUSKA,
individually   and   in   his
official   capacity   as   a
Deputy   for   the   Charlotte
County Sheriff's Office, and
MICHAEL          DAVIDSON,
individually   and   in   his
official   capacity   as   a
Deputy   for   the   Charlotte
County Sheriff's Office,

       Defendants.

_____

**OPINION AND ORDER**

    This  matter  comes  before  the  Court  on  cross-motions  for

summary judgment - Defendants' Motion for Summary Judgment (Doc.

#110) and Plaintiffs' Motion for Summary Judgment (Doc. #112). A

Supplement (Doc. #113), Responses in Opposition (Docs. ##115, 129), and Replies (Docs. ##119, 130) were filed. For the reasons set forth below, Defendants' Motion (Doc. #110) is granted in part and denied in part, and Plaintiffs' Motion (Doc. #112) is denied.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from

undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. See Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). Cross-motions for summary judgment are to be treated separately, "view[ing] the facts 'in the light most favorable to the non-moving party on each motion.'" Cowen v. Sec'y of Ga., 22 F.4th 1227, 1231 (11th Cir. 2022) (quoting Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012)). Ultimately, "[w]hen parties jointly move for summary judgment, the court has three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or

denying both motions for summary judgment and proceeding to trial."
FCOA LLC v. Foremost Title & Escrow Servs. LLC, 57 F.4th 939, 959
(11th Cir. 2023).

**II.**

On or about November 29, 2019, Deputy Michael Davidson (Deputy
Davidson) made a traffic stop of a vehicle driven by John Corbin
(Mr. Corbin) after observing the vehicle swerving on the road.
Deputy Davidson caused the vehicle to pull into a McDonalds parking
lot.  Sandra Corbin (Mrs. Corbin) was in the passenger seat in the
vehicle driven by her husband. After both Mr. and Mrs. Corbin
admitted to drinking a few beers, Mr. Corbin consented to a field
sobriety test and was escorted by Deputy Davidson to a more level
parking lot approximately fifty to one hundred feet away. Mrs.
Corbin stayed in the car. Deputy Aaron Williams (Deputy Williams),
who had recently arrived at the scene in a separate vehicle, stood
between the Corbin vehicle containing Mrs. Corbin and the sobriety
testing site where Mr. Corbin and Deputy Davidson were located.

At some point, Mrs. Corbin exited the vehicle. Deputy Williams
approached and told her to get back into the vehicle.  According
to Deputy Williams, he also told her to remain in the vehicle.
Mrs. Corbin got back into the vehicle, but she did not remain
there. Approximately five minutes later, Mrs. Corbin exited the
vehicle for a second time. Deputy Williams told her to stop. What
happened next is disputed. Deputy Williams asserts Mrs. Corbin did

4

not stop, told Deputy Williams he would have to arrest her, and pulled away from his attempts to grab her wrists. At that point, Deputy Williams asserts, he swept Mrs. Corbin's leg from underneath her, bringing her to the ground. On the other hand, Mrs. Corbin asserts that she immediately stopped when told to do so by Deputy Williams and before Deputy Williams positioned himself in front of her, and she uttered the single word "my" before Deputy Williams swept her legs from underneath her.

It is undisputed that Mrs. Corbin found herself on the ground and laying in her own urine. Mrs. Corbin was screaming that her leg was broken and complaining of leg pain, but there was no visible physical sign of a broken leg.[1] Deputy Williams handcuffed

---

[1] Though Mrs. Corbin's counsel labelled the lack of a physical sign of a broken leg as being disputed, (Doc. #128, p. 6, ¶ 29), Mrs. Corbin's own sworn testimony says otherwise:

Were there any physical signs that you could see regarding your leg after Defendant Williams kicked your leg that made you think your leg was broken?

A. No, not that I recall.

Q. Okay.

A. Just pain.

Q. So are you sure or -- because you said no, then you said not that you recall. So is it just that you can't remember at all?

A. No, it was pain. Pain was the only thing that made me think it was broken.

Sandra Corbin Dep. 76:16-77:3. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot

Mrs. Corbin and called for backup. Sergeant David Gensimore (Sgt. Gensimore) arrived and with Deputy Williams attempted to have Mrs. Corbin stand up.[2] After Mrs. Corbin was unable to do so, the officers called paramedics. Upon the arrival of paramedics, Mrs. Corbin was placed on a stretcher and moved to an ambulance. The ambulance transported Mrs. Corbin and Deputy Williams to the hospital, where she was diagnosed with a fractured tibia. Two days later, Mrs. Corbin underwent leg surgery. About a year later she underwent a total knee replacement.

Mrs. Corbin was charged with resisting arrest without violence and disorderly intoxication, but the state did not prosecute the charges. Mr. Corbin was arrested that night for driving under the influence and was issued a warning for failure to drive in a single lane.

### III.

Ten counts of the sixteen-count Complaint (Doc. #1) remain after two Opinion & Orders from this Court (Docs. ##24, 67): False Arrest/Imprisonment against Williams (Count I); False

---

thereafter create such an issue . . . ." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984).

[2] Contrary to Deputy Williams' recollection of events, Mrs. Corbin asserts Deputy Williams first attempted to stand her up by himself before calling for backup. Compare Sandra Corbin Dep. 85:3-8, with Williams Dep. 88:3-5.

Arrest/Imprisonment against Gensimore (Count II); Excessive Force against Williams (Count IV); Deliberate Indifference/Failure to Render Aid against Williams (Count VI); Deliberate Indifference/Failure to Render Aid against Gensimore (Count VII); Respondeat Superior against Sheriff Prummell (Count VIII); State Tort False Arrest/Imprisonment against Williams (Count VIII); Battery against Williams (Count IX); Assault against Williams (Count X); and Loss of Consortium against Williams (Count XVI).[3]

Mrs. Corbin moves for summary judgment on her excessive force claim (Count IV). (Doc. #112.) Deputy Williams, Sgt. Gensimore, and Sheriff Prummell move for summary judgment on Counts I, II, VI, VII, VIII (Respondeat Superior), VIII (State False Arrest/Imprisonment), and X. (Doc. #110.) The battery (Count IX) and loss of consortium (Count XVI) claims are not discussed in either motion. The Court first discusses some general legal principles, and then the specific counts at issue.

