```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

SANDRA CORBIN and JOHN CORBIN,

      Plaintiffs,

v.     Case No: 2:22-cv-394-JES-KCD

BILL PRUMMELL, JR., in his official capacity as Sheriff of the Charlotte County, Florida's Sheriff's Office, DAVID GENSIMORE, individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office, AARON WILLIAMS, individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office, KENRICK ROGUSKA, individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office, and MICHAEL DAVIDSON, individually and in his official capacity as a Deputy for the Charlotte County Sheriff's Office,

      Defendants.

---

**OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' Motion to Exclude the Expert Testimony of Teri L. Stockham (Doc. #111) filed on April 26, 2024. Defendants filed a Response in Opposition (Doc. #118) on May 15, 2024. With permission from the Court, Plaintiffs

filed a Reply (Doc. #124) on June 4, 2024. For the reasons set forth below, the motion is denied.

**I.**

The Court recently summarized the facts of this case:

> On or about November 29, 2019, Deputy Michael Davidson (Deputy Davidson) made a traffic stop of a vehicle driven by John Corbin (Mr. Corbin) after observing the vehicle swerving on the road. Deputy Davidson caused the vehicle to pull into a McDonalds parking lot. Sandra Corbin (Mrs. Corbin) was in the passenger seat in the vehicle driven by her husband. After both Mr. and Mrs. Corbin admitted to drinking a few beers, Mr. Corbin consented to a field sobriety test and was escorted by Deputy Davidson to a more level parking lot approximately fifty to one hundred feet away. Mrs. Corbin stayed in the car. Deputy Aaron Williams (Deputy Williams), who had recently arrived at the scene in a separate vehicle, stood between the Corbin vehicle containing Mrs. Corbin and the sobriety testing site where Mr. Corbin and Deputy Davidson were located.
>
> At some point, Mrs. Corbin exited the vehicle. Deputy Williams approached and told her to get back into the vehicle. According to Deputy Williams, he also told her to remain in the vehicle. Mrs. Corbin got back into the vehicle, but she did not remain there. Approximately five minutes later, Mrs. Corbin exited the vehicle for a second time. Deputy Williams told her to stop. What happened next is disputed. Deputy Williams asserts Mrs. Corbin did not stop, told Deputy Williams he would have to arrest her, and pulled away from his attempts to grab her wrists. At that point, Deputy Williams asserts, he swept Mrs. Corbin's leg from underneath her, bringing her to the ground. On the other hand, Mrs. Corbin asserts that she immediately stopped when told to do so by Deputy Williams and before Deputy Williams positioned himself in front of her, and she uttered the single word "my" before Deputy Williams swept her legs from underneath her.
>
> It is undisputed that Mrs. Corbin found herself on the ground and laying in her own urine. Mrs. Corbin was screaming that her leg was broken and complaining of leg

pain, but there was no visible physical sign of a broken leg.[1] Deputy Williams handcuffed Mrs. Corbin and called for backup. Sergeant David Gensimore (Sgt. Gensimore) arrived and with Deputy Williams attempted to have Mrs. Corbin stand up.[2] After Mrs. Corbin was unable to do so, the officers called paramedics. Upon the arrival of paramedics, Mrs. Corbin was placed on a stretcher and moved to an ambulance. The ambulance transported Mrs. Corbin and Deputy Williams to the hospital, where she was diagnosed with a fractured tibia. Two days later, Mrs. Corbin underwent leg surgery. About a year later she underwent a total knee replacement.

Mrs. Corbin was charged with resisting arrest without violence and disorderly intoxication, but the state did not prosecute the charges. Mr. Corbin was arrested that night for driving under the influence and

---

[1] Though Mrs. Corbin's counsel labelled the lack of a physical sign of a broken leg as being disputed, (Doc. #128, p. 6, ¶ 29), Mrs. Corbin's own sworn testimony says otherwise:

> Were there any physical signs that you could see regarding your leg after Defendant Williams kicked your leg that made you think your leg was broken?
>
> A. No, not that I recall.
>
> Q. Okay.
>
> A. Just pain.
>
> Q. So are you sure or -- because you said no, then you said not that you recall. So is it just that you can't remember at all?
>
> A. No, it was pain. Pain was the only thing that made me think it was broken.

Sandra Corbin Dep. 76:16-77:3. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue . . . ." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984).

[2] Contrary to Deputy Williams' recollection of events, Mrs. Corbin asserts Deputy Williams first attempted to stand her up by himself before calling for backup. Compare Sandra Corbin Dep. 85:3-8, with Williams Dep. 88:3-5.

was issued a warning for failure to drive in a single lane.

