UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDRA CORBIN and JOHN
CORBIN,

      Plaintiffs,

v.                                    Case No: 2:22-cv-394-JES-KCD

BILL PRUMMELL, JR., in his
official capacity as
Sheriff of the Charlotte
County, Florida Sheriff's
Office, and AARON
WILLIAMS, individually and
in his official capacity
as a Deputy for the
Charlotte County Sheriff's
Office,

      Defendants.

_____

### OPINION AND ORDER

    This matter comes before the Court on Deputy Aaron Williams' (Deputy Williams or Defendant) Amended Post Trial Brief on Qualified Immunity (Doc. #179) and Sandra and John Corbin's (Plaintiffs or the Corbins) Amended Post Trial Brief on Qualified Immunity. (Doc. #186.) For the reasons set forth below, the Court finds Deputy Williams is entitled to qualified immunity and directs the Clerk to enter judgment accordingly.

**I.**

    The Corbins filed this action against a county sheriff and several deputies after a traffic stop on November 29, 2019. In

relevant part, Sandra Corbin (Mrs. Corbin) asserted federal claims against Deputy Williams for false arrest and excessive force under the Fourth Amendment, and state law claims of battery, assault, and loss of consortium. (Doc. #1.) John Corbin (Mr. Corbin) asserted a loss of consortium claim. (Id.) The Court denied the qualified immunity defense raised by Deputy Williams in his motion to dismiss. (Doc. #67.) Deputy Williams' Answer asserted, among other things, an affirmative defense of qualified immunity. (Doc. #69, p. 18.)  The Court denied the qualified immunity defense raised in motions for summary judgment (Doc. #131), and the case proceeded to a jury trial.

During their respective trial testimony, Deputy Williams and Mrs. Corbin gave diverging accounts of important portions of their encounter.  Mrs. Corbin testified that:

At about 9:00 p.m. on November 29, 2019, Mrs. Corbin and her husband, Mr. Corbin, left a local establishment called the Sandbar and Grille. Mr. Corbin was driving the vehicle and Mrs. Corbin was in the passenger seat. The vehicle was pulled over by Deputy Davidson and came to a stop in a sloped McDonalds' parking lot. Deputy Davidson asked Mr. Corbin if he had anything to drink and Mr. Corbin responded he had had two beers. Deputy Davidson said, "I can smell alcohol now," and asked Mr. Corbin if he would submit to a field sobriety test (FST). Mr. Corbin agreed to the

FST and walked with Deputy Davidson to a nearby parking lot which had a flatter surface.

Mrs. Corbin stayed in the passenger seat of the vehicle until she heard a scream and saw people pointing at something. Fearing her husband was in trouble, Mrs. Corbin got out of the vehicle. Deputy Williams, who had recently arrived at the scene, stood in front of her and told her to get back in the vehicle. She did so.

Mrs. Corbin remained in the vehicle until she again heard screaming and saw people pointing. Mrs. Corbin then exited the vehicle for the second time. Deputy Williams again stood in front of her, not saying anything but just looking at her. Mrs. Corbin started to say, "my husband . . .," when Deputy Williams kicked or leg swept her to the asphalt by hitting the side of her knee with his leg.  Mrs. Corbin testified she crashed head-first into the asphalt, urinated on herself, and was then handcuffed by Deputy Williams.

Deputy Williams testified that:

He arrived at the scene as a backup officer after the Corbin vehicle had been stopped and while both Corbins were still inside the vehicle. Deputy Williams spoke with Deputy Davidson, who was going to perform a FST on Mr. Corbin because Deputy Davidson believed Mr. Corbin had been driving impaired. Mr. Corbin and Deputy Davidson walked to a nearby parking lot which had a

flatter surface for the FST. Deputy Williams stayed behind
watching Mrs. Corbin, who was sitting in the vehicle yelling.
Mrs. Corbin got out of the vehicle, still yelling, and began
walking in the direction of the FST. Deputy Williams stepped in
front of her, placing himself between Mrs. Corbin and the FST
site, and told her to get back in the car and to stay in the
vehicle. Ms. Corbin returned to the vehicle, where she kept
yelling.