**IV.**

**A.   42 U.S.C. § 1983 Principles**

---

[3] The Complaint's counts are misnumbered. Since the parties' motions utilize the misnumbered scheme, the Court will too for ease of reference. But the Respondeat Superior and State Tort False Arrest/Imprisonment claims (both labeled as "Count VIII") will be distinguished herein as Count VIII (Respondeat Superior) and Count VIII (State False Arrest/Imprisonment).

Section 1983 provides a private cause of action against any person who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003)(citation omitted).

"A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019)). Mrs. Corbin identifies the Fourth Amendment as the constitutional right at issue for her false arrest and excessive force claims and the Fourteenth Amendment for her deliberate indifference claims.

**B.   Qualified Immunity Principles**

The Eleventh Circuit succinctly summarized qualified immunity's legal principles:

> "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." To receive qualified immunity, the "defendant must first

show he was performing a discretionary function." The
plaintiff then bears the burden of proving both that the
defendant violated his constitutional right and that
"the right was clearly established at the time of the
violation."

Washington v. Howard, 25 F.4th 891, 897-98 (11th Cir.
2022)(citations omitted). See also Baker v. City of Madison,
Alabama, 67 F.4th 1268, 1278 (11th Cir. 2023). Accordingly,
officers who act within their discretionary authority are
"entitled to qualified immunity under [section] 1983 unless (1)
they violated a federal statutory or constitutional right, and (2)
the unlawfulness of their conduct was clearly established at the
time." Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589
(2018)(internal punctuation and citations omitted).

"On the second prong, only decisions of the United States
Supreme Court, [the Eleventh Circuit], or the highest court in a
state can 'clearly establish' the law." Crocker v. Beatty, 995
F.3d 1232, 1240 (11th Cir. 2021)(quoting Gates v. Khokhar, 884
F.3d 1290, 1296 (11th Cir. 2018)), cert. denied, 142 S. Ct. 845
(2022). To show a right was clearly established, a plaintiff must
identify within this limited universe of case law either (1) a
binding case with indistinguishable facts, (2) a broad statement
of principle within the Constitution, statute, or case law, or (3)
conduct so egregious that a constitutional right was clearly
violated, even in the total absence of case law. Id; Davis v.
Waller, 44 F.4th 1305, 1312-13 (11th Cir. 2022). The second and

third options can suffice, but rarely. Id. This is because the
"existing precedent must have placed the statutory or
constitutional question beyond debate" so as to afford "government
officials breathing room to make reasonable but mistaken
judgments," thereby "protect[ing] all but the plainly incompetent
or those who knowingly violate the law." Carroll v. Carman, 574
U.S. 13, 16 (2014) (per curiam) (internal citations and punctuation
omitted). Ultimately, "each defendant is entitled to an
independent qualified-immunity analysis as it relates to his or
her actions and omissions." Alcocer v. Mills, 906 F.3d 944, 951
(11th Cir. 2018). Entitlement to qualified immunity is generally
for the court to decide as a matter of law. Baxter v. Roberts, 54
F.4th 1241, 1256 (11th Cir. 2022).

### C. Florida's Sovereign Immunity Principles

Florida's sovereign immunity statute provides in pertinent
part:

> An officer, employee, or agent of the state or of any of
> its subdivisions may not be held personally liable in
> tort or named as a party defendant in any action for any
> injury or damage suffered as a result of any act, event,
> or omission of action in the scope of her or his
> employment or function, unless such officer, employee,
> or agent acted in bad faith or with malicious purpose or
> in a manner exhibiting wanton and willful disregard of
> human rights, safety, or property. However, such
> officer, employee, or agent shall be considered an
> adverse witness in a tort action for any injury or damage
> suffered as a result of any act, event, or omission of
> action in the scope of her or his employment or function.
> The exclusive remedy for injury or damage suffered as a
> result of an act, event, or omission of an officer,

> employee, or agent of the state or any of its
> subdivisions or constitutional officers is by action
> against the governmental entity, or the head of such
> entity in her or his official capacity, or the
> constitutional officer of which the officer, employee,
> or agent is an employee, unless such act or omission was
> committed in bad faith or with malicious purpose or in
> a manner exhibiting wanton and willful disregard of
> human rights, safety, or property. The state or its
> subdivisions are not liable in tort for the acts or
> omissions of an officer, employee, or agent committed
> while acting outside the course and scope of her or his
> employment or committed in bad faith or with malicious
> purpose or in a manner exhibiting wanton and willful
> disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). The statute operates as Florida's limited waiver of state sovereign immunity in tort for personal injury, wrongful death, and loss or injury of property. Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 472 (Fla. 2005). It has been interpreted to mean that:

> [i]f a State officer, employee, or agent acts within the
> scope of employment and does not act in bad faith, with
> malicious purpose, or in a manner exhibiting wanton and
> willful disregard, the plaintiff's exclusive recourse is
> to seek damages from the governmental entity or the head
> of such entity in his or her official capacity.
> Conversely, if the employee's act falls outside of this
> area (i.e., the act was outside the scope of employment
> or committed in bad faith, with malicious purpose, or in
> a manner exhibiting wanton and willful disregard), the
> plaintiff can recover only from the employee, not from
> the State.

Keck v. Eminisor, 104 So. 3d 359, 366 (Fla. 2012); see also McGhee v. Volusia Cnty., 679 So. 2d 729, 733 (Fla. 1996) ("In any given situation either the agency can be held liable under Florida law, or the employee, but not both.").

Here, Florida's sovereign immunity is only implicated in connection with the state claims against Deputy Williams, and respondeat superior state law claims against Sheriff Prummell. Florida law is clear that an arrest by a police officer is conduct within the scope of his or her duty. The question therefore is whether the officer conduct here falls within any exception identified in § 768.28(9)(a), namely whether an officer acted (1) "in bad faith," (2) "with malicious purpose," or (3) "in a manner exhibiting wanton and willful disregard of human rights [or] safety." Coleman v. Hillsborough Cnty., 41 F.4th 1319, 1325 (11th Cir. 2022)(alteration in original)(quoting Furtado v. Yun Chung Law, 51 So. 3d 1269, 1277 (Fla. 4th DCA 2011)).