(Doc. #131, pp. 4-6.) Mr. and Mrs. Corbin brought this lawsuit, alleging § 1983 false arrest, among other claims. Mr. and Mrs. Corbin now move to exclude the testimony of Defendants' proposed expert, Teri L. Stockham, a forensic toxicologist who opines that:

> Ms. Sandra Corbin was intoxicated such that her normal faculties were impaired at the time of this incident. This opinion is based on scientific evidence of the hospital serum ethanol result of 206 mg/dL almost two hours after the incident. To compare this value to the DUI statute for impaired driving in Florida, the units would be changed to g/dL which also equals g%. Serum ethanol would be converted to whole blood ethanol. In this case 206 mg/dL serum ethanol would become 0.17-0.19 g% whole blood ethanol (BAC). At this BAC I would expect the following signs and symptoms of intoxication: emotional instability or exaggerated emotional states; loss of judgement; impairment of perception, memory, and comprehension; increased reaction time; reduced visual acuity and peripheral vision; slurred speech; confusion.
>
> Further my opinion is supported by observations of EMS personnel who smelled ethanol and state Ms. Corbin displayed characteristics of ethanol intoxication such as belligerence and being uncooperative. Statements in their report reflect that Ms. Corbin drank several beers prior to the incident.
>
> I also opine that Ms. Corbin had more than two beers as stated in her Answers to Interrogatories and her deposition.

(Doc. #111-1, pp. 2-3.)

## II.

Admission of expert opinion evidence is governed by Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may

> testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (eff. Dec. 1, 2023). In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), the Supreme Court held that the trial court has a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. The importance of this gatekeeping function "cannot be overstated." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)(en banc).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. Frazier, 387 F.3d at 1260. "Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact." Club Car, Inc. v. Club Car (Quebec) Imp., Inc., 362 F.3d 775, 780 (11th Cir. 2004), abrogated on other grounds by Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1258 n.7 (11th Cir. 2010). In short, "the expert must be qualified; his methodology must be

reliable; and his testimony must be helpful to the trier of fact." Doe v. Rollins Coll., 77 F.4th 1340, 1347 (11th Cir. 2023). "The proponent of the expert testimony bears the burden of establishing each requirement by a preponderance of the evidence . . . ." Id.

"Even expert testimony which satisfies these three requirements, however, may nonetheless be excluded under Rule 403 if the probative value of the expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if it is cumulative or needlessly time consuming." Frazier, 387 F.3d at 1263. The admission of expert testimony is a matter within the discretion of the trial court. Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1103 (11th Cir. 2005); Frazier, 387 F.3d at 1258.

### III.

Mr. and Mrs. Corbin argue that Stockham is not qualified to testify on Mrs. Corbin's state of mind, behavior, etc., that her opinion is not based on reliable scientific or technical testing, and that the testimony will not assist the trier of fact. Defendants disagree. The Court will analyze each argument.

**A. Stockham is qualified**

"A witness is *qualified* as an expert if he is the type of person who should be testifying on the matter at hand." Moore v. Intuitive Surgical, Inc., 995 F.3d 839, 852 (11th Cir. 2021). "[E]xpert

status may be based on 'knowledge, skill, experience, training, or education.'" Frazier, 387 F.3d at 1261 (quoting Fed. R. Evid. 702).

Stockham holds three degrees: A Bachelor of Science in chemistry, a Master of Science in forensic science and forensic toxicology, and a Doctor of Philosophy in pharmacology and toxicology. She has thirty-five years of toxicology experience, including a stint as Chief Toxicologist at Broward County Medical Examiner's office. Plaintiffs argue that Stockham, as a toxicologist, is not qualified to opine on how Mrs. Corbin comported herself during the night in question since Stockham "never met with Mrs. Corbin, nor discussed the events of November 29, 2019, to ascertain or even ha[ve] a modicum of insight as to Mrs. Corbin's state of mind . . . ." (Doc. #111, p. 12.) Plaintiffs' argument misconstrues Stockham's offered testimony and applies a higher bar for the qualification of an expert than precedent requires.

Stockham is not testifying that she personally knows Mrs. Corbin behaved a certain way during the night in question. She is offering testimony regarding Mrs. Corbin's blood alcohol content (BAC) and the "signs and symptoms" she would "expect" with that BAC. (Doc. #111-1, p. 3.) Stockham is qualified as an expert to interpret BAC "not because of h[er] familiarity with [Mrs. Corbin], but because of h[er] familiarity with the analysis [s]he was tasked with performing." Moore, 995 F.3d at 853. Indeed, "[a]s a toxicologist,

Dr. [Stockham] is qualified to opine generally on the effects of alcohol on a person." Waters v. AIG Claims, Inc., 608 F. Supp. 3d 1120, 1133 (M.D. Ala. 2022). The first prong is satisfied.

**B. Stockham's methodology is sufficiently reliable**

The non-exhaustive factors a court considers in ascertaining the reliability of scientific expert opinion are: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003)(citing McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). The "basic foundation for admissibility" is that the expert's opinions be firmly supported "by appropriate validation." Frazier, 387 F.3d at 1261.

Plaintiffs argue Stockham's testimony is not reliable for many reasons, including because it relies not on statistical data but on Mrs. Corbin's blood alcohol level taken two hours after the event and does not consider pertinent deposition testimony or Mrs. Corbin's alcohol tolerance level. Defendants counter that Mrs. Corbin's BAC levels are reliable. The Court agrees.