Shortly thereafter Mrs. Corbin got out of the car for a
second time, still yelling, again walking towards the FST
location. Deputy Williams again placed himself between Mrs.
Corbin and the FST site, telling Mrs. Corbin to stop and to get
back into the vehicle or she would be arrested. Mrs. Corbin said
he would have to arrest her. Deputy Williams grabbed Mrs.
Corbin's wrist, but she kept moving and struggling, attempting
to push past him. At that point, Deputy Williams performed a leg
sweep on Mrs. Corbin by striking both her calves with the calf
of his left leg. Deputy Williams controlled her fall to the
ground, and applied handcuffs when she was on the ground in her
own urine.

Deputy Williams testified that he perceived Mrs. Corbin to
be older than he was, but about the same height and strong enough
to push past him. He also testified that Mrs. Corbin was
constantly screaming, slurring her speech, and emanating an odor

of alcoholic beverages on her person and breath, with the general demeanor of a drunk person.

Mrs. Corbin was taken to a hospital, where she was diagnosed with a fractured tibia. Mrs. Corbin ultimately underwent two surgeries for the injury.

The parties' experts presented conflicting opinions as to the leg sweep. The Corbins' expert opined that, under either version of events, the leg maneuver Deputy Williams used on Mrs. Corbin was not proportionate to her actions, was not a properly executed leg sweep, and was more akin to a kick. Deputy Williams' expert opined that, under Deputy Williams' version of events, the leg maneuver Deputy Williams used on Mrs. Corbin was a properly executed leg sweep whose force was proportionate to her actions.

The jury verdict rejected Mrs. Corbins' state law claims of false arrest, battery, and assault against Deputy Williams, but found Deputy Williams liable to Mrs. Corbin for excessive force and liable to Mr. Corbin for loss of consortium. The compensatory damages were $1.7 million for excessive force and $300,000 for loss of consortium. No punitive damages were awarded.

After the jury verdict was read, defense counsel requested four special interrogatories be submitted to the jury to resolve the unsettled qualified immunity issue. Through these special interrogatories, Deputy Williams wanted to know if he had been

"objectively reasonable" and whether Mrs. Corbin had resisted. (See Doc. #174-1, ¶¶ 5-8.) The Court declined to send those proposed special interrogatories to the jury.[1]

The sole question now before the Court is whether Deputy Williams is entitled to qualified immunity.

## II.

The qualified immunity general principles are well-established. Qualified immunity protects government officials from liability for torts committed while performing discretionary duties unless the conduct violates a clearly established statutory or constitutional right of which a reasonable person would have known. Gervin v. Florence, No. 23-11452, 2025 WL 1618289, at *16 (11th Cir. June 9, 2025). The government official must first prove he or she was acting within the scope of discretionary authority when the allegedly wrongful act occurred. DeMarcus v. Univ. of S. Alabama, 133 F.4th 1305,

---

[1] The Eleventh Circuit has made clear that, in the qualified immunity context, any "jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues," Johnson v. Breeden, 280 F.3d 1308, 1318 (11th Cir. 2002), and that "the question of whether the officer's perceptions and attendant actions were objectively reasonable under th[e] circumstances is a question of law for the court." Simmons v. Bradshaw, 879 F.3d 1157, 1164 (11th Cir. 2018). The first two proposed interrogatories asked whether Deputy Williams was "objectively reasonable", and defense counsel conceded that the "proposed questions, . . . involved mixed questions of law and fact." (Doc. #179, p. 20.) The last two proposed interrogatories—asking the jury about two alleged instances of resistance by Mrs. Corbin—were "irrelevant to the qualified immunity issue in light of the verdict and jury findings," Johnson, 280F.3d at 1323, because it was evident the jury found Mrs. Corbin resisted or obstructed, as explained later herein.

1317 (11th Cir. 2025). If successful, the burden shifts to the plaintiff to show a violation of clearly established federal statutory or constitutional rights. Id.

Three limitations are placed on the legal authorities a plaintiff may use to satisfy her burden. Gervin, at *17. First, a plaintiff may rely only on three types of substantive law: (1) case law with indistinguishable facts; (2) a broad statement of principle within the Constitution, statute, or case law; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. Id.; Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291-92 (11th Cir. 2009).