"The first two exceptions, 'in bad faith' and 'with malicious purpose,' are 'synonymous with each other under Florida law'" and are equated with the "the actual malice standard." Id. (quoting Peterson v. Pollack, 290 So. 3d 102, 109, 111 (Fla. 4th DCA 2020)). "The 'actual malice' and 'malicious purpose' exceptions apply when the conduct was committed with 'ill will, hatred, spite, or an evil intent.'" Id. For the last exception — "wanton and willful disregard of human rights or safety" — "[w]anton means 'with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property'" and "[w]illful means 'intentionally, knowingly and purposely.'" Id. "Together those terms describe 'conduct much more

12

reprehensible and unacceptable than mere intentional conduct.'"
Id.

<strong>V.</strong>

The Court next addresses the disputed claims in the motions for summary judgment.

**A.   Section 1983 False Arrest/Imprisonment (Counts I & II)**

False arrest and false imprisonment are overlapping torts which both concern detention without legal process. Wallace v. Kato, 549 U.S. 384, 388-89 (2007); Williams v. Aguirre, 965 F.3d 1147, 1157 (11th Cir. 2020). Both the arrest and the detention of a person (even beyond the start of legal process) constitute a "seizure" under the Fourth Amendment. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (arrest); Manuel v. City of Joliet, 580 U.S. 357 (2017) (detention beyond start of legal process). Under the Fourth Amendment, the reasonableness of such a seizure is determined by the presence or absence of probable cause. Baxter, 54 F.4th at 1265 (citing Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007)).

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." Richmond, 47 F.4th at 1180. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Baxter, 54 F.4th at 1265 (citation omitted). On the other hand, the existence of probable cause constitutes an absolute

bar to a section 1983 action for false arrest, even if a minor offense is involved. Id.

"A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." Helm v. Rainbow City, Ala., 989 F.3d 1265, 1278 (11th Cir. 2021) (citing Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009)). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." Campbell, 586 F.3d at 840.  To establish a due process violation, a plaintiff must show that the officer acted with deliberate indifference. Helm, 989 F.3d at 1278-79 (citing Campbell). "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996) (citation omitted). A claim of false imprisonment under § 1983, however, is defeated if the officer has probable cause to arrest. Case v. Eslinger, 555 F.3d 1317, 1330 (11th Cir. 2009).

### 1.   Deputy Williams

Deputy Williams moves for summary judgment on the grounds that he had probable cause, or at least arguable probable cause, to arrest Mrs. Corbin for resisting without violence in violation of Fla. Stat. § 843.02. Mrs. Corbin argues that the facts, when

viewed in her favor, fail to establish either probable cause or arguable probable cause. The Court agrees with Mrs. Corbin.

### (a)   Probable Cause

"[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (alteration in original)(quoting Dist. of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018)). See also Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022); Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022). "Probable cause does not require conclusive evidence and 'is not a high bar.'" Id. In assessing probable cause, courts must consider the totality of the circumstances, i.e, "the whole picture", by "exam[ing] the events leading up to the arrest, and then decid[ing] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Wesby, 583 U.S. at 586, 588 (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, Ala., 608 F.3d 724, 735 (11th Cir. 2010)(citing Skop, 485 F.3d at 1137–38; Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004)).

Here, Deputy Williams argues he had probable cause to arrest Mrs. Corbin for resisting without violence. Florida's resisting without violence statute states that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." Fla. Stat. § 843.02. "The two elements of resisting arrest without violence are: (1) 'the officer must be engaged in the lawful execution of a legal duty'; and (2) 'the defendant's action, be it by words, conduct or a combination thereof, must constitute obstruction or resistance of that lawful duty.'" Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir. 2008)(quoting N.H. v. State, 890 So.2d 514, 516-17 (Fla. 3rd DCA 2005)). "To determine . . . the first element . . . the court must first look to the legal standard that governs [the officer's] actions" and examine "whether the officer complied with that legal standard at the point where the act of resistance occurred." C.E.L. v. State, 24 So. 3d 1181, 1186 (Fla. 2009). To determine the second element, the court must look at "whether a fact-finder could find that the individual's acts constituted obstruction or resistance without violence of the officers' execution of their legal duty." Id.

Deputy Williams argues that both elements are satisfied in this case. The first element, he argues, is satisfied because "[h]e

responded to a DUI traffic stop as a backup officer," and "the second element is satisfied as Cpl. Williams could have reasonably believed [Mrs. Corbin's] defiance of a lawful order on two occasions amounted to obstruction or attempted obstruction . . . ." (Doc. #110, pp. 16, 18.)

The facts, when viewed in the light most favorable to Mrs. Corbin, do not show Deputy Williams had probable cause to arrest her for resisting without violence. Mrs. Corbin was a passenger in a vehicle stopped by Deputy Davidson for swerving on the road. Mrs. Corbin does not challenge that seizure. Deputy Davidson took the driver, Mr. Corbin, to a nearby parking lot for field sobriety tests, but (according to Mrs. Corbin) never ordered Mrs. Corbin to remain in the vehicle. She therefore did not disobey any command when she first exited the vehicle. After she exited the vehicle, Deputy Williams, according to her, only ordered her to get back in the vehicle. She did so. When she exited the vehicle the second time, Mrs. Corbin was ordered to stop. She asserts she did so, still many feet away from where Deputy Davidson was conducting the field sobriety tests. Deputy Williams then came up to her and leg-swept her after she uttered the word "my".

Under this version of the facts, it cannot be said that Deputy Williams had probable cause. See Washington, 25 F.4th at 901 ("Of course, a police officer who observes a suspect obeying commands without making any physical contact could not have concluded from

that observation that there was a substantial chance of criminal activity."). While Mrs. Corbin's version of events "may not be the 'actual' facts of the case", they are the "'facts' as accepted at the summary judgment stage of the proceedings," since all facts and inferences must be construed in light most favorable to the nonmoving party, which is Mrs. Corbin as to these counts. See Davis, 451 F.3d at 763 (citations omitted).[4] Mrs. Corbin's screaming, as described by Deputy Williams, is insufficient to justify an arrest since "'mere words' would not suffice to provide probable cause for resisting without violence." Alston v. Swarbrick, 954 F.3d 1312, 1319 (11th Cir. 2020).