Stockham's opinion is based "on scientific evidence of the hospital serum ethanol result of 206 mg/dL" which she converts to

BAC. (Doc. #111-1, p. 2.) Her opinion is reliable because it is generally accepted that alcohol content levels give reliable estimates of a person's intoxication, and "[a]nalysis of blood samples gives the most accurate results." McCormick On Evid. § 205.1 (8th ed. 2022)(citing Fitzgerald & Hume, The Single Chemical Test for Intoxication: A Challenge to Admissibility, 66 Mass. L. Rev. 23 (1981)). Plaintiffs remaining arguments miss the mark. Even if accepted as true that, for example, certain deposition testimony was omitted, misstated, or contradicted and that pertinent information such as Mrs. Corbin's age, fatigue, or food consumption was overlooked, any such shortcomings would go to the weight of the evidence, not to admissibility. See Giusto v. Int'l Paper Co., 571 F. Supp. 3d 1346, 1362 (N.D. Ga. 2021)("[A]ny conflict between an expert's proffered testimony and the underlying evidence or facts goes to the weight—not admissibility—of the testimony."). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The second prong is satisfied.

**C. Stockham's testimony will assist the trier of fact**

The third requirement asks "whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 593. Commonly referred to as the "helpfulness" inquiry, expert

testimony can properly be applied and is helpful if it relates to any issue in the case and if it concerns matters that are beyond the understanding of an average lay person. Prosper v. Martin, 989 F.3d 1242, 1249 (11th Cir. 2021).

Plaintiffs argue that "an opinion or determination of intoxication" is unhelpful here as Florida's driving under the influence statute is irrelevant and "there is no requisite or comparable BAC level under" Florida's disorderly intoxication statute, Fla. Stat. § 856.011. (Doc.#111, pp. 8-9.) Defendants counter that Stockham's testimony would be helpful since Mrs. Corbin "was arrested for disorderly intoxication," and that "without Dr. Stockham converting the [206 mg/dL test result] to blood alcohol content, the jury will not know how to interpret the result and determine [Mrs. Corbin's] level of intoxication" while adding "that "Stockham's reference to the .08 standard [under Florida's driving under the influence statute] only helps to explain [Mrs. Corbin's] level of intoxication." (Doc. #118, pp. 6, 8-9.) The Court agrees.

Plaintiffs have sued Williams for § 1983 false arrest, among other claims. "To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022). "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer

could conclude . . . that there was a substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (alteration in original)(quoting Dist. of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018)). See also Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022); Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022). "Probable cause does not require conclusive evidence and 'is not a high bar.'" Id. In assessing probable cause, courts must consider the totality of the circumstances, i.e, "the whole picture", by "exam[ing] the events leading up to the arrest, and then decid[ing] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Wesby, 583 U.S. at 586, 588 (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, Ala., 608 F.3d 724, 735 (11th Cir. 2010)(citing Skop, 485 F.3d at 1137–38; Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004)).

A Williams defense to Plaintiffs' false arrest claim is that he had probable cause to arrest Mrs. Corbin for disorderly intoxication pursuant to Fla. Stat. § 856.011. "[U]nder the plain language of the statute, 'disorderly intoxication' is defined and proscribed in two distinct ways: (1) where the person is intoxicated and endangers the safety of another person or property;

and (2) where the person is intoxicated or drinks alcohol in a public place or on a public conveyance and causes a public disturbance." Palancar v. State, 204 So. 3d 473, 475 (Fla. 4th DCA 2016)(alteration in original)(quoting Royster v. State, 643 So.2d 61, 64 (Fla. 1st DCA 1994).

"The results of the blood alcohol test indicate that [Mrs. Corbin] was intoxicated at the time of [the event]. Proof of [Mrs. Corbin]'s intoxication is, of course, highly relevant to and probative of one of the ultimate questions before the jury" of whether Williams had probable cause to arrest Mrs. Corbin for disorderly intoxication. Ballou v. Henri Studios, Inc., 656 F.2d 1147, 1155 (5th Cir. 1981).[3] Stockham's opinions regarding Mrs. Corbin's BAC and the effects expected of a person with that level of BAC "are helpful for the factfinder because, although the general effects of alcohol consumption are commonly known, the methodology for determining an individual's BAC and an opinion on the associated physiological manifestations of a specific BAC level are beyond the understanding and experience of the average lay citizen and goes to the ultimate finding" of whether Mrs.

---

[3] The Eleventh Circuit "ha[s] adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit." In re Forrest, 47 F.4th 1229, 1235 n.3 (11th Cir. 2022)(citing Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982)).

Corbin was intoxicated. Chappell v. Carnival Corp., 666 F. Supp. 3d 1316, 1324 (S.D. Fla. 2023). The third prong is satisfied.

None of Plaintiffs' arguments to exclude Stockham's testimony are persuasive. Stockham is qualified, her outlined opinion above is reliable, helpful, relevant, and its probative value does not outweigh the danger of unfair prejudice, confusion of the issues, or misleading of the jury.

Accordingly, it is hereby

**ORDERED**:

Plaintiffs' Motion to Exclude the Testimony of Teri L. Stockham (Doc. #111) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this __25th__ day of July, 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record