Second, a plaintiff may only point to applicable law from the following jurisdictions: Binding decisions of the Supreme Court of the United States, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state, here the Florida Supreme Court. Gervin, at *17; Wate v. Kubler, 839 F.3d 1012, 1018 (11th Cir. 2016).

Third, a plaintiff may rely only on law developed at the time of the alleged conduct. Gervin, at *17. "[F]or the law to be clearly established to the point that qualified immunity does not protect a government official, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates

federal law in the circumstances." King v. Pridmore, 961 F.3d 1135, 1145 (11th Cir. 2020)(quoting Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000)).

While entitlement to qualified immunity is a question of law for the court, resolution can sometimes turn on issues of fact resolved at a trial. Simmons, 879 F.3d at 1163-64. In such situations, "the court uses the jury's factual findings to render its ultimate legal determination as to whether it would be evident to a reasonable officer, in light of clearly established law, that his conduct was unlawful in the situation he confronted." Id. at 1164. "In other words, the question of what circumstances existed at the time of the encounter is a question of fact for the jury – but the question of whether the officer's perceptions and attendant actions were objectively reasonable under those circumstances is a question of law for the court." Id.

"In determining whether a government official is entitled to qualified immunity following a jury verdict, we view the evidence in the light most favorable to the party that prevailed at trial." Bailey v. Swindell, 89 F.4th 1324, 1329 (11th Cir. 2024)(quoting Oladeinde v. City of Birmingham, 230 F.3d 1275, 1290 (11th Cir. 2000). "In so doing, we give deference to the jury's 'discernible resolution of disputed factual issues.'" Id. (quoting Oladeinde, 230 F.3d at 1290).

## III.

The question becomes whether clearly established law
prohibited the force Deputy Williams used on Mrs. Corbin under
the factual circumstances found by the jury. Kirby v. Sheriff of
City of Jacksonville, Fla., No. 22-11109, 2023 WL 2624376, at *6
(11th Cir. Mar. 24, 2023). The Court begins by ascertaining the
factual circumstances, as found by the jury, and then analyzes
whether clearly established law prohibited Deputy Williams' use
of force under those circumstances.

### A. The Factual Circumstances

Looking at the evidence presented at trial, the jury
instructions, and the jury verdicts, it is clear that the jury,
as the ultimate factfinder, disbelieved at least a part of Mrs.
Corbin's version of events and found she had resisted or
obstructed Deputy Williams. According to the jury verdicts, Mrs.
Corbin proved by a preponderance of the evidence that Deputy
Williams intentionally subjected her to excessive or
unreasonable force during her arrest (Doc. #176, p. 3), but did
not prove that Deputy Williams battered, assaulted, or falsely
arrested her. (Id. at pp. 1-4.)

As to the federal false arrest claim, the jury was
instructed that, "[u]nder the Fourth Amendment to the United
States Constitution, every person has the right not to be
arrested unless the officer has at least probable cause to arrest

- 9 -

that person." (Doc. #171, p. 9.) The jury was also instructed that "[a]n officer has probable cause and may arrest a person without a warrant whenever the facts and circumstances within the officer's knowledge at the time of the arrest, based on reasonably trustworthy information, would cause a reasonable officer to believe that the person has committed, is committing, or is about to commit a criminal offense." (Id.) The jury was further instructed that there were only two criminal offenses at issue: resisting or obstructing an officer without violence, and disorderly intoxication. (Id. at 10.)

"Reading that instruction . . . and verdict together, the inference is inescapable that the jury" Johnson, 280 F.3d at 1319, disbelieved at least part of Mrs. Corbin's version of events and concluded that Mrs. Corbin had obstructed or resisted Deputy Williams. By finding in favor of Deputy Williams as to the federal false arrest claim, the jury necessarily found he had probable cause to arrest Mrs. Corbin for either resisting or obstructing an officer without violence, disorderly intoxication, or both. But given the disorderly intoxication jury instructions, and the evidence presented at trial, the jury could only have found that Deputy Williams had probable cause to arrest Mrs. Corbin for resisting or obstructing without violence.

The jury was instructed that public intoxication required a public disturbance, which:

> occurs when public order is disrupted. The conduct
> must have some effect on the public. For example, a
> person loudly and profanely yelling at an officer, to
> the point that several persons were drawn to the scene,
> creates a public disturbance. But belligerent behavior
> toward an officer is not, standing alone, sufficient
> to establish a public disturbance.