### (b)  Qualified Immunity

Even if there was no probable cause, Deputy Williams asserts qualified immunity shields him from liability. Mrs. Corbin disagrees, arguing Deputy Williams has not shown he was performing

---

[4] Mrs. Corbin's motion repeatedly references the fact that the charges were never prosecuted by the state. While true, this has no relevance in the Court's evaluation:

> First, the Court notes that the fact that the state attorney's office dropped the charges against [plaintiff] "is of no consequence in determining the validity of the arrest itself." Marx, 905 F.2d at 1507. Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

Benoit v. City of Lake City, Fla., 343 F. Supp. 3d 1219, 1232 (M.D. Fla. 2018).

a discretionary function and, even if he was, there was no arguable probable cause and Deputy Williams violated clearly established law when he made the arrest. (Doc. #129, pp. 14-15.)[5]

Deputy Williams has sufficiently shown that he was performing a discretionary function. In the qualified immunity context, the Court "assess[es] whether [the acts in question] are of a type that fell within the employee's job responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The Court's inquiry is two-fold: Whether the officer was (1) performing a legitimate job-related function (that is, pursuing a

---

[5] Mrs. Corbin also argues that qualified immunity does not apply because "qualified immunity, actually, does not exist" since it does not appear in the Constitution or in a statute. (Doc. #129, p. 15-17.) Mrs. Corbin cites two non-binding cases: Green v. Thomas, No. 3:23-CV-126-CWR-ASH, 2024 WL 2269133 (S.D. Miss. May 20, 2024) and Jamison v. McClendon, 476 F. Supp. 3d 386 (S.D. Miss. 2020). The Honorable Carlton W. Reeves authored both opinions, lambasting the qualified immunity doctrine in Jamison and finding it unconstitutional in Green for the reasons Mrs. Corbin argues. But the Supreme Court has long recognized the qualified immunity doctrine is "not constitutionally grounded and [is] essentially a matter of statutory construction," Butz v. Economou, 438 U.S. 478, 497 (1978), and explained that "Congress is free to change th[e] Court's interpretation of its legislation." Pearson v. Callahan, 555 U.S. 223, 233 (2009)(quoting Illinois Brick Co. v. Illinois, 431 U.S. 720, 736 (1977)). Congress has not done so, and the Supreme Court continues to consider the qualified immunity doctrine to be good law despite Judge Reeves' views. See Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S.---, 144 S. Ct. 1316 n.7 (2024)(instructing the Second Circuit it can consider qualified immunity on remand). Judge Reeves himself recognized that "qualified immunity is the law of the land and the undersigned is bound to follow its terms absent a change in practice by the Supreme Court" Jamison, 476 F. Supp. 3d at 409, and applied the doctrine in both cases. Plaintiff's argument is unpersuasive.

job-related goal) and (2) through means that were within his or her power to utilize. Id. Mrs. Corbin argues that "although the act of detaining Plaintiff was within the discretionary function of Williams, however, Williams' and Gensimore's failure to provide Plaintiff with medical care after Williams seriously injured her, and arresting Plaintiff without probable cause are not discretionary functions . . . ." (Doc. #129, p. 15.)

Mrs. Corbin misapprehends the relevant law. "[I]n assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities." Harland, 370 F.3d at 1266. "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description." Id. Here, Deputy Williams arrested Mrs. Corbin. Although Mrs. Corbin claims that arrest was unconstitutional, the appropriate question is whether Williams had "the power to attempt to effectuate arrests." Id. The answer is clearly yes. See Crosby, 394 F.3d at 1332 ("Because making an arrest is within the official responsibilities of a sheriff's deputy, [Deputy Williams] was performing a discretionary function when he arrested [Mrs.

Corbin].") . Deputy Williams has established that he was performing a discretionary function.

The second prong of the qualified immunity analysis concerns whether Deputy Williams had arguable probable cause. See Skop, 485 F.3d at 1137. "Qualified immunity will shield [Deputy Williams] from a claim of false arrest without probable cause if there was arguable probable cause, i.e., if a reasonable police officer, knowing what [Deputy Williams] knew, could have believed there was probable cause for the warrantless arrest." Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999)(citing Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997); Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995)). "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Id. n.4. "To determine whether arguable probable cause exists, courts must look to the totality of the circumstances" and "[a]t the summary judgment stage, courts view the totality of the circumstances in the light most favorable to the nonmoving party," crediting the nonmoving party's version of facts if they conflict with the moving party's version. Davis, 451 F.3d at 763.

Viewing the facts in the light most favorable to Mrs. Corbin, as the Court must, Deputy Williams did not have arguable probable

cause. In Mrs. Corbin's version of events, Deputy Davidson did not tell her to remain in the vehicle. Deputy Williams testified he did not know at the time whether Deputy Davidson had ordered Mrs. Corbin to stay in the vehicle. Williams Dep. 54:16-17. After exiting the vehicle the first time, Mrs. Corbin obeyed Deputy Williams' order to get back inside the vehicle. The sobriety testing by Deputy Davidson was not disturbed. After exiting the vehicle for the second time, Mrs. Corbin stopped when Deputy Williams ordered her to stop. She then managed to say "my" before Deputy Williams came up and performed the leg sweep. Because no reasonable police officer under this version of the facts could have believed there was probable cause for the warrantless arrest, there was not even arguable probable cause to arrest Mrs. Corbin.

Since at least 2003, "our binding precedent [has] clearly established . . . that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable search and seizures." Skop, 485 F.3d at 1143. "Because [Mrs. Corbin] has shown, at least when the facts are viewed in the light most favorable to her, that [Deputy Williams] did not possess arguable probable cause to arrest her and thus violated clearly established law in arresting her, she is entitled to have her case heard by a jury." Id. at 1143-44. Deputy Williams' motion for summary judgment as to Count I is denied.

### 2.   Sgt. Gensimore

Sgt. Gensimore moves for summary judgment as to Count II on the basis that he did not arrest Mrs. Corbin, but even if he had done so he had at least arguable probable cause. Mrs. Corbin disagrees.[6] The Court agrees with Sgt. Gensimore.