(Doc. #171, p. 14.) Deputy Williams testified that Mrs. Corbin was yelling, disobeying his orders, pushing past him, and acting with a drunken demeanor. But Deputy Williams never testified that Mrs. Corbin disrupted the public order, drew a crowd, obstructed people, or did anything approximate.

Quite the opposite. Deputy Williams testified that because McDonalds was open, "people [were] coming and going" and simply "looking as they passed by." Deputy Williams also denied Mrs. Corbin's assertion that people there were screaming or pointing. The facts clearly fail to establish a public disturbance within the meaning of the jury instructions and case law. See DeSantis v. Dream Defs., 389 So. 3d 413, 422 (Fla. 2024)(holding that a "public disturbance" under Florida's disorderly intoxication statute requires disruption of public order like a drawing of a crowd or preventing the passage of persons). Given the evidence presented and the jury instructions, no jury could have found that the facts and circumstances known to Deputy Williams were sufficient to support a reasonable belief that Mrs. Corbin had committed or was committing a public disturbance or was publicly intoxicated.

The jury instructions and the trial evidence establish that the jury found Deputy Williams had probable cause to arrest Mrs. Corbin for resisting or obstructing without violence. This jury determination means that Deputy Williams had the right to use the amount of reasonably necessary force justified by the totality of the circumstances to make an arrest for resisting or obstructing without violence. When the jury returned a verdict for Mrs. Corbin and against Deputy Williams as to excessive force claim, it necessarily found that Deputy Williams' leg maneuver was not justified despite Mrs. Corbin's resistance or obstruction. Whether such a determination survives the qualified immunity defense is the issue immediately presented.

### B. Deputy Williams was Acting Within His Discretionary Authority

As discussed earlier, Deputy Williams must prove that at the time of the leg sweep he was acting within his discretionary authority as a law enforcement officer. "For qualified immunity to apply, a government official must initially establish that he was acting within his discretionary authority when the alleged wrongful acts occurred." Richmond v. Badia, 47 F.4th 1172, 1179 (11th Cir. 2022). "The term 'discretionary authority' 'include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" Patel v. City of

Madison, Alabama, 959 F.3d 1330, 1338 (11th Cir. 2020)(quoting

Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994)).

    Mrs. Corbin argues Deputy Williams was not acting within

his discretionary authority when he arrested her "because no

such discretionary duty to deploy excessive force exists." (Doc.

#186, p. 18.)  This is the same unpersuasive argument Mrs. Corbin

advanced in her summary judgment papers. See Corbin, 2024 WL

3470289, at *8. The Court continues to reject this argument

because "in assessing whether a police officer may assert

qualified immunity against a Fourth Amendment claim, we do not

ask whether he has the right to engage in unconstitutional

searches and seizures, but whether engaging in searches and

seizures in general is a part of his job-related powers and

responsibilities." Holloman ex rel. Holloman v. Harland, 370

F.3d 1252, 1266 (11th Cir. 2004). "Put another way, to pass the

first step of the discretionary function test for qualified

immunity, the defendant must have been performing a function

that, but for the alleged constitutional infirmity, would have

fallen with his legitimate job description." Id.

    As Mrs. Corbin admits, Deputy Williams was "an on-duty law

enforcement officer acting under color of law" when he arrested

Mrs. Corbin. (Doc. #186, p. 20.) "Because making an arrest is

within the official responsibilities of a sheriff's deputy,

[Deputy Williams] was performing a discretionary function when

he arrested [Mrs. Corbin]." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). The Court finds that Deputy Williams has established that he was acting within his discretionary authority as a law enforcement officer during his entire encounter with Mrs. Corbin.

### C. Clearly Established Constitutional Excessiveness

"[A] defendant officer could use force in making an arrest that is later judged to be excessive enough that it violates the Fourth Amendment, but if prior decisions did not clearly establish that the use of that amount of force in those circumstances was constitutionally excessive, the defendant officer would be entitled to qualified immunity." Simmons, 879 F.3d at 1166 (quoting Johnson, 280 F.3d at 1321). The burden shifts to Mrs. Corbin to show that clearly established law gave a reasonable officer in Deputy Williams' shoes fair warning that using a leg maneuver and handcuffing Mrs. Corbin was unconstitutional under the circumstances.