### (a)   Sgt. Gensimore did not arrest Mrs. Corbin

The material facts concerning Sgt. Gensimore are undisputed: Deputy Williams called for backup after he leg-swept Mrs. Corbin and handcuffed her. Sgt. Gensimore arrived and together with Deputy Williams attempted to lift Mrs. Corbin from the ground to a standing position.  Mrs. Corbin reached a kneeling position before Deputy Williams and Sgt. Gensimore gave up and let her remain on the ground. As Mrs. Corbin retells the event:

> Q. Okay. But you only got up to the kneeling position?
> A. I -- yeah.
> Q. Okay. And, then, from that kneeling position, where did you go?
> A. Back down to the ground, screaming the whole time.
> Q. And did you remain on the ground until EMS came with the gurney?
> A. Yes, I did.

---

[6] Mrs. Corbin incorrectly suggests that this issue was already resolved in prior motions to dismiss. (See Doc. #129, p. 24.) In resolving those prior motions, the Court applied a Fed. R. Civ. P. 12(b)(6) analysis, allowing the claim to proceed because "[t]he Court [found] that Mrs. Corbin ha[d] alleged sufficient facts to state a plausible claim." (Doc. #67, p. 20.)  The current motions require the Court to apply the distinct Fed. R. Civ. P. 56 standard summarized above.

Sandra Corbin Dep. 72:1-10.

Mrs. Corbin argues Sgt. Gensimore "actively participated in, furthered, and facilitated the arrest of Mrs. Corbin when he also assisted Williams to lift Mrs. Corbin from the ground on her broken leg and ordered her to walk to the police car on her broken leg." (Doc. #129, pp. 24-25.) Sgt. Gensimore responds that "attempting to assist [Mrs. Corbin] to a standing position at the request of a fellow officer . . . does not constitute an unlawful seizure by Gensimore" (Doc. #110, p. 21), and later cites Wilkerson v. Seymour, 736 F.3d 974, 980 (11th Cir. 2013) in support. (See Doc. #130, p. 6.)

In Torres v. Madrid, 592 U.S. 306 (2021) the Supreme Court analyzed what constitutes a seizure of a person under the Fourth Amendment. The Court recognized that "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." Id. at 312 (alteration in the original)(quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). The Court clarified that "[t]he 'seizure' of a 'person' plainly refers to an arrest." Id. After analyzing precedent, the Court held that while "[t]he slightest application of force could" give rise to an arrest, id. at 313, "not . . . every physical contact between a government employee and a member of the public [constitutes] a Fourth Amendment seizure" since "[a] seizure requires the use of

force *with intent to restrain*." Id. at 317. "[F]orce intentionally applied for some other purpose [will not] satisfy this rule." Id.

Here, the facts are undisputed that Sgt. Gensimore was not present when Mrs. Corbin was seized and arrested, and that he did not apply any force to restrain Mrs. Corbin's movement. As her own brief makes clear, Mrs. Corbin was already on the ground, double-locked handcuffed, and immobilized by a broken leg by the time Sgt. Gensimore arrived "to help [Deputy Williams] stand Mrs. Corbin up." (Doc. #129, p. 24.) Deputy Williams, as the arresting officer, had already restrained Mrs. Corbin by the time Sgt. Gensimore arrived as back up. There was no evidence that Sgt. Gensimore "furthered" the already completed arrest, or that Sgt. Gensimore had a "duty to inquire into Williams' actions and un-arrest Mrs. Corbin." (Doc. #129, p. 24.)  Wilkerson, 736 F.3d at 980 ("[A] non-arresting officer does not have a duty to investigate the basis of another officer's arrest."). Mrs. Corbin's § 1983 false arrest claim against Sgt. Gensimore fails. See also City of Huntsville, Ala., 608 F.3d at 737 ("[Deputy Williams], not [Sgt. Gensimore], made the decision to arrest [Mrs. Corbin]. [Mrs. Corbin] does not identify any conduct of Defendant [Sgt. Gensimore] that would support a false arrest claim against him.") Sgt. Gensimore's motion for summary judgment as to Count II is granted.

**(b)  Qualified Immunity**

Alternatively, Sgt. Gensimore argues that if he did arrest Mrs. Corbin, he is entitled to qualified immunity. The Court agrees.  Sgt. Gensimore was clearly performing a discretionary function because, as a police officer, Sgt. Gensimore had the power to back-up a fellow officer and to assist in the detention of an arrested person. See Crosby, 394 F.3d at 1332. Sgt. Gensimore had at least arguable probable cause to seize Mrs. Corbin. A reasonable officer in Sgt. Gensimore's shoes, cognizant only of what Sgt. Gensimore knew, could have reasonably believed Mrs. Corbin had committed a crime. Sgt. Gensimore responded to a backup call from Deputy Williams. Upon arrival, Sgt. Gensimore observed Mrs. Corbin outside of her vehicle on the ground and arrested, having closed the distance between herself and the field sobriety test site. For arguable probable cause purposes, this suffices. See Eslinger, 555 F.3d at 1327 ("Officer [Gensimore] was entitled to rely on allegations . . . and corroborating evidence as probable cause for a warrantless arrest."). Mrs. Corbin fails to identify a binding case with indistinguishable facts, a broad statement of principle within the Constitution, statute, or case law, or conduct so egregious that a constitutional right was clearly violated.

For these reasons, summary judgment is granted in favor of Sgt. Gensimore as to Count II.

**B.    State False Arrest/Imprisonment as to Deputy Williams (Count VIII)**

Deputy Williams moves for summary judgment on the state false arrest claim against him, asserting he had probable cause and is protected by Florida's sovereign immunity statute. Mrs. Corbin argues to the contrary as to each ground. The Court finds neither of Deputy Williams' arguments persuasive given Mrs. Corbin's version of the facts.

"[U]nder Florida law[,] false arrest and false imprisonment are different labels for the same cause of action." Coleman, 41 F.4th at 1327 (quoting Rankin v. Evans, 133 F.3d 1425, 1430 n.5 (11th Cir. 1998)). "A false arrest claim under § 1983 is substantially the same as a claim for false arrest under Florida law." Lozman v. City of Riviera Beach, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014). "[I]t requires proof of '1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances.'" Florez v. Broward Sheriff's Off., 270 So. 3d 417, 421 (Fla. 4th DCA 2019)(quoting Montejo v. Martin Mem'l Med. Ctr., Inc., 935 So.2d 1266, 1268 (Fla. 4th DCA 2006)). False imprisonment carries the same elements. See Harder v. Edwards, 174 So. 3d 524, 530 (Fla. 4th DCA 2015). "In a [Florida] false arrest action, probable cause is an affirmative

defense to be proven by the defendant." <u>Willingham v. City of Orlando</u>, 929 So. 2d 43, 48 (Fla. 5th DCA 2006). And "[b]ecause a detention must be unlawful to proceed on this claim, probable cause is a defense to false imprisonment." <u>Kimbrel v. Clark</u>, No. 1D2023-1901, 2024 WL 2306201, at *2 (Fla. 1st DCA May 22, 2024).