As discussed earlier, Mrs. Corbin may meet her burden by pointing to a binding decision from the United States Supreme Court, Eleventh Circuit, or Florida Supreme Court issued before November 29, 2019 — the date of the incident here. See Brooks, 78 F.4th at 1280 (citing Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022)). Mrs. Corbin arguably foregoes the opportunity to meet her burden through applicable case law. (See Doc. #186, p.

- 14 -

23)(Mrs. Corbin asserting that "[c]itation to a certain case or cases prior to Williams' breaking of Mrs. Corbin's leg in 2019 is not required to defeat Defendants' claims for qualified immunity" because "the clearly established right to be free from excessive force is common knowledge at this point in 2025.").

At most, Mrs. Corbin points to two binding cases: Patel and Stephens v. DeGiovanni, 852 F.3d 1298 (11th Cir. 2017). (See Doc. #187, p. 33-34.)  Neither could have given a reasonable officer in Deputy Williams' shoes fair warning that a single leg sweep maneuver was unconstitutional to handcuff a person resisting or obstructing, as Mrs. Corbin was doing.

In Patel, the Eleventh Circuit accepted the following facts: Plaintiff was not doing anything suspicious, id., 959 F.3d at 1338, but was "merely walking leisurely down the sidewalk when the officers encountered him." Id.  The officers knew plaintiff did not know English, but plaintiff "did his best to cooperate with the officers and obey their commands . . . ." Id. Plaintiff "made no movements of resistance" "[n]or did he otherwise interfere with [the officer] . . . ." Id. At most, "in what could be construed as a move to maintain his balance, [plaintiff] adjusted his foot what looks like at most an inch to the side" and turned his head halfway towards the officers. Id. at 1335. One officer then "us[ed] his left leg to sweep the [plaintiff]'s left leg out from under him," which resulted in the plaintiff

- 15 -

crashing to the floor and becoming permanently partially paralyzed. Id.

In Stephens, plaintiff was standing by a car while an officer was questioning him. Id., 852 F.3d at 1307. "There [was] no evidence [plaintiff] attempted to resist" or that he was noncompliant. Id. at 1323. Yet, for "no reason," id. at 1326, the officer slapped a Bluetooth device away from plaintiff and struck plaintiff's chest two separate times, knocking plaintiff back into the car each time. Id. at 1308. When plaintiff told the officer that "children were watching his abusive conduct, [the officer] responded by stepping on [plaintiff]'s foot as he slammed him the third time forcefully back into the car, which resulted in [plaintiff] being thrown against the car-door frame, causing severe injuries to his neck, back, and shoulder." Id. at 1322. "As [plaintiff] attempted to grasp the car door with his right hand to lift himself up, [the officer] grabbed and twisted his hand, so the palm faced up, then forced the last three fingers on [plaintiff]'s right hand backward toward his forearm, causing [plaintiff]'s full body weight to be supported on those three fingers of his right hand." Id. at 1322-23. Plaintiff was then handcuffed. Id. at 1308.

Neither case helps Mrs. Corbin meet her burden. First, neither is case law with indistinguishable facts. Plaintiff in Patel did not resist or interfere with the duties of any police

officer. Here, the jury found Mrs. Corbin did resist or obstruct Deputy Williams. Thus, Patel could not have given Deputy Williams or a reasonable officer in his shoes notice that a leg sweep or kick was unconstitutional to arrest a resisting or obstructing person. Mrs. Corbin's reliance on Stephens fares no better because that case involves materially different circumstances and challenged conduct. Plaintiff in Stephens was compliant, not resisting, and the officer there "had no reason to use the force he did . . ." Id., 852 F.3d at 1326. Those circumstances differ materially from those which the jury determined were faced by Deputy Williams, who faced a resisting/obstructing Mrs. Corbin. Additionally, the single leg sweep in this case is materially different than the multiple assaults inflicted upon the plaintiff in Stephens. Thus, Stephens could not have given Deputy Williams, or a reasonable officer in his shoes, notice that a single leg sweep or kick was unconstitutional to restrain a resisting or obstructing person.