Florida's probable cause standard is identical to the federal probable cause standard. <u>Rankin</u>, 133 F.3d at 1433. The Court has already found that when the facts are viewed in favor of Mrs. Corbin, Deputy Williams did not have probable cause to arrest Mrs. Corbin. Deputy William's argument to the contrary here is rejected.

As previously discussed, Florida's sovereign immunity statute protects an officer from personal liability for acts within the scope of his employment unless the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Deputy Williams argues that the state false arrest claim must fail because Mrs. Corbin presents no evidence he acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, thus triggered Florida's sovereign immunity. (Doc. #110, pp. 33-34.) Mrs. Corbin counters that Deputy Williams is not entitled to sovereign immunity "as there are significant material issues of fact in dispute as to whether there was probable cause or arguable cause to arrest" Mrs. Corbin. (Doc. #129, p. 32.)

"To survive summary judgment on h[er] false arrest and false imprisonment claims against [Deputy Williams], [Mrs. Corbin] must present evidence that when [he] arrested h[er] [his] conduct fell within either the actual malice exception or the wanton and willful disregard exception of § 768.28(9)(a)." Coleman, 41 F.4th at 1327. "[T]he absence of probable cause alone" is not enough. Id. Rather, Mrs. Corbin must present some evidence that Deputy Williams' conduct was "worse than gross negligence" or "more reprehensible and unacceptable than mere intentional conduct or was committed with ill will, hatred, spite, or an evil intent." Peterson, 290 So. 3d 102 at 109.

Mrs. Corbin has satisfied her summary judgment burden to produce evidence from which a reasonable fact finder could determine that Deputy Williams acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard. If a jury believes her version of events, as outlined in her deposition testimony, the jury could find that Deputy Williams acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Contrary to defendant's argument, the "sovereign immunity [issue can often] not be resolved on summary judgment," especially in cases like this where "[s]erious factual disputes" exist as to the "precise actions [the deputies] took," their "state of mind," and thus "the inferences that might reasonably be drawn

from them." Butler v. Gualtieri, 41 F.4th 1329, 1337-38 (11th Cir. 2022). "In sum, the question must be put to the fact-finder whether Deputy [Williams] acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property." McGhee, 679 So. 2d at 733. Deputy Williams' motion for summary judgment is denied as to Count VIII (State False Arrest/Imprisonment).

### C.   Assault (Count X)

Deputy Williams also moves for summary judgment on the assault claim, arguing there was no assault and, even if there was an assault, he is entitled to sovereign immunity. Mrs. Corbin disagrees with both arguments. The Court finds Deputy Williams' arguments to be unpersuasive.

### 1.   A Reasonable Jury Could Find Deputy Williams Assaulted Mrs. Corbin

An "assault" is an "intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." Lay v. Kremer, 411 So.2d 1347, 1349 (Fla. 1st DCA 1990).

Deputy Williams argues that there was no assault because there was no reasonable apprehension of harm by Mrs. Corbin. In her version of events, Mrs. Corbin asserts that she was following orders when Deputy Williams "very purposefully and with great

strides, came up to [her] and stopped abruptly in front of [her] after yelling . . . 'Stop'." Sandra Corbin Dep. 26:4-7. Mrs. Corbin asserts that Deputy Williams then "just stood there with this far-off, distant look in his eyes, staring at [her] . . . eye to eye" before leg sweeping her to the ground. Id. at 42:15-18. Mrs. Corbin testified that she urinated herself not because of incontinence, but because she was "scared to death" and in "fear." Id. at 60:15, 25. Because a reasonable jury could conclude Mrs. Corbin possessed a reasonable apprehension of harm, this portion of Deputy Williams' motion is denied.

### 2.   Florida's sovereign immunity

Deputy Williams also argues that Mrs. Corbin's assault claim fails because sovereign immunity attaches for the same reasons it attached to the state false arrest claim. Mrs. Corbin advances the same counterarguments. For the same reasons discussed above, the Court finds that sovereign immunity does not justify summary judgment in favor of Deputy Williams as to the assault claim.

### D.   Respondeat Superior (Count VIII)

Sheriff Prummell argues he has no tort liability because Deputy Williams did not falsely arrest, imprison, or assault Mrs. Corbin. (Doc. #110, p. 31-32.)  The Court has already analyzed those arguments as to Deputy Williams and found that summary judgment is not appropriate. Mrs. Corbin's claim against the Sheriff remains appropriate pursuant to Florida law.  "If a State

31

officer, employee, or agent acts within the scope of employment and does not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard, the plaintiff's exclusive recourse is to seek damages from the governmental entity or the head of such entity in his or her official capacity." Keck, 104 So. 3d at 366. That is precisely what Mrs. Corbin is attempting to do here, at least as to the state false arrest/imprisonment claim. (See Doc. #1, ¶ 221)("Pursuant to Fed. R. Civ. P 8(d) [sic], in the alternative to the contrary allegations set forth in this Complaint, MRS. CORBIN alleges that DEFENDANT DEPUTIES did not commit the False Arrest/False Imprisonment named herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property"). Since a plaintiff can only recover from the employee or the municipality, but not both, Keck, 104 So. 3d at 366, Mrs. Corbin will only be able to obtain damages from Sheriff Prummell if the jury finds Deputy Williams' conduct did not fall within one of the statutory exceptions. Therefore, this portion of the motion is denied.

### E.   Excessive Force (Count IV)

Mrs. Corbin moves for summary judgment as to the liability of Deputy Williams on her § 1983 excessive force claim, seeking to leave only the question of damages for the jury. Deputy Williams responds that Mrs. Corbin is not entitled to summary judgment because there are disputed facts and "[a]t most, there is a genuine

issue of material fact regarding whether . . . Williams is entitled to qualified immunity." (Doc. #115, p. 19.)  Viewing the facts in the light most favorable to Deputy Williams, the Court agrees that summary judgment is not warranted.