Second, Patel was issued in May 2020, long after Deputy Williams arrested Mrs. Corbin in November 2019. Patel could not have given Deputy Williams —or any officer— notice about the appropriate level of force to be used in November 2019. Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005)("Any case law that is 'materially similar' to the facts in the case

at hand must pre-date the officer's alleged improper conduct . . . .").

"In light of the rarity of obvious clarity cases, if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate." King v. Pridmore, 961 F.3d 1135, 1146 (11th Cir. 2020). Nonetheless, Mrs. Corbin tries. Mrs. Corbin asserts "that a broader, clearly established principle controls this case," (Doc. #186, p. 23.) Throughout her brief, Mrs. Corbin states that she had a "clearly established constitutional Fourth Amendment right to be free from excessive force, of which Williams was clearly on notice." (Id. at p. 20.)

But this argument also fails to satisfy Mrs. Corbin's burden. A "qualifying" principle "cannot be 'too general' and must 'put every reasonable officer' on notice that it 'clearly prohibit[s] the officer's conduct in the particular circumstances before him.'" DeMarcus, 2025 WL 1076822, at *8 (cleaned up)(quoting Baxter v. Roberts, 54 F.4th 1241, 1268 (11th Cir. 2022)). The "principle that officers may not use excessive force to apprehend a suspect is too broad a concept to give officers notice of unacceptable conduct." Mercado, 407 F.3d at 1159. The Supreme Court long ago explained that:

> there is no doubt that <u>Graham v. Connor</u>, <u>supra</u>, clearly
> establishes the general proposition that use of force
> is contrary to the Fourth Amendment if it is excessive
> . . . . Yet that is not enough. Rather, we emphasized
> in <u>Anderson</u> "that the right the official is alleged to
> have violated must have been 'clearly established' in
> a more particularized, and hence more relevant, sense:
> The contours of the right must be sufficiently clear
> that a reasonable official would understand that what
> he is doing violates that right."

<u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001) <u>rev'd on other
grounds</u>, <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009)(quoting
<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). Mrs. Corbin's
argument improperly invites this Court to "err[] in relying on
the general proposition that it is clearly established that the
use of excessive force is unconstitutional." <u>Corbitt v. Vickers</u>,
929 F.3d 1304, 1316 (11th Cir. 2019). It is therefore rejected.

Nor does any applicable principle emerge from <u>Patel</u> or
<u>Stephens</u>, both of which rely on the principle "that a police
officer violates the Fourth Amendment, and is denied qualified
immunity, if he or she uses gratuitous and excessive force
against a suspect who is under control, not resisting, and
obeying commands." <u>Patel</u>, 959 F.3d at 1343 (quoting <u>Saunders v.
Duke</u>, 766 F.3d 1262, 1265 (11th Cir. 2014)); <u>Stephens</u>, 852 F.3d
at 1328. As explained earlier, the jury determined that Mrs.
Corbin was resisting or obstructing Deputy Williams. Therefore,
this principle could not have given a reasonable officer, in

Deputy Williams' shoes, fair warning that a single leg sweep or
kick to handcuff Mrs. Corbin was unconstitutional.

That leaves only the third type of substantive law under
which Mrs. Corbin could carry her burden. "The final, and often
most difficult option is to demonstrate that 'the official's
conduct was so far beyond the hazy border between excessive and
acceptable force that [the official] had to know he was violating
the Constitution even without caselaw on point.'" Sebastian v.
Ortiz, 918 F.3d 1301, 1310 (11th Cir. 2019)(alteration in
original)(cleaned up)(quoting Priester v. City of Riviera Beach,
Fla., 208 F.3d 919, 926 (11th Cir. 2000)). "This method is
reserved for 'extreme circumstances' presenting 'particularly
egregious facts' that would have put any reasonable officer on
notice that his actions 'offended the Constitution.'" DeMarcus,
2025 WL 1076822, at *9 (quoting Baxter, 54 F.4th at 1268). It
has applied in situations when an inmate has been left for days
in a cell covered in feces, when an inmate has been handcuffed
to a post for seven hours in the hot sun without access to a
bathroom or much water, and when an arrestee was slammed into a
car after already being handcuffed and controlled. Id.
(collecting cases). "The conduct . . . here, while most
regrettable, isn't in that universe." Id. Nothing about the facts
found by the jury in this case satisfies Mrs. Corbin's burden
under the third method.