"In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." Stephens v. DeGiovanni, 852 F.3d 1298, 1314-15 (11th Cir. 2017)(quoting Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008)). Thus, "[w]hen an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." Cnty. of L.A., Cal. v. Mendez, 581 U.S. 420, 428 (2017). As the Supreme Court has summarized:

> In assessing a claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." "A court (judge or jury) cannot apply this standard mechanically." Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case." Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

Lombardo v. City of St. Louis, Mo., 141 S. Ct. 2239, 2241 (2021)(internal punctuation and citations omitted); see also Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 8 (2021). While

Lombardo dealt with a Fourteenth Amendment excessive force claim, "the Fourteenth Amendment's standard is analogous to the Fourth Amendment's." Patel v. Lanier Cnty. Georgia, 969 F.3d 1173, 1182 (11th Cir. 2020). See also Piazza v. Jefferson Cnty., Ala., 923 F.3d 947, 953 (11th Cir. 2019)("[T]he Fourteenth Amendment standard has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment.").

The Court views the circumstances from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and accounts for the fact that officers are often required to make "split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Plumhoff v. Rickard, 572 U.S. 765, 775 (2014) (quoting Graham, 490 U.S. at 396-97). See also Robinson, 46 F.4th at 1341; Charles v. Johnson, 18 F.4th 686, 699-700 (11th Cir 2021).

Here, summary judgment on the excessive force claim is inappropriate because there are genuine issues of material fact regarding the events. Viewing the facts in the light most favorable to Deputy Williams, as the Court must, Deputy Williams ordered Mrs. Corbin to remain in the car, and leg swept her only after she disobeyed that order, disobeyed his order to stop, and pulled her wrists away from him when he attempted to stop her movement towards Deputy Davidson. Therefore, under Deputy Williams' version of

events, Mrs. Corbin was actively resisting and freely moving when he performed the leg sweep. See Charles, 18 F.4th at 701 ("H[er] resistance was active resistance because [s]he actively navigated h[er] arms and body away from [officer] in order to avoid being properly handcuffed."); Leach v. Sarasota Cnty., No. 23-10357, 2024 WL 2148216, at *2 (11th Cir. May 14, 2024)(per curiam)("[Plaintiff] resisted the Deputies by . . . pulling his hand away . . . .").

A reasonable jury could believe Deputy Williams' version of events and conclude that the use of force was not excessive. See Johnson, 18 F.4th at 1272 ("[W]e have held that it may be reasonable for an officer to use force against a suspect who is resisting and not subdued."); Sebastian v. Ortiz, 918 F.3d 1301, 1308 (11th Cir. 2019)("[W]e have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." (quoting Stephens, 852 F.3d at 1328)). Therefore, Mrs. Corbin's motion is denied.

### F.   Deliberate Indifference to Serious Medical Need as to Deputy Williams and Sgt. Gensimore (Counts VI and VII)

Deputy Williams and Sgt. Gensimore move for summary judgment on Mrs. Corbin's Fourteenth Amendment deliberate indifference claims against them. They argue they were not deliberately

indifferent to Mrs. Corbin's medical needs and that in any event they are protected by qualified immunity. Despite Mrs. Corbin's opposition, the Court agrees with defendants' arguments.

It is well-established that the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment require government officials to provide medical aid to individuals who have been injured during an arrest. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).[7] "To succeed on a claim for deprivation of medical care, a plaintiff must prove (1) the existence of an objectively serious medical need, and (2) that the officer was deliberately indifferent to that need." Wade v. Daniels, 36 F.4th 1318, 1326 (11th Cir. 2022)(quoting Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015)).

### 1.  Serious Medical Need

No one disputes that Mrs. Corbin's broken leg is an objectively serious medical need. Indeed, the Eleventh Circuit "ha[s] previously found that the pain caused by a similar injury, a broken foot, is a serious medical need." Clark v. Sheffield, 807

---

[7] "'[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments,' and 'it makes no difference whether [Mrs. Corbin] was a pretrial detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'" Keith v. DeKalb Cnty., Georgia, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014)(internal quotations and citations omitted).

F. App'x 910, 915 (11th Cir. 2020)(holding a broken knee is a serious medical need)(citing Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990)).[8]

### 2.   Deliberate Indifference

To satisfy the deliberate indifference prong, plaintiff must show that the defendant acted with "subjective recklessness as used in the criminal law." Wade v. McDade, No. 21-14275, 2024 WL 3354963, at *3 (11th Cir. July 10, 2024) (en banc)(quoting Farmer v. Brennan, 511 U.S. 825, 837, 839 (1994). "[I]n order to do so, the plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm—with the caveat that, in any event, a defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable'" for deprivation of medical care. Id. at *2 (internal citation omitted)(quoting Farmer, 511 U.S. at 837, 844).

Here, the undisputed timeline is as follows: Mrs. Corbin and Mr. Corbin were pulled over at 9:44 PM. (Doc. #129, ¶ 2)(Mrs. Corbin admitting to that fact). At around 9:59 PM, about fifteen minutes after the Corbins were pulled over, Mrs. Corbin was leg-swept. Compare John Corbin Dep. 21:5 (Mr. Corbin testifying

---

[8] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

"[p]robably maybe ten minutes" passed between the start of sobriety tests and Mrs. Corbin being leg swept), and Sandra Corbin Dep. 31:13-20 (Mrs. Corbin testifying that "[i]t couldn't have been very long" between being pulled over and the leg sweep and estimating it to be less than fifteen minutes), with Doc. #110-3 (incident report showing eleven minutes passed between the pull over and the leg sweep). Once on the scene, paramedics provided Mrs. Corbin with medical aid. (Doc. #129, p. 11, ¶ 7.) Mrs. Corbin was transported to the hospital at 10:17 PM, where she was diagnosed with a fractured tibia. (Id. at ¶¶ 48, 50)(Mrs. Corbin admitting to those facts). It follows that Mrs. Corbin received medical attention for her fractured leg within less than eighteen minutes after being leg-swept.