Because Mrs. Corbin has failed to satisfy her burden under any method, Deputy Williams is entitled to qualified immunity, and judgment must be entered in his favor as to the excessive force claim. See Williams v. Consol. City of Jacksonville, 341 F.3d 1261, 1264 (11th Cir. 2003). Because Mr. Corbin's loss of consortium claim is derivative of Mrs. Corbin's excessive force claim, judgment must be entered in Deputy Williams' favor as to the loss of consortium claim as well. Bombalier v. Lifemark Hosp. of Fla., 661 So. 2d 849, 852 (Fla. 3d DCA 1995)("[I]f the injured spouse's claim is defeated, the derivative claim of the other spouse for loss of consortium also falls.").

The Court concludes that qualified immunity applies and results in an entry of judgement in favor of Deputy Williams as to Mrs. Corbin's excessive force claim. As a result, Mr. Corbin's derivative loss of consortium claim must also be vacated. The Court finds it unnecessary to reach Deputy Williams' alternative request of ordering a new trial under Federal Rule of Civil Procedure 59(a).

Accordingly, it is hereby

**ORDERED:**

1. The Court previously ordered that "[e]ntry of judgment shall be withheld pending review of the qualified immunity issue." (Doc. #177, p. 1-2.) Having now resolved the qualified immunity issue, the Clerk of Court is

- 21 -

directed to enter judgment as follows as to all the Counts of the Complaint (Doc. #1)[2]:

a. Count I: In favor of Defendant Aaron Williams and against Plaintiff who shall take nothing pursuant to the jury verdict. (Doc. #176.)

b. Count II: In favor of Defendant David Gensimore pursuant to this Court's Order to Dismiss (Doc. #67) and with prejudice pursuant to this Court's Order on Summary Judgment. (Doc. #131.)

c. Count III: In favor of Defendant Kenrick Roguska pursuant to this Court's Order to Dismiss. (Doc. #67.)

d. Count IV: In favor of Defendant Aaron Williams pursuant to this Order on qualified immunity.

e. Count VI: In favor of Defendant Aaron Williams and with prejudice pursuant to this Court's Order on Summary Judgment. (Doc. #131.)

f. Count VII: In favor of Defendant David Gensimore and with prejudice pursuant to this Court's Order on Summary Judgment. (Doc. #131.)

---

[2] The counts were misnumbered in the Complaint and they are here numbered as they appear in the Complaint.

g. Count VIII: In favor of Defendant Bill Prummell, Jr.
   and against Plaintiff who shall take nothing
   pursuant to the jury verdict. (Doc. #176.)

h. Count VIII: In favor of Defendant Aaron Williams and
   against Plaintiff who shall take nothing pursuant
   to the jury verdict. (Doc. #176.)

i. Count IX: In favor of Defendant Aaron Williams and
   against Plaintiff who shall take nothing pursuant
   to the jury verdict. (Doc. #176.)

j. Count X: In favor of Defendant Aaron Williams and
   against Plaintiff who shall take nothing pursuant
   to the jury verdict. (Doc. #176.)

k. Count XI: In favor of Defendant Aaron Williams
   pursuant to this Court's Order to Dismiss. (Doc.
   #67.)

l. Count XII: In favor of Defendant David Gensimore and
   with prejudice pursuant to this Court's Order to
   Dismiss. (Doc. #67.)

m. Count XIII: In favor of Defendant Bill Prummell, Jr.
   pursuant to this Court's Order to Dismiss. (Doc.
   #24.)

n. Count XIII: In favor of Defendant Aaron Williams
   pursuant to this Court's Order to Dismiss. (Doc.
   #67.)

      o. Count XV: In favor of Defendant Michael Davidson pursuant to this Court's Order to Dismiss. (Doc. #67.)

      p. Count XVI: In favor of Defendant Aaron Williams pursuant to this Order on qualified immunity.

2. The Clerk is further directed to terminate all pending matters and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___1st___ day of July 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record