Deputy Williams and Sgt. Gensimore cannot be held liable for having failed to personally provide Mrs. Corbin with medical care because each responded reasonably after the leg-sweep and there was "nothing [they] could [have] done for [Mrs. Corbin] at the scene." (Doc. #110, p. 27.) This is confirmed by the testimony of the treating physician and paramedic. See Sean Dingle, M.D. Dep. 11:13-19 (testifying that the only treatment for Mrs. Corbin's fracture was surgery); see also Tavi Cooley Dep. 19:9-13 (testifying that, at the scene, a person suffering from a fractured leg can only be offered alternative positioning, an ice pack, and comfort). It is "[s]ignificant[ that] Dr. [Dingle]'s [deposition]

stated that surgical intervention was the only treatment option."
Melton v. Abston, 841 F.3d 1207, 1222 (11th Cir. 2016). Because
"[f]ailing to do the 'impossible' doesn't evince indifference, let
alone deliberate indifference," Swain v. Junior, 961 F.3d 1276,
1287 (11th Cir. 2020), Mrs. Corbin has no claim against Deputy
Williams or Sgt. Gensimore for failing to provide her medical care.

Nor is there a viable claim based on a delay by the officers.
"When a plaintiff alleges that delay in medical treatment shows
deliberate indifference, [s]he 'must place verifying medical
evidence in the record to establish the detrimental effect of delay
in medical treatment to succeed.'" Whitehead v. Burnside, 403 F.
App'x 401, 403 (11th Cir. 2010)(quoting *Hill v. Dekalb Reg'l Youth
Det. Ctr.,* 40 F.3d 1176, 1187–88 (11th Cir. 1994), overruled in
part on other grounds by Hope v. Pelzer*,* 536 U.S. 730, 739 n. 9,
(2002)); see also McDade, 2024 WL 3354963, at *3 (emphasizing that
the appropriate question is whether officials exposed a detainee
"to a sufficiently substantial risk of serious damage to his **future**
health" (emphasis added)(quoting Farmer, 511 U.S. at 843)). Mrs.
Corbin points to no evidence showing that her already fractured
leg was detrimentally affected by having to wait about eighteen
minutes for medical care. Her brief's casual assertion that Deputy
Williams and Sgt. Gensimore "exacerbat[ed] . . . her injury" (Doc.
#129, p. 28) by delaying her medical treatment is unsupported in
the record. Sartori v. Schrodt, 424 F. Supp. 3d 1121, 1123 (N.D.

Fla. 2019), <u>aff'd,</u> No. 19-15114, 2021 WL 6060975 (11th Cir. Dec. 20, 2021) ("[S]tatements by counsel made in memoranda are not evidence." (citing <u>Green v. School Bd. of Hillsborough Cty., Fla.,</u> 25 F.3d 974, 979 (11th Cir. 1994); <u>United States v. Smith</u>, 918 F.2d 1551, 1562 (11th Cir. 1990))). Mrs. Corbin's deliberate indifference claims against Deputy Williams and Sgt. Gensimore fail.

### 3.   Qualified immunity applies

Deputy Williams and Sgt. Gensimore alternatively argue that even if they acted with deliberate indifference, they are protected by qualified immunity. The Court agrees.

The first prong for qualified immunity is satisfied because, as explained earlier, arresting and detaining a person are within the discretionary functions of a police officer in general and these officers in particular. The second prong is also satisfied because, assuming arguendo that Deputy Williams and Sgt. Gensimore acted deliberately indifferent, "[a]n officer violates a detainee's 'Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee.'" <u>Crosby</u>, 394 F.3d at 1335 (quoting <u>Lancaster v. Monroe Cnty.</u>, 116 F.3d 1419, 1425 (11th Cir. 1997)). But qualified immunity attaches because "[w]hether or not Defendant[s'] conduct constituted deliberate indifference to a serious medical need in violation of Plaintiff's Fourteenth Amendment rights, the law

applicable to these circumstances was not already clearly established at the time of the alleged violation." <u>Youmans v. Gagnon</u>, 626 F.3d 557, 562-63 (11th Cir. 2010)(internal citation omitted).

Under the undisputed facts, Mrs. Corbin waited approximately eighteen minutes for medical aid. Mrs. Corbin fails to carry her burden of identifying a binding case with indistinguishable facts, a broad statement of principle within the Constitution, statute, or case law, or conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. To the contrary, an independent review of precedent by the Court reveals the unlawfulness of this conduct was not clearly established at the time. Binding Eleventh Circuit precedent "ha[s] warned that delays even of only a 'few minutes' in seeking care for life-threatening injuries can constitute deliberate indifference." <u>Valderrama</u>, 780 F.3d at 1122 (quoting <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1273 (11th Cir. 2005), <u>abrogated on other grounds by Kingsley v. Hendrickson</u>, 576 U.S. 389 (2015)). But in the context of a broken leg, the Eleventh Circuit has stated that "an unexplained delay of **hours** in treating a serious injury states a prima facie case of deliberate indifference" but not necessarily so for mere minutes. <u>Hughes</u>, 894 F.2d at 1538 (emphasis added); <u>Harris</u>, 21 F.3d at 394("A few hours' delay in receiving medical

care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference.").

If anything, precedent indicates the conduct here was not deliberately indifferent. Pourmoghani-Esfahani v. Gee, 625 F.3d 1313 (11th Cir. 2010)(holding that "[n]o preexisting law clearly established that" mere minute delays in receiving medical care for non-life threatening injuries is a constitutional violation); see also Irizarry v. Sec'y, Fla. Dep't of Correctons, No. 21-10591-A, 2021 WL 3231163, at *2 (11th Cir. July 22, 2021)(stating that for a broken foot, "[t]he district court correctly concluded that the 20-to-30-minute delay in calling emergency medical services does not rise to the level of deliberate indifference under our precedents."). Qualified immunity attaches to Deputy Williams and Sgt. Gensimore in Counts VI and VII and this portion of their motion is granted.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. #110) is **GRANTED IN PART AND DENIED IN PART.** Judgment in favor of Deputy Williams is granted on Count VI. Judgment in favor of Sgt. Gensimore is granted on Counts II and VII. The motion is otherwise denied.

2. Plaintiffs' Motion for Summary Judgment (Doc. #112) is **DENIED.**

3. The Clerk of the Court shall withhold entry of judgment until the remaining counts are resolved.

**DONE AND ORDERED** at Fort Myers, Florida, this ___19th___ day of July, 